DATED: MARCH 14, 2007                    07-152

ISIDORE AND BONNIE CORWIN
B'NAI B'RITH HOUSE
8000 SOCIETY DRIVE
APT. 608
CLAYMONT, DE 19703

PETER T. DALLEO, CLERK
U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE
844 NORTH KING STREET
LOCKBOX 18
WILMINGTON, DE 19801-3570

CASE: NEW C.A. COMPLAINT: CORWIN V. B'NAI B'RITH ET AL

DEAR CLERK OF THE COURT ,

PER OUR TELEPHONE CONVERSATION WITH THE U.S. DISTRICT COURT
CLERK'S OFFICE, AS PLAINTIFFS PRO SE, IN THE ABOVE NAME CASE, WE
ARE HERETO ENCLOSING FOR YOU, FOR THE PURPOSE OF FILING, THE
FOLLOWING:

- A COMPLETED CIVIL COVER SHEET.
- THE ORIGINAL COMPLAINT AND ONE COPY.
- THREE (3) ADDITIONAL COPIES OF THE COMPLAINT FOR EACH DEFENDANT.
- THREE (3) COMPLETED #285 PROCESS RECEIPT AND RETURN FORMS.
- PROCEED W/O PREPAYMENT OF FEES AND AFFIDAVIT FORM AND ONE COPY.
- IN FORMA PAUPERIS MOTION AND ONE COPY.
- APPLICATION FOR A COURT-ORDERED ATTORNEY AND ONE COPY.

THANK YOU FOR YOUR ASSISTANCE.

SINCERELY
ISIDORE AND BONNIE CORWIN
TELE/FAX 302-798-5116

ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**ISIDORE CORWIN AND BONNIE CORWIN**

CIVIL ACTION NO.: 0 7 - 1 5 2 -

*PLAINTIFFS,*

-AGAINST-

**COMPLAINT**
**(TRIAL BY JURY DEMANDED)**

**B'NAI B'RITH SENIOR CITIZEN HOUSING, INC.;**
**SOUTHEASTERN PROPERTY MANAGEMENT, INC.;**
**AND LYNNE ROTAN, AN AGENT, SERVANT OR EMPLOYEE OF**
**B'NAI B'RITH SENIOR CITIZEN HOUSING, INC.**

*DEFENDANTS.*

PLAINTIFFS ISIDORE CORWIN AND BONNIE CORWIN, PRO SE, UNDERSIGNED, BRING THIS COMPLAINT AGAINST THE ABOVE-NAMED DEFENDANTS AND THEIR AGENTS, SERVANTS, AND EMPLOYEES, AND IN SUPPORT THEREOF ALLEGE THE FOLLOWING ON PERSONAL KNOWLEDGE AS TO THEMSELVES AND THEIR OWN ACTIONS, AND UPON INFORMATION AND BELIEF AS TO ALL OTHER MATTERS.

### PARTIES

1. PLAINTIFF ISIDORE CORWIN ( "I. CORWIN") IS A CITIZEN OF THE UNITED STATES AND RESIDES IN THE STATE OF DELAWARE AT 8608 SOCIETY DRIVE, CLAYMONT, COUNTY OF NEW CASTLE, DELAWARE, 19703.

2. PLAINTIFF BONNIE CORWIN ("B. CORWIN") IS A CITIZEN OF THE UNITED STATES, IS THE LAWFUL SPOUSE OF PLAINTIFF ISIDORE CORWIN, AND RESIDES WITH HIM AT 8608 SOCIETY DRIVE, CLAYMONT, COUNTY OF NEW CASTLE, STATE OF DELAWARE, 19703.

3. DEFENDANT B'NAI B'RITH SENIOR CITIZEN HOUSING, INC. ("B'NAI B'RITH SENIOR") HAS ITS PRINCIPAL PLACE OF BUSINESS AT 8000 SOCIETY DRIVE, CLAYMONT, DE, 19703, AND ITS CORPORATE OFFICE AT 1103 R. ARRINGTON, JR. BOULEVARD SOUTH, BIRMINGHAM, ALABAMA, 35205.

1

4. DEFENDANT SOUTHEASTERN PROPERTY MANAGEMENT, INC. ("SPM") IS A MANAGEMENT AGENCY, WITH ITS CORPORATE OFFICE AT 1103 R. ARRINGTON, JR. BOULEVARD SOUTH, BIRMINGHAM, ALABAMA, 35205.

5. DEFENDANT LYNNE ROTAN ("ROTAN") IS A PROPERTY MANAGER, WITH HER RESIDENCE AT 15 PENNSYLVANIA AVENUE, CLAYMONT, DELAWARE, 19703.

6. AT ALL TIMES RELEVANT TO THIS COMPLAINT, DEFENDANT ROTAN ACTED AS AN AGENT, SERVANT, OR EMPLOYEE OF B'NAI B'RITH SENIOR.

## JURISDICTION AND VENUE

7. THE CIVIL ACTION ARISES UNDER TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, § 801, *ET SEQ.,* AS AMENDED BY THE FAIR HOUSING ACT OF 1988, 42 U.S.C.A. § 3601 *ET SEQ.,* AND, MORE PARTICULARLY, 42 U.S.C.A. § 3604 (B). THERE IS A PENDANT STATE LAW CLAIM UNDER THE DELAWARE FAIR HOUSING ACT, DEL. CODE ANN. 6 § 4601 *ET SEQ.* JURISDICTION IS CONFERRED ON THIS COURT PURSUANT TO 28 U.S.C. § 1331 AND 1343 (A)(3).

8. PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF ARE AUTHORIZED BY 28 U.S.C. § 2201 AND 2202, BY RULES 57 AND 65 OF THE FEDERAL RULES OF CIVIL PROCEDURE, AND BY THE GENERAL LEGAL AND EQUITABLE POWERS OF THIS COURT.

9. VENUE IS PROPER UNDER 28 U.S.C. § 1391(B) BECAUSE THE HOUSING PRACTICES ALLEGED HEREIN TO BE UNLAWFUL WERE AND ARE NOW BEING COMMITTED WITHIN THE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE.

10. THE DISCRIMINATORY ACTS IN THIS LAWSUIT CONCERN NATIONAL ORIGIN DISCRIMINATION ALLEGED BY THE PLAINTIFFS IN THE HANGING OF THEIR AMERICAN FLAG ON THEIR RENTED BALCONY AT DEFENDANTS' B'NAI B'RITH HOUSE APARTMENTS IN CLAYMONT, DELAWARE, WITH PLAINTIFFS' DISCRIMINATION COMPLAINT COMMENCING ON OR ABOUT JULY 27, 2006.

11. ON JULY 27, 2006, PLAINTIFFS TOOK STEPS IN A WRITTEN COMPLAINT TO THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (THE AVAILABLE ADMINISTRATIVE AGENCY AS TO CHARGES OF THE

ALLEGED DISCRIMINATORY CONDUCT BY THE DEFENDANTS IN THEIR FLAG FLYING POLICY FOR TENANTS' BALCONIES AT THE B'NAI B'RITH HOUSE). PLAINTIFFS' COMPLAINT WENT TO THE PROJECT MANAGER, MS. ELAINE GARBON, WANAMAKER BUILDING, 100 PENN SQUARE EAST, PHILADELPHIA, PA, 19107. HUD FORWARDED PLAINTIFFS' GRIEVANCE TO MS. CHRIS KINNIKIN, HOUSING LOAN MANAGEMENT OFFICER, DELAWARE STATE HOUSING AUTHORITY, DOVER, DELAWARE, 19901, FOR INVESTIGATION.

12. THE RESULT OF THE SUBSEQUENT DSHA'S INVESTIGATION WAS, COMPLAINT "RESOLVED", AS DSHA'S ON-SITE OBSERVATION OF AUGUST 16, 2006 WAS THAT THERE WERE NO FLAGS FLYING ON TENANTS' BALCONIES AT THE B'NAI B'RITH HOUSE. DSHA INFORMED PLAINTIFFS OF ITS INVESTIGATIVE COMPLAINT DETERMINATION IN A LETTER DATED AUGUST 31, 2006.

13. SUBSEQUENT TO DSHA'S ABOVE AFOREMENTIONED DETERMINATION, PLAINTIFFS FORWARDED A LETTER TO DEFENDANT ROTAN ON SEPTEMBER 9, 2006, FORMALLY REQUESTING PERMISSION FOR PLAINTIFFS TO HANG AN AMERICAN FLAG ON THEIR RENTED BALCONY AT THE B'NAI B'RITH HOUSE.

14. ON SEPTEMBER 15, 2006, DEFENDANT ROTAN RESPONDED, IN WRITING, TO PLAINTIFFS' ABOVE AFOREMENTIONED REQUEST (AND AT THE SAME TIME TO ALL TENANTS) THAT TENANTS CANNOT HANG FLAGS ON THE THEIR BALCONIES, AND FOR ALL TENANTS, INCLUDING PLAINTIFFS, TO PROMPTLY REMOVE THEIR FLAGS FROM THEIR BALCONIES, OSTENSIBLY FOR SAFETY REASONS.

15. IN THE FACE OF OTHER TENANTS' PROTESTS REGARDING DEFENDANT ROTAN'S AFOREMENTIONED MEMO TO PROMPTLY REMOVE ALL FLAGS FROM TENANT BALCONIES, DEFENDANT ROTAN THEN SUDDENLY PROMULGATED NEW RULES ON SEPTEMBER 18, 2006 WITH A WRITTEN MEMO TO ALL TENANTS, INCLUDING PLAINTIFFS, THAT TENANTS CAN NOT HANG FLAGS, BUT MAY PUT A FLAG ON A STICK IN A FLOWER POT OR MAY DRAPE A FLAG ON A CHAIR ON TENANTS' RESPECTIVE BALCONIES.

16. ON SEPTEMBER 22, 2006, PLAINTIFFS FORWARDED A LETTER TO MRS. ROTAN THAT DRAPING THE AMERICAN FLAG IS AGAINST U.S. FLAG CODE.

3

17.  ON OCTOBER 3, 2006, DEFENDANT ROTAN NOTIFIED PLAINTIFFS, IN WRITING, THAT MR. DAVID SCHLECKER (A B'NAI B'RITH SENIOR DESIGNATED DIRECTOR & OFFICER) WAS  PLANNING ON ATTENDING THE NEXT B'NAI B'RITH HOUSE TENANT ASSOCIATION MEETING IN ORDER TO ADDRESS THE FLAG ISSUE (TO TENANTS).

18.  ON OCTOBER 11, 2006, MR. DAVID SCHLECKER ATTENDED THE OCTOBER 2006 TENANT ASSOCIATION MEETING, WHERE A CERTAIN TENANT, IN OPEN DISCUSSION, BROUGHT TO MR. SCHLECKER'S ATTENTION THAT TENANTS AT THE APARTMENT FACILITY ARE PERMITTED TO HANG PATIO UMBRELLAS ON  POLES, STRAPPED ON TENANTS' RESPECTIVE BALCONY RAILS (CONTRARY TO DEFENDANTS' SEPTEMBER 15, 2006 MEMO THAT TENANTS CANNOT HANG FLAGS ON TENANT BALCONIES).

19.  SUBSEQUENTLY, ON OCTOBER 12, 2006, PLAINTIFFS FORWARDED A LETTER TO DEFENDANT ROTAN STATING THAT PLAINTIFFS DO NOT CHOOSE TO PUT THEIR AMERICAN FLAG ON A STICK IN A FLOWER POT, AND REQUESTED AN ALTERNATIVE MEANS TO HANG THEIR AMERICAN FLAG, TO STRAP THEIR FLAG ON THEIR RESPECTIVE BALCONY RAIL (AS ARE THE HANGING PATIO UMBRELLAS ON OTHER TENANT'S BALCONIES).

20.  ON OCTOBER 23, 2006, PLAINTIFFS REQUESTED, IN WRITING, TO DEFENDANT ROTAN,  IF THE DEFENDANT WOULD RESPOND TO PLAINTIFFS' ABOVE AFOREMENTIONED REQUEST PRIOR TO VETERANS DAY 2006, IN ORDER THAT PLAINTIFFS COULD PREPARE FOR THE HOLIDAY.

21.  ON OCTOBER 30, 2006, DEFENDANT ROTAN RESPONDED TO THE AFOREMENTIONED PLAINTIFFS' REQUEST (TO STRAP THEIR AMERICAN FLAG ON THEIR BALCONY RAIL), DEFENDANT ROTAN STATING IN A ONE-SENTENCE RESPONSE LETTER TO PLAINTIFFS, "THE ANSWER IS NO…".

22.  HENCE, ON VETERANS DAY 2006,  BOTH ON NOVEMBER 10, 2006, NATIONALLY OBSERVED VETERANS DAY, AND ON NOVEMBER 11, 2006, VETERANS DAY, PLAINTIFFS WERE DENIED THEIR ABILITY TO HANG THEIR AMERICAN FLAG ON THEIR BALCONY RAIL, WHILE OTHER TENANTS WERE PERMITTED TO OPENLY HANG PATIO UMBRELLAS ON THEIR BALCONY RAILS (UMBRELLAS EVEN LARGER THAN THE PLAINTIFFS' AMERICAN FLAG).

4

23. ON VETERANS DAY 2006, DEFENDANTS PERMITTED ELEVEN (11) OTHER HANGING-LOCATIONS ON OTHER TENANTS' RESPECTIVE BALCONIES AT THE SUBJECT FACILITY, INCLUDING THE AFOREMENTIONED UMBRELLAS, THERMOMETERS, BALCONY-RAIL PLANTERS, WIND CHIMES, HANGING BELL, HANGING HOOK, AND BALCONY-RAIL FLAG HOLDER, EVEN THOUGH DEFENDANT ROTAN STATES NOTHING IS ALLOWED TO HANG ON TENANTS' BALCONIES AT THE B'NAI B'RITH HOUSE.

24. ON NOVEMBER 15, 2006, PLAINTIFFS FORWARDED A LETTER TO THE DEFENDANT ROTAN REQUESTING A "MANAGEMENT REVIEW" OF THE B'NAI B'RITH HOUSE PRESENT POLICY IN AMERICAN FLAG FLYING ON TENANTS' PRIVATE BALCONIES.

25. ON NOVEMBER 20, 2006, DEFENDANT ROTAN, IN WRITING, RESPONDED TO PLAINTIFFS' ABOVE AFOREMENTIONED REQUEST, WITH, "WE HAVE A RULE THAT YOU CANNOT ATTACH ANYTHING TO THE BALCONY...(THE FLAG) CANNOT BE ATTACHED OR AFFIXED TO THE BALCONY RAIL."

26. ON MARCH 14, 2007, BASED ON ALLEGED NATIONAL ORIGIN DISCRIMINATION BY THE DEFENDANTS, PLAINTIFFS REPORTED ALL INFORMATION ABOUT THE DEFENDANTS' ALLEGED VIOLATIONS OF THE FAIR HOUSING ACT TO HUD, WHERE PLAINTIFFS EXPLAINED THE FACTS AND CIRCUMSTANCES WHERE OTHERS WERE TREATED DIFFERENTLY FROM PLAINTIFFS, AND THAT THE DISCRIMINATION IS ONGOING, AND WHERE THERE ARE WITNESSES AND OTHERS WHO KNOW WHAT HAPPENED.

27. ALL STATUTORY PREREQUISITES TO THE FILING OF THE HOUSING DISCRIMINATION COMPLAINT, ACCORDINGLY, HAVE BEEN MET.

## FACTS COMMON TO ALL COUNTS

28. DEFENDANTS B'NAI B'RITH SENIOR CITIZEN HOUSING, INC. OWN AND OPERATE, AND CONTROL THE EIGHT-STORY SENIOR CITIZEN APARTMENT BUILDING ("THE SUBJECT FACILITY") KNOWN AS THE B'NAI B'RITH HOUSE, AT 8000 SOCIETY DRIVE, IN THE CITY OF CLAYMONT, STATE OF DELAWARE, AND IS WHERE AT ALL TIMES RELEVANT HERETO, THE BUILDING'S MANAGEMENT AGENCY WAS AND IS DEFENDANT SOUTHEASTERN

PROPERTY MANAGEMENT, INC., WHO MANAGE THE ELDERLY SECTION 202/8 APARTMENT COMPLEX; WITH DEFENDANT PROPERTY MANAGER ROTAN, WHO WAS AND IS AN AGENT, SERVANT, OR EMPLOYEE OF B'NAI B'RITH SENIOR CITIZEN HOUSING, INC.

29.  DEFENDANT B'NAI B'RITH SENIOR RECEIVES, AND HAS IN THE PAST RECEIVED, FEDERAL SECTION 8 SUBSIDES, 42 U.S.C. § 1437F, WHICH IS DESIGNED TO ALLOW LOW AND LOW-MODERATE INCOME PERSONS TO LIVE IN PRIVATELY OWNED HOUSING, UNDER SPECIFICALLY HUD'S HOUSING ASSISTANCE PAYMENT CONTRACT #DE26-H004-007, FOR THE OPERATION AND MAINTENANCE OF THE SUBJECT FACILITY, AT 8000 SOCIETY DRIVE, CLAYMONT, DELAWARE.  THE CONTRACT WAS, AND IS, ADMININSTERED BY THE DELAWARE STATE HOUSING AUTHORITY.

30.  AS A RECIPIENT OF FEDERAL HUD SUBSIDIES, THE DEFENDANTS, AT ALL TIMES RELEVANT HERETO, HAD, AND HAS, A DUTY UNDER TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968 AND THE FAIR HOUSING ACT OF 1988, TO REFRAIN FROM DISCRIMINATING AGAINST TENANTS, INCLUDING PLAINTIFFS, ON THE BASIS OF RACE, COLOR, RELIGION, OR NATIONAL ORIGIN, AND TO FOLLOW THE RULES, REGULATIONS, AND GUIDELINES FOR SUBSIDIZED LANDLORDS SET FORTH IN THE APPLICABLE HUD HANDBOOK NO. 4350.3.

31.  AS THE OPERATOR OF A DWELLING IN THE STATE OF DELAWARE, DEFENDANT B'NAI B'RITH SENIOR ALSO HAS A DUTY UNDER THE DELAWARE FAIR HOUSING ACT TO REFRAIN FROM DISCRIMINATING AGAINST TENANTS, INCLUDING PLAINTIFFS, ON THE BASIS OF RACE, COLOR, RELIGION, OR NATIONAL ORIGIN.

32.  PLAINTIFF ISIDORE CORWIN AND PLAINTIFF BONNIE CORWIN, SENIOR CITIZENS, MARRIED TO EACH OTHER, WERE ACCEPTED AS TENANTS AT THE B'NAI B'RITH HOUSE, BY THE DEFENDANTS, ON SEPTEMBER 24, 1992; AND MOVED INTO APARTMENT 608 AT THE B'NAI B'RITH HOUSE ON OCTOBER 25, 1992, SHORTLY AFTER THEIR MARRIAGE.

33.  BOTH PLAINTIFFS ISIDORE CORWIN AND BONNIE CORWIN, AS YOUNG ADULTS, WERE SINCERE MEMBERS OF THE BOY SCOUTS OF AMERICA AND THE GIRL SCOUTS OF AMERICA, RESPECTIVELY; WHO EXPRESS THEIR

ALLEGIANCE TO AMERICA, IN PART, BY DISPLAYING SYMBOLS THEREOF SUCH AS THE AMERICAN FLAG IN AND ABOUT THEIR APARTMENT AT SAID BUILDING, OPERATED AND CONTROLLED BY THE DEFENDANTS.

34. UPON THE TRAGEDY OF SEPTEMBER 11, 2001, DEFENDANT ROTAN, IN A HUD-APPROVED BUILDING ACTIVITY, WITH PROPER NOTICE TO TENANTS, ERECTED ONTO TENANTS' BALCONY RAILS, INCLUDING THE PLAINTIFFS' BALCONY RAIL, POLYESTER AMERICAN FLAGS (12"x 18" FLAGS ON A 24½" STICK POLE) ON EACH BALCONY AT THE SUBJECT FACILITY, TWENTY-FOUR HOURS A DAY, SEVEN DAYS A WEEK. THE OUTDOOR BALCONY OF EACH TENANTS' APARTMENT EXTENDS APPROXIMATELY THE LENGTH OF A TENANTS' LIVING ROOM AND BEDROOM WITH AN APPROPRIATE RAILING.

35. WITH THE ABOVE AFOREMENTIONED DEFENDANTS' AMERICAN FLAG-HANGING ACTIVITY, THIS IS WHEN THE DEFENDANTS PUT NOTHING IN WRITING TO THE TENANTS TO THE EFFECT THAT THE BALCONY ACTIVITY WAS AN *EXCEPTION* TO ANY HOUSE RULE.

36. THE DEFENDANTS' AMERICAN FLAG-HANGING ACTIVITY, STRAPPED ONTO TENANTS' BALCONY RAILS, INCLUDING PLAINTIFFS' BALCONY RAIL, DISPLAYED THE AMERICAN FLAG, WHICH DEPICTED THE STARS AND STRIPES, AND HAD GREAT NATIONAL ORIGIN VALUE TO BOTH PLAINTIFFS.

37. PLAINTIFFS, TOO, PUT AMERICAN SYMBOLS AND PICTURES IN THEIR B'NAI B'RITH HOUSE APARTMENT (INSIDE), AND ON THEIR AUTOMOBILE'S VENT WINDOW AND REAR BUMPER, WHERE THE AMERICAN FLAG STICKER READS "OUR GOD REIGNS". PLAINTIFFS PURCHASED PATRIOTIC DVD'S; SUNG PATRIOTIC SONGS; VIEWED PATRIOTIC TV; AND ISIDORE CORWIN (WHO WENT ON DAILY WALKS) SOMETIMES CARRIED THE AMERICAN FLAG AS HE WALKED (WITH PASSING MOTORISTS "TOOTING THEIR HORNS" IN AGREEMENT WITH THE DISPLAY).

38. PLAINTIFFS FURTHER EXPRESSED THEIR FERVENT PATRIOTIC ALLEGIANCE TO AMERICA BY ATTENDING *SENIOR CENTER* LUNCHES, COMMENCING WITH THE "PLEDGE OF ALLEGIANCE" ("ONE NATION UNDER GOD"); LODGE NO. 470, B'NAI B'RITH, INC.'S SING-A-LONGS WHERE PATRIOTIC SONGS WERE SUNG; TRIPS TO HISTORIC BATTLEFIELDS AND

MONUMENTS; AND A VISIT TO THE GRAVESIDE OF ISIDORE CORWIN'S
FATHER (A VETERAN OF WORLD WAR I) WHERE THE FLAG WAS PLACED.

39.  THE PRESENCE OF PLAINTIFFS' AMERICAN SYMBOLS AND IMAGES,
INCLUDING THE AMERICAN FLAG, IN AND ABOUT THE PLAINTIFFS'
APARTMENT UNIT, WAS KNOWN TO, OR SHOULD HAVE REASONABLY BEEN
KNOWN TO, THE DEFENDANTS, PARTICULARLY DEFENDANT ROTAN,
MANAGER OF THE SUBJECT FACILITY, THROUGH HER INSPECTIONS OF
PLAINTIFFS' UNIT ONE OR TWO TIMES A YEAR AND HER RECEIPT OF
PLAINTIFFS' "DECLARATION OF SECTION 214 CITIZENSHIP STATUS FORM", IN
THE NORMAL COURSE OF HER WORK.

40.  ON VETERANS DAY 2002 AND ON VETERANS DAY 2003, THE DEFENDANTS'
HUD-SUBSIDIZED AMERICAN FLAG-HANGING ACTIVITY ON TENANTS'
BALCONY RAILS WAS ACTIVE AND ONGOING.

41. WITH VETERANS DAY 2004, AND THE WEEK OF OCTOBER 17, 2004
APPROACHING (WHERE THE DEFENDANTS' HOSTED THE B'NAI B'RITH
INTERNATIONAL SENIOR HOUSING CONVENTION) DEFENDANT ROTAN
DIRECTED HER MAINTENANCE STAFF TO REMOVE ALL AMERICAN FLAGS IN
THE DEFENDANTS' FLAG-HANGING ACTIVITY, FROM ALL TENANTS'
BALCONY RAILS, OSTENSIBLY BECAUSE THE AMERICAN FLAGS HAD BECOME
"WORE AND TATTERED".

42. IN THE  ABOVE AFOREMENTIONED 2004 DEFENDANTS' *REMOVAL* OF ITS
AMERICAN FLAGS FROM THE TENANTS' RENTED BALCONY RAILS, THIS IS
WHEN THE DEFENDANTS PUT NOTHING IN WRITING TO THE TENANTS TO
THE EFFECT.

43. POST THE DEFENDANTS' AMERICAN FLAG REMOVAL FROM THE TENANTS'
PRIVATE BALCONY RAILS, SOME TENANTS HUNG THEIR OWN FLAGS ON
THEIR RESPECTIVE BALCONIES, SOME  FLAGS EVEN LARGER THAN THE
DEFENDANTS' AMERICAN FLAG.

44. PLAINTIFFS, TOO, REPLACED DEFENDANTS' AMERICAN FLAG WITH THEIR
OWN HANGING POLYESTER AMERICAN FLAG (3' x 5' FLAG WITHOUT A STICK
POLE) WHICH HUNG ON PLAINTIFFS'  BALCONY WALL ON CERTAIN
NATIONAL HOLIDAYS, AS A CONTINUED EXPRESSION OF  PATRIOTISM.

45.  AT THE SAME TIME THAT PLAINTIFFS DISPLAYED THEIR AMERICAN
FLAG AND PATRIOTIC IMAGES, OTHER TENANTS AND THE BUILDING
MANAGEMENT PROMINENTLY DISPLAYED SYMBOLS OF THEIR OWN OF
AMERICA, SUCH AS FLAGS OR STICKERS DEPICTING THE AMERICAN FLAG AT
THE SUBJECT FACILITY.

46.  UPON INFORMATION AND BELIEF, BETWEEN THE YEARS 2001 AND 2005,
THERE WAS A PASSIVE ACCEPTANCE BY THE DEFENDANTS IN FLAG FLYING
ON TENANT RESPECTIVE BALCONIES AT THE SUBJECT FACILITY.

47.  ON THE HEELS OF VETERANS DAY 2006, SPECIFICALLY ON SEPTEMBER 15,
2006, DEFENDANT ROTAN GAVE WRITTEN NOTICE TO THE TENANTS,
INCLUDING PLAINTIFFS, OF THE STATUS OF DEFENDANTS' INTENTIONS, OF
THEIR REPEATING (ALTHOUGH THEY HOPED NOT TO) THEIR AMERICAN
FLAG HANGING ACTIVITY ON TENANTS' BALCONIES, IF THE NATION
EXPERIENCED ANOTHER TERRORIST ATTACK, *STATING*:

> "WE HUNG SMALL FLAGS ON THE BALCONIES…A SPECIAL CIRCUMSTANCE,
> WHICH WE HOPE WE NEVER HAVE TO REPEAT." (ROTAN MEMO, 9/15/06 ).

48.  ADDITIONALLY, IN THE  ABOVE AFOREMENTIONED SEPTEMBER 15, 2006
MEMO, IS WHERE MRS. ROTAN RESPONDED TO PLAINTIFFS' PARTICULAR
SEPTEMBER 9, 2006 REQUEST (WHERE PLAINTIFFS REQUESTED PERMISSION
TO HANG THEIR AMERICAN FLAG ON THEIR PRIVATE BALCONY), MRS.
ROTAN STATING IN THE 9/15/06 MEMO THAT FLAGS ARE NOT ALLOWED ON
BALCONIES AND FOR ALL TENANTS TO PROMPTLY REMOVE THEIR FLAGS.

49.  ON OCTOBER 30, 2006, DEFENDANT ROTAN GAVE WRITTEN DENIAL TO
PLAINTIFFS' OCTOBER 23, 2006 ALTERNATIVE REQUEST FOR PERMISSION TO
HANG PLAINTIFFS' AMERICAN FLAG ON THEIR BALCONY RAIL (AS
DEFENDANTS PERMIT OTHER TENANTS TO HANG PATIO UMBRELLAS ON
THEIR BALCONY RAILS), THEREBY MAKING UNAVAILABLE PLAINTIFFS'
ABILITY TO HANG THEIR FLAG ON THEIR BALCONY RAIL, VETERANS DAY.

50.  ON VETERANS DAY 2006, DEFENDANTS PERMITTED OTHER TENANTS AT
THE SUBJECT FACILITY TO HANG SUCH THINGS ON THEIR BALCONIES AS
WIND CHIMES HANGING FROM PARTICULAR BALCONY CEILINGS;
THERMOMETERS HANGING ON PARTICULAR BALCONY WALLS; PLANTERS

HANGING ON PARTICULAR BALCONY RAILS; BELL HANGING FROM A
PARTICULAR BALCONY CEILING; HOOKS HANGING ON PARTICULAR
BALCONY WALLS; FLAG HOLDERS HANGING ON PARTICULAR  BALCONY
RAILS; AND EVEN THE AFOREMENTIONED HANGING UMBRELLAS ON
PARTICULAR BALCONY RAILS.

51. DEFENDANTS PERMITTED THESE ABOVE AFOREMENTIONED ITEMS TO BE
HUNG OR TO BE FASTENED OR STRAPPED ON OTHER TENANTS' BALCONIES
AND BALCONY RAILS ON VETERANS DAY 2006, AND THE SUBSEQUENT
WINTER HANGING OF SEASONAL DECORATIONS SUCH AS WREATHES ON THE
TENANTS' BALCONY WALLS AND BALCONY RAILS,  EVEN THOUGH
DEFENDANT ROTAN STATED THAT SUCH HANGINGS ON BALCONIES ARE NOT
PERMITTED AT THE SUBJECT FACILITY.

52.  IN THE FACE OF DEFENDANTS' ALLEGED DISCRETIONARY AUTHORITY TO
REPEAT DEFENDANTS' HUD-SUBSIDIZED HANGING OF THE AMERICAN FLAG
ACTIVITY ON TENANTS' BALCONY RAILS, INCLUDING PLAINTIFFS' BALCONY
RAIL; AUTHORITY TO ACCEPT OTHER TENANTS' HANGING PATIO
UMBRELLAS ON TENANTS' BALCONY RAILS; AUTHORITY TO ACCEPT OTHER
TENANTS' DECORATIONS ON TENANTS' BALCONIES; AND YET DENY
PLAINTIFFS' ABILITY TO HANG THEIR AMERICAN FLAG ON THEIR RENTED
APARTMENT'S BALCONY RAIL ON A NATIONAL HOLIDAY, HAS HAD A
DISPROPORTIONATE IMPACT ON PLAINTIFFS AND CAUSED PLAINTIFFS
GREAT MENTAL ANGUISH AND EMOTIONAL, AND EVEN PHYSICAL DISTRESS.

53.  ON JULY 27, 2006, PLAINTIFFS HAD MADE THE AFOREMENTIONED
HOUSING DISCRIMINATION COMPLAINT WITH HUD (THE AGENCY
PRIMARILY CHARGED WITH THE FAIR HOUSING ACT IMPLEMENTATION AND
ADMINISTRATION) WHERE PLAINTIFFS REPORTED ALLEGED NATIONAL
ORIGIN DISCRIMINATION IN THE REPORTED PLAINTIFFS' INABILITY TO
HANG THEIR AMERICAN FLAG ON THEIR RESPECTIVE BALCONY.

54.  ONLY AFTER HUD'S FORWARDING OF THE ABOVE AFORESAID ALLEGED
DISCRIMINATION COMPLAINT TO DSHA FOR DETERMINATION, AND DESPITE
DEFENDANT BUILDING MANAGER ROTAN'S RULES ISSUED ON OR ABOUT
SEPTEMBER 15, 2006, FOR ALL THE TENANTS, INCLUDING PLAINTIFFS, TO

PROMPTLY REMOVE THEIR FLAGS FROM TENANTS' RESPECTIVE BALCONIES, DID DEFENDANT ROTAN SUDDENLY PROMULGATE NEW RULES ON SEPTEMBER 18, 2006, STATING, IN WRITING, THAT TENANTS CAN NOT HANG FLAGS ON  TENANTS' PRIVATE BALCONIES, BUT THAT A FLAG MAY BE PUT ON A STICK IN A FLOWER POT OR A FLAG MAY BE DRAPED ON A CHAIR.

55.  DEFENDANTS' FOREGOING ACTS ON 9/15/06, INSTRUCTING TENANTS, INCLUDING PLAINTIFFS, TO PROMPTLY REMOVE THEIR FLAGS ON THEIR RENTED BALCONIES; ON 9/18/06, INSTRUCTING TENANTS, INCLUDING PLAINTIFFS, THAT THEY MAY NOW PUT THEIR FLAG IN A FLOWER POT OR DRAPE THEIR FLAG ON A CHAIR; ON 10/30/06, PROHIBITING PLAINTIFFS FROM STRAPPING THEIR AMERICAN FLAG ON THEIR RESPECTIVE BALCONY RAIL, WHILE  DEFENDANTS PERMIT PATIO UMBRELLAS TO BE STRAPPED ON OTHER TENANT'S BALCONY RAILS, AS WELL AS OTHER HANGINGS ON OTHER TENANT'S BALCONY CEILINGS, WALLS, AND RAILS; AND, ON 9/15/06, WHERE DEFENDANTS GIVE THEMSELVES, IN PARTICULAR CIRCUMSTANCES, PERMISSION TO STRAP THEIR AMERICAN FLAGS ON TENANTS' BALCONY RAILS, TOOK PLACE IN A CONTEXT OF OTHER ALLEGED DEFENDANTS' DISCRIMINATORY ACTS TOWARDS PLAINTIFFS.

56.  IN ABOUT 1993, DEFENDANT ROTAN HARASSED AND TRIED TO INTIMIDATE THE PLAINTIFFS DURING INSPECTIONS OF THEIR APARTMENT. SHE ORDERED PLAINTIFFS TO REMOVE A CERTAIN KIND OF PEEL-BACKING WALLPAPER BORDER FROM ABOVE THE TOP EDGE OF THEIR HALLWAY CLOSET METAL DOOR.  AT ABOUT THE SAME TIME, UPON INFORMATION AND BELIEF, DEFENDANT ROTAN PERMITTED ANOTHER TENANT TO KEEP THE SAME KIND OF WALLPAPER BORDER ON THAT TENANT'S ENTIRE KITCHEN WALL, EVEN THOUGH ROTAN STATED TO PLAINTIFFS THAT SUCH A TYPE WALLPAPER BORDER WAS NOT PERMITTED IN THE B'NAI B'RITH HOUSE.

57.  ON ANOTHER OCCASION, IN THE EARLY MID 1990'S, DEFENDANT ROTAN CALLED PLAINTIFFS CORWIN TO HER OFFICE AND, IN AN ACCUSATORY TONE AND ON THE BASIS OF AN ALLEGED REPORT TO HER FROM SOMEONE ELSE, ASKED PLAINTIFFS IF THEY HAD UNDERREPORTED THE NUMBER OF CARS THEY HAD AT B'NAI B'RITH HOUSE.  IN FACT, PLAINTIFFS HAD NOT.

58.  IN 1997, DESPITE THE FACT THAT PLAINTIFFS ALWAYS PAID THEIR RENT ON TIME, DEFENDANT ROTAN BEGAN HARASSING PLAINTIFFS ON THE SUBJECT OF THEIR MEDICAL EXPENSES AND MEDICAL APPOINTMENT CAR MILEAGE EXPENSE IN THEIR ANNUAL HUD SECTION 8 RENT RECERTIFICATION.  MRS. ROTAN DENIED PLAINTIFFS' ABILITY TO CLAIM MEDICAL APPOINTMENT MILEAGE EXPENSES IN USE OF THEIR OWN AUTOMOBILE, UNTIL A CERTAIN HUD OFFICIAL IN WASHINGTON, D.C., INSTRUCTED HER TO ALLOW THE CLAIM.  EVEN THEN, DEFENDANT ROTAN CONDITIONED HER COMPLIANCE BY INSTRUCTING THE PLAINTIFFS TO TELL NO OTHER TENANT AT THE B'NAI B'RITH HOUSE ABOUT IT.

59.  IN 1998, DEFENDANT ROTAN AGAIN HARASSED PLAINTIFFS ABOUT THEIR ANNUAL RENT RECERTIFICATION HEALTH EXPENSES, WHEN SHE ACCUSED PLAINTIFFS OF "PADDING" THEIR RECEIPTS BY PURCHASING TOO MANY AIR CLEANERS.  IN FACT, DUE TO THE INDUSTRIAL FUMES IN CLAYMONT - DELAWARE RIVER AREA, THE PLAINTIFFS NEEDED SMALL AIR CLEANERS FOR THE FOUR ROOMS IN APARTMENT UNIT.

60.  IN THE LATE 1990'S, DEFENDANT ROTAN HARASSED AND TRIED TO INTIMIDATE THE PLAINTIFFS DURING INSPECTION OF THEIR APARTMENT. DEFENDANT ROTAN ORDERED PLAINTIFFS TO REMOVE A CHRISTIAN PRAYER  HUNG ON PLAINTIFFS' APARTMENT FRONT DOOR, OBSTENSIBLY BECAUSE IT WAS HUNG BY A SMALL SCREW.

61.  AT ABOUT THE SAME TIME, DEFENDANT ROTAN PERMITTED OTHER TENANTS TO KEEP ITEMS ON THEIR FRONT DOORS WHICH HUNG ON SMALL SCREWS AND EVEN LARGER NAILS, INCLUDING PICTURE FRAMES, WREATHES, ANGELS, AND MAZZUAZAHS, EVEN THOUGH ROTAN STATED TO PLAINTIFFS THAT SUCH HANGINGS ON APARTMENT FRONT DOORS WERE NOT PERMITTED TO BE HUNG BY A NAIL OR SCREW AT THE FACILITY.

62.  BEGINNING 2000, DEFENDANT ROTAN WAS RELUCTANT AND TARDY IN ACTING TO RESOLVE THE PROBLEM OF DELETERIOUS SECOND-HAND SMOKE COMING INTO PLAINTIFFS' UNIT FROM THE UNIT NEXT DOOR OCCUPIED BY A HEAVY CIGARETTE SMOKER, AND ALTHOUGH THIS PROBLEM WAS BROUGHT TO SAID DEFENDANT'S ATTENTION SEVERAL TIMES.

63. IN 2001, DEFENDANT ROTAN DENIED PLAINTIFF'S REQUEST THAT THEY BE ALLOWED TO HANG A FLOWER BASKET ON THEIR PERSPECTIVE BALCONY RAIL TO BLOCK OUT A NEARBY STROBE LIGHT'S GLARE, EVEN THOUGH OTHER TENANTS WERE PERMITTED TO MAINTAIN SUCH HANGING FLOWER BASKETS OR FLOWER BOXES ON THEIR BALCONY RAILS.

64. IN OR ABOUT DECEMBER 05, 2003, IN TENANTS' DISPUTE AT THE SUBJECT FACILITY BETWEEN THOSE TENANTS THAT WANTED NATIVITY SCENES AND THOSE TENANTS THAT COMPLAINED ABOUT NATIVITY SCENES IN THE BUILDING'S HOLIDAY SETTINGS, DEFENDANT ROTAN BEGAN REMOVING TENANTS' PERSONALLY OWNED NATIVITY SCENES IN THE COMMON AREAS OF THE APARTMENT BUILDING, OSTENSIBLY BECAUSE THE NATIVITY SCENES WERE A VIOLATION OF THE DELAWARE AND FEDERAL FAIR HOUSING ACT (AND IN SOME CASES DISCARDED THE NATIVITY SCENES).

65. IN OR ABOUT JANUARY, 2004, DEFENDANT ROTAN VERBALLY DEMANDED PLAINTIFFS NOT TO DONATE ITEMS TO OTHER TENANTS WHEN PLAINTIFFS HAD DONATED A PERSONAL ITEM AT A FLOOR'S COMMON AREA TABLE.

66. AT ABOUT THE SAME TIME, UPON INFORMATION AND BELIEF, OTHER TENANTS ARE PERMITTED TO DONATE ITEMS TO EACH OTHER IN THE COMMON AREAS ON ALL FLOORS AT THE SUBJECT FACILITY.

67. IN OR ABOUT FEBRURARY 4, 2004, DEFENDANT ROTAN CHARGED AND DEMANDED OF THE PLAINTIFFS AN EVEN GREATER AMOUNT OF MONTHLY RENTAL MONIES WITHOUT PROVIDING THE PLAINTIFFS THEIR RIGHT TO AN INTERIM 202/8 LEASE AND THEIR RIGHT TO SIGN A 202/8 LEASE.

68. IN OR ABOUT FEBRUARY 23, 2004, DEFENDANT ROTAN REQUESTED THE PLAINTIFFS TO REMOVE THEIR OUTDOOR FURNITURE DECK BOX FROM THEIR PRIVATE BALCONY AFTER THE DECK BOX HAD BEEN THROUGH INSPECTIONS WITHOUT CITATION.

69. IN OR ABOUT APRIL 20, 2004, DEFENDANT ROTAN REQUESTED THAT PLAINTIFFS REMOVE THEIR 7 ½" LONG CRUCIFIX, HANGING ON PLAINTIFFS' PRIVATE BALCONY WALL, AFTER THE CRUCIFIX, SECURELY FASTENED, HAD BEEN THROUGH INSPECTION WITHOUT CITATION SINCE 1993.

70. AT ABOUT THE SAME TIME, DEFENDANT ROTAN PERMITTED AND SET

13

DIFFERENT PRIVILEGES FOR OTHER TENANTS TO HANG FLOWER BOXES; PLANTS; UMBRELLAS; PLANTERS; WIND CHIMES; FLAGS; THERMOMETERS; BELL; HANGING SEASONAL DECORATIONS; AND PINWHEELS ON THEIR BALCONIES EVEN THOUGH DEFENDANT ROTAN STATED THAT SUCH HANGINGS ON BALCONIES ARE NOT PERMITTED AT THE B'NAI BRITH HOUSE FOR SENIOR CITIZENS.

71.  IN LATE SUMMER 2004, DEFENDANT ROTAN GAVE WRITTEN NOTICE TO ALL TENANTS AT THE FACILITY, INCLUDING PLAINTIFFS, THAT TENANTS MUST ATTEND MANDATORY MEETINGS WITH DEFENDANT ROTAN, WHERE, UPON INFORMATION AND BELIEF, TENANTS WERE FORCED TO REGISTER, AND EVEN THOUGH SUCH MANDATORY MEETINGS ARE ILLEGAL IN THE HUD-SUBSIDIZED FACILITY.

72.  BEGINNING 2006 (AND RETROACTIVE TO 2002) UPON INFORMATION AND BELIEF, DEFENDANT ROTAN FAILED TO ENSURE PLAINTIFFS THE PROPER EXCLUSIONS AND DEDUCTIONS IN DEFENDANT ROTAN'S CALCULATION OF PLAINTIFFS' RENT AMOUNT, RESULTING IN PLAINTIFFS' RENT BEING OVERCHARGED.

73.  ON OR ABOUT NOVEMBER 20, 2006, DEFENDANT ROTAN, IN WRITING, DENIED PLAINTIFFS' WRITTEN REQUEST OF OCTOBER 16, 2006 FOR DEFENDANTS TO INCLUDE TWO (2) CHRISTIAN HOLY DAYS (ASH WEDNESDAY AND THREE KING DAY) IN DEFENDANTS' NEWSLETTER CALENDAR, OSTENSIBLY BECAUSE DEFENDANTS "CANNOT AND DO NOT LIST EVERY HOLY DAY" (UNLESS THERE IS A PERQUISITE FOR A RELIGIOUS SERVICE THAT DAY AT THE SUBJECT FACILITY OR IF THE  BUILDING IS CLOSED).

74.  AT ABOUT THE SAME TIME, UPON INFORMATION AND BELIEF, DEFENDANT ROTAN PERMITS OTHER RELIGIOUS HOLY DAYS, SUCH AS THE PASSOVER, TO BE LISTED IN THE DEFENDANTS' BUILDING NEWSLETTER CALENDAR ACTIVITY, AND WITHOUT THE ABOVE AFOREMENTIONED PERQUISITE.

75.  DEFENDANT ROTAN'S MOST RECENT ACT OF ALLEGED DISCRIMINATION OCCURRED ON OR ABOUT DECEMBER 7, 2006, WHERE DEFENDANT ROTAN REQUESTED, IN WRITING, THAT ALL TENANTS, INCLUDING PLAINTIFFS,

MUST REMOVE ANY HANGING ITEM OVER THEIR APARTMENT FRONT DOOR
WHERE, SUBSEQUENTLY, PLAINTIFFS HAD TO REMOVE THEIR 3" x 5"
CRUCIFIX (EVEN THOUGH THE CRUCIFIX WAS SECURELY FASTENED).

76.  AT ABOUT THE SAME TIME, UPON INFORMATION AND BELIEF,
DEFENDANT ROTAN PERMITTED ANOTHER TENANT TO HANG A SLEIGH AND
RAINDEER DECORATION OVER THAT TENANTS' APARTMENT FRONT DOOR,
MUCH LARGER THAN THE PLAINTIFFS' CRUCIFIX, AND EVEN THOUGH
DEFENDANT ROTAN STATES THAT SUCH HANGINGS OVER TENANTS' FRONT
DOOR ARE NOT PERMITTED.

77.  DESPITE DEFENDANTS' EFFORTS IN DENYING PLAINTIFFS THE ABILITY
TO  HANG THEIR AMERICAN FLAG ON THEIR RESPECTIVE BALCONY RAIL,
WHILE PERMITTING OTHER TENANTS TO HANG EVEN LARGER PATIO
UMBRELLAS ON THEIR BALCONY RAILS, SYMBOLS OF THE AMERICAN FLAG
REMAIN PROMINENT IN THE BUILDING.  THEY INCLUDE THE AMERICAN
FLAG (ON A STAND) AND AN AMERICAN FLAG BARNSIDE PAINTING, IN THE
SOLARIUM; THE AMERICAN FLAG (ON A STAND) AT THE MACHZIKEY HADAS
CONGREGATION'S RISER; THE AMERICAN FLAG (HOISTED A POLE) ON
WEEKDAYS AT THE SUBJECT FACILITY'S OUTSIDE ENTRANCE; A SEASONAL
STARS AND STRIPE DECORATION AT THE DEFENDANTS' OFFICE DOOR; TWO
(2) AMERICAN FLAGS AT THE TENANTS ASSOCIATION LOBBY COMMISSARY
DOORS; THE AMERICAN FLAG POSTED ON DEFENDANTS' NEWSLETTER
COVER, IN THE PAST; THE STONE SCHOOL HOUSE AMERICAN FLAG
PAINTING, THE COURT HOUSE AMERICAN FLAG PAINTING, AND THE GRAND
OPERA HOUSE AMERICAN FLAG PAINTING, IN THE  DELAWARE ROOM; THE
AMERICAN FLAG ON TWENTY-THREE (23) TENANTS' APARTMENT DOORS;
THE AMERICAN FLAG STICKERS ON THREE (3) TENANTS' LOBBY MAILBOXES;
AND THE AMERICAN FLAG (12"x 18" FLAG ON A  24 ½" STICK POLE) HANGING
OVER THE SUBJECT FACILITY'S OUTSIDE MAINTENANCE GARAGE DOOR ON
NATIONALLY-OBSERVED VETERANS DAY 2006 AND CONTINUING.

78.  THE HISTORIC BACKDROP OF DEFENDANTS IN A PREVIOUS ALLEGED
FAIR HOUSING DISCRIMINATION COMPLAINT, IS WHERE DEFENDANTS
SETTLED AND THEIR APARTMENT MANAGEMENT AGENCY, SPM. INC.,

15

ON JUNE 15, 2006, REIMBURSED PLAINTIFFS' OUT-OF-POCKET COSTS, BUT WHERE DEFENDANTS HAVE NEVER COMMUNICATED WITH PLAINTIFFS IN PLAINTIFFS' AMERICAN FLAG HANGING COMPLAINT IN ORDER TO MINIMIZE DEFENDANTS' FLAG HANGING POLICY, SO THAT THERE WOULD BE LESS IMPACT ON PLAINTIFFS IN THE HANGING OF AN AMERICAN FLAG ON THEIR BALCONY FOR VETERANS DAY 2006.

79. AT OTHER B'NAI B'RITH APARTMENT HOUSES, UPON INFORMATION AND BELIEF CONCERNING VETERANS DAY 2006, IS WHERE THE TENANTS' AMERICAN FLAG HANGING IS PERMISSIBLE EITHER ON BALCONY RAILS OR AS LONG AS THE AMERICAN FLAG IS HUNG ON THE TENANTS' RESPECTIVE BALCONY AT RAIL-HIGH MEASUREMENT.

80. AT THE SUBJECT FACILITY IN CLAYMONT, DELAWARE, DEFENDANTS' POLICY FOR TENANTS' BALCONY FLAG FLYING, INCLUDING ON PLAINTIFFS' BALCONY, IS ALLEGEDLY "EXCESSIVE" WITH IT'S *"NO* FLAG HANGING" POLICY (WHERE A TENANT CANNOT ATTACH HIS OR HER AMERICAN FLAG TO HIS OR HER BALCONY OR HIS OR HER BALCONY RAIL), AND WHERE THE DEFENDANTS' FLAG POLICY IS ALLEGEDLY UNFAIR (SEE HUD HANDBOOK 5301.3 § 69, WHICH STATES THAT HOUSE RULES MUST NOT INFRINGE ON TENANTS CIVIL RIGHTS) AND THIS IS WHERE CERTAIN OTHER TENANTS AT THE SUBJECT FACILITY, ON VETERANS DAY 2006, SIMPLY IGNORED THE HOUSE RULES, USING THEIR OWN COMMON SENSE, AND HUNG THEIR AMERICAN FLAGS ON THEIR BALCONIES ANYWAY.

81. DEFENDANTS HAVE PUBLISHED A NOTICE TO ALL TENANTS, INCLUDING THE PLAINTIFFS, WARNING THAT THEY ARE SUBJECT TO EVICTION IF THEY DO NOT COMPLY WITH DEFENDANTS' POLICIES.

82. PLAINTIFFS HAVE REFRAINED FROM HANGING THEIR AMERICAN FLAG ON THEIR PERSPECTIVE BALCONY RAIL, FOR FEAR OF EVICTION OR OTHER FORMS OF DISCRIMINATORY ACTION AGAINST THEM.

## COUNT I
### (VIOLATION OF FAIR HOUSING ACT, 42 U.S.C. § 3601, ET SEQ.)

83. PLAINTIFFS HEREBY INCORPORATE BY REFERENCE § 1-82 OF THIS COMPLAINT.

84.  THE ACTIONS OF DEFENDANTS CONSTITUTE UNLAWFUL NATIONAL ORIGIN DISCRIMINATION AGAINST PLAINTIFFS IN VIOLATION OF THE FAIR HOUSING ACT, TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, 42 U.S.C. § 3601, AND IN PARTICULAR (BUT WITHOUT LIMITATION) 42 U.S.C. § 3604 (B), WHICH PROHIBITS DISCRIMINATION AGAINST ANY PERSON IN THE TERMS, CONDITIONS, OR PRIVILEGES OF SALE OR RENTAL OF A DWELLING, OR IN THE PROVISION OF SERVICES OR FACILITIES IN CONNECTION THEREWITH, BECAUSE OF... NATIONAL ORIGIN.

85.  PLAINTIFFS ARE MEMBERS OF A PROTECTED CLASS SET FORTH IN THE FAIR HOUSING ACT, IN THAT THEY ARE CITIZENS OF THE UNITED STATES OF AMERICA.

86.  DEFENDANTS DIRECTLY DISCRIMINATED AGAINST PLAINTIFFS ON ACCOUNT OF THEIR NATIONAL ORIGIN BY BANNING PLAINTIFFS' AMERICAN FLAG FROM HANGING ON PLAINTIFFS' BALCONY RAIL, WHILE DEFENDANTS PERMITTED OTHER TENANTS TO HANG PATIO UMBRELLAS AND OTHER SUCH HANGING ON THEIR PERSPECTIVE BALCONY RAILS AND WHERE DEFENDANTS EVEN GAVE THEMSELVES PERMISSION, IN A PARTICULAR SITUATION, TO REPEAT THEIR AMERICAN FLAG HANGING ACTIVITY ON TENANTS' BALCONY RAILS, INCLUDING PLAINTIFFS' BALCONY RAIL (EVEN THOUGH THE DEFENDANTS HOPED THEY WOULD NEVER HAVE TO).

87.  DEFENDANTS HAVE SELECTIVELY ENFORCED AGAINST PLAINTIFFS, BUT NOT AGAINST OTHER B'NAI B'RITH HOUSE TENANTS, THEIR ALLEGED HOUSING POLICY REGARDING HANGING ITEMS ON BALCONIES AND THEREBY INTERFERED TO KEEP PLAINTIFFS FROM THE FULL BENEFIT OF THE FEDERAL FAIR HOUSING LAW.

88.  DEFENDANTS FURTHER UNLAWFULLY FAILED TO ACCOMMODATE PLAINTIFFS' NATIONAL ORIGIN BELIEFS AND OBSERVANCES, DESPITE A REQUEST FOR, AND/OR DEFENDANTS' KNOWLEDGE OF THE NEED, FOR SUCH ACCOMMODATION, AND ONLY INFORMALLY (AND NON-BINDINGLY) SUDDENLY WITHDREW THEIR REFUSAL TO ACCOMMODATE TENANTS' FLAGS, INCLUDING THE PLAINTIFFS' FLAG, BY INSTRUCTING TENANTS THAT THEY MAY PLACE THEIR FLAGS IN A FLOWER POT, AND *AFTER* COMPLAINTS

17

WERE MADE AT DEFENDANT ROTAN'S OFFICE BY OTHER TENANTS.

89. WHERE DEFENDANTS COULD HAVE MADE A LESS DISCRIMINATORY EFFECT BY ADOPTING A FLAG FLYING POLICY THAT WOULD ENABLE PLAINTIFFS' AMERICAN CITIZENSHIP INTEREST SERVED WITH LESS DISCRIMINATORY IMPACT, OTHER THAN PLACING THE AMERICAN FLAG IN A FLOWER POT, DEFENDANTS DID NOT; BUT PUT "EXCESSIVE" LIMITS ON ALL TENANTS, INCLUDING PLAINTIFFS, IN FLAG HANGING ON THEIR BALCONIES.

90. DEFENDANTS' ACTIONS HAVE, MOREOVER, CREATED A HOSTILE ENVIRONMENT IN WHICH THE CONDITIONS AND TERMS OF RENTAL OCCUPANCY WERE CHANGED IN A DISCRIMINATAORY MANNER.

91. DEFENDANTS' ACTIONS WERE BOTH WILLFUL AND MALICIOUS.

92. PLAINTIFFS REASONABLY FEAR THAT ABSENT JUDICIAL INTERVENTION BY WAY OF INJUNCTIVE RELIEF, THEY WILL BE IRREPARABLY HARMED BY FUTURE VIOLATION OF THEIR NATIONAL ORIGIN BELIEFS AND EXPRESSIONS IN THE MANNER PLEADED ABOVE, AS WELL AS BEING SUBJECT TO EVICTION ON ACCOUNT OF THEIR NATIONAL ORIGIN BELIEFS.

## COUNT II
### (VIOLATION OF DELAWARE FAIR HOUSING ACT, 6 DEL.C. § 4601, ET SEQ.)

93. PLAINTIFFS HEREBY INCORPORATE HEREIN BY REFERENCE OF COUNT I OF THIS COMPLAINT, § 1-82 AND § 85- 92 .

94. DEFENDANTS' ACTIONS VIOLATE THE DELAWARE FAIR HOUSING ACT, 6 DEL.C. § 4601, ET SEQ AND, IN PARTICULAR, § 4603 (B)(2), WHICH PROHIBITS DISCRIMINATION AGAINST ANY PERSON IN THE TERMS, CONDITIONS OR PRIVILEGES OF SALE OR RENTAL OF A DWELLING, OR IN THE PROVISION OF SERVICES OR FACILITIES IN CONNECTION THEREWITH, BECAUSE OF... NATIONAL ORIGIN.

95. DEFENDANTS' ACTIONS WERE BOTH WILLFUL AND MALICIOUS.

96. PLAINTIFFS REASONABLY FEAR THAT ABSENT JUDICIAL INTERVENTION BY WAY OF INJUNCTIVE RELIEF, THEY WILL BE IRREPARABLY HARMED BY FUTURE VIOLATION OF THEIR NATIONAL ORIGIN BELIEFS AND EXPRESSIONS AND IN THE MANNER PLEADED ABOVE.

## PRAYER FOR RELIEF

**WHEREFORE, PLAINTIFFS SEEK JUDMENT BY THIS COURT AGAINST DEFENDANTS, JOINTLY, AND SEVERALLY, FOR THE FOLLOWING RELIEF:**

### AS TO COUNT I:

**A.**     AN AWARD OF COMPENSATORY AND PUNITIVE DAMAGES;

**B.**     REASONABLE ATTORNEY'S FEES PURSUANT TO 42 U.S.C. § 3613(C)(2);

**C.**     AN EFFECTIVE  PERMANENT INJUNCTION AGAINST FUTURE DISCRIMINATORY ACTS BY DEFENDANTS;

**D.**     SUCH OTHER RELIEF AS THIS COURT MAY DEEM JUST AND PROPER.

### AS TO COUNT II:

**A.**     AN AWARED OF COMPENSATORY AND PUNITIVE DAMAGES;

**B.**     REASONABLE ATTORNEY'S FEES PURSUANT TO 6 DEL.C. § 4613(B)(3);

**C.**     AN EFFECTIVE PERMANENT INJUNCTION AGAINST FUTURE DISCRIMINATORY ACTS BY DEFENDANTS;

**D.**     SUCH OTHER RELIEF AS THIS COURT MAY DEEM JUST AND PROPER.

### JURY DEMAND

**PLAINTIFFS HEREBY DEMAND TRIAL BY JURY OF ALL ISSUES SO TRIABLE.**

# # #

19

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE
AND CORRECT.


**SIGNED THIS** _14th_ **DAY OF** _March_ , 2007


_____
**SIGNATURE OF PLAINTIFF #1**


_____
**SIGNATURE OF PLAINTIFF #2**


*PRO-SE* LITIGATES
B'NAI B'RITH HOUSE
8000 SOCIETY DRIVE
APARTMENT #608
CLAYMONT, DELAWARE 19703-1749
TELE/FAX (302) 798-5116

07-152

JS 44   (Rev. 11/04)

# ✓ CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Isidore Corwin and
Bonnie Corwin

**(b)** County of Residence of First Listed Plaintiff   NEW CASTLE
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
B'nai B'rith House, Apt. 608
8000 Society Drive, Claymont,
DE 19703
PRO SE
Address above (302-798-5116)

## DEFENDANTS

B'nai B'rith Senior Citizen Housing, Inc.
Southeastern Properties Management, Inc.
Lynne Rotan

County of Residence of First Listed Defendant   NEW CASTLE
bs.       (IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)  Atty Wilks
Buchanan Ingersoll, P.C.
1007 N. Orange St, Sut. 1110
Wilmington, DE 19801

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
     Plaintiff

☒ 3  Federal Question
     (U.S. Government Not a Party)

☐ 2  U.S. Government
     Defendant

☐ 4  Diversity
     (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C.A. Sections 3601-3631; Title VIII of the 1968 Civil Rts. Act, Sec. 801

Brief description of cause:
National Origin discrimination in American Flag hanging in HUD Housing

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

NONE/PREM

(See instructions):
JUDGE  Gregory M. Sleet     DOCKET NUMBER  CA 04-1499 (closed)

DATE   March 14, 2007

SIGNATURE OF ATTORNEY OF RECORD   Isidore & Bonnie Corwin   pro se

## FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

Pro-se
IFP

DATED: MARCH 14, 2007                                 0 7 - 1 5 2 -


ISIDORE AND BONNIE CORWIN
B'NAI B'RITH HOUSE
8000 SOCIETY DRIVE
APT. 608
CLAYMONT, DE 19703

PETER T. DALLEO, CLERK
U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE
844 NORTH KING STREET
LOCKBOX 18
WILMINGTON, DE 19801-3570

CASE:  NEW C.A. COMPLAINT: CORWIN V. B'NAI B'RITH ET AL


DEAR CLERK OF THE COURT ,

PER OUR TELEPHONE CONVERSATION WITH THE U.S. DISTRICT COURT
CLERK'S OFFICE, AS PLAINTIFFS PRO SE, IN THE ABOVE NAME CASE, WE
ARE HERETO ENCLOSING FOR YOU, FOR THE PURPOSE OF FILING, THE
FOLLOWING:

- A COMPLETED CIVIL COVER SHEET.
- THE ORIGINAL COMPLAINT AND ONE COPY.
- THREE (3) ADDITIONAL COPIES OF THE COMPLAINT FOR EACH DEFENDANT.
- THREE (3) COMPLETED #285 PROCESS RECEIPT AND RETURN FORMS.
- PROCEED W/O PREPAYMENT OF FEES AND AFFIDAVIT FORM AND ONE COPY.
- IN FORMA PAUPERIS MOTION AND ONE COPY.
- APPLICATION FOR A COURT-ORDERED ATTORNEY AND ONE COPY.


THANK YOU FOR YOUR ASSISTANCE.


SINCERELY
ISIDORE AND BONNIE CORWIN
TELE/FAX 302-798-5116