**DATED: MAY 7, 2007**

ISIDORE AND BONNIE CORWIN
B'NAI B'RITH HOUSE
8000 SOCIETY DRIVE
APT. 608
CLAYMONT, DE 19703



PETER T. DALLEO, CLERK
U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE
844 NORTH KING STREET
LOCKBOX 18
WILMINGTON, DE 19801-3570

**RE: CORWIN V. B'NAI B'RITH ET AL, C. A. NO. 07-152- \*\*\***

DEAR CLERK OF THE COURT ,

    PLEASE FIND ENCLOSED, FOR FILING PURPOSES, **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS** WITH PLAINTIFFS' ATTACHED EXHIBITS AND ACCOMPANYING CERTIFICATE OF SERVICE.

    THANK YOU FOR YOUR ASSISTANCE.

SINCERELY,
ISIDORE AND BONNIE CORWIN, PRO SE
TELE/FAX 302-798-5116

# IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF DELAWARE

- - -

ISIDORE CORWIN AND BONNIE CORWIN :
(INFORMA PAUPERIS STATUS)

                                                :

PLAINTIFFS,                   :

                                                :

                                                :

                                                :

V.                                              :

                                                :

B'NAI B'RITH SENIOR CITIZEN HOUSING, INC., :
ET AL

DEFENDANTS.                 :

- - -

CIVIL ACTION

**NO. 07-CV-152-***
JURY TRIAL DEMANDED



FILED

MAY ~ 8 2007

*RG scand*

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## PLAINTIFFS'
## *RESPONSE* TO DEFENDANTS' MOTION TO DISMISS

PLAINTIFFS WISH TO DIRECT THE COURT TO PLAINTIFFS' PREVIOUSLY FILED

MOTION FOR A COURT-ORDERED ATTORNEY. IF IT PLEASES THE COURT AT THIS TIME,

PLAINTIFFS ARE REQUESTING IF THE COURT COULD DELAY ITS *RULING ON* DEFENDANTS'

MOTION TO DISMISS UNTIL AFTER THE COURT HAS RULED ON PLAINTIFFS' MOTION FOR

A COURT-ORDERED ATTORNEY. PLAINTIFFS RESPECTFULLY SUBMIT THIS

CONSIDERATION.

PLAINTIFFS, PRO SE, TURN WITH THEIR *RESPONSE* TO DEFENDANTS' MOTION TO

DISMISS: PLAINTIFFS BELIEVE THE DISMISSAL MOTION CHALLENGES PLAINTIFFS'

STANDING TO PURSUE THEIR COMPLAINT, BUT WHERE DEFENDANTS' MOTION,

ALLEGEDLY DEMONSTRATES THE *ABSENCE* OF A GENUINE ISSUE OF MATERIAL FACT.

CELOTEX CORP. V. CATRETT, 477 U.S. 317, 323, 91 L. ED. 2D 265, 106 S. CT. 2548 (1968).

1

A FACT IS "MATERIAL" ONLY IF ITS RESOLUTION WILL AFFECT THE OUTCOME OF THE LAWSUIT. SEE ANDERSON V. LIBERTY LOBBY, INC., 477 U.S. 242, 248, 91 L. ED. 2D 202, 106 S. CT. 2505 (1986).

THE DEFENDANTS' MOTION TO DISMISS AND COMPANION BRIEF DISPUTES THAT PLAINTIFFS HAVE THE RIGHT TO INVOKE THE COURT TO ENFORCE THEIR CLAIM OR REDRESS THEIR GRIEVANCE (AGAINST DEFENDANTS' *FLAG POLICY* AT THE SUBJECT APARTMENT HOUSE FOR SENIORS) CLAIMING PLAINTIFFS FAIL TO "STATE A CLAIM" IN THEIR COMPLAINT UPON WHICH RELIEF COULD BE GRANTED.

AS LONG AS THE PLAINTIFFS HAVE STANDING (SEE NEWARK LANDLORD ASSOC. V. CITY OF NEWARK, 2003 CEL. CH. LEXIS 66) THE MERITS AND OUTCOME OF PLAINTIFFS' CASE MAY BE DETERMINED.

A PARTY HAS STANDING TO ASSERT ONLY A VIOLATION OF THEIR OWN RIGHTS. (SEE VIRGINIA V. AMERICAN BOOKSELLER ASS'N., 484 U.S. 383, 392, 98 L. ED. 2D 782, 108 S. CT. 636 (1988)). AN EXCEPTION TO THIS TRADITIONAL STANDING RULE HAVE BEEN CARVED OUT WITHIN THE CONTEXT OF THE FIRST AMENDMENT, WHERE PLAINTIFFS ARE ALLOWED TO CHALLENGE AN ORDINANCE (I.E. DEFENDANTS' *FLAG POLICY*) ON ITS FACE ON THE GROUNDS THAT (*THE POLICY*) IS CONTENT-BASED, R.A.V. *V.* CITY OF ST. PAUL, 505 U.S. 377, 381, 120 L. ED. 2D 305, 112 S. CT. 2538 (1992), AND THAT IT MIGHT CHILL THE FIRST AMENDMENT RIGHTS NOT ONLY OF THE PLAINTIFFS, BUT OF OTHERS NOT BEFORE THE COURT (SEE AMERICAN BOOKSELLERS, 484 U.S. AT 392-93).

IN MC EVOY V. SPENCER, 124 F. 3D 92, 95 (2D CIR. 1997) THE COURT ACCEPTS AS TRUE ALL MATERIAL FACTS ALLEGED IN A COMPLAINT AND DRAWS ALL REASONABLE INFERENCES IN PLAINTIFFS' FAVOR. A MOTION FOR DISMISSAL IS PROPER ONLY WHERE IT APPEARS BEYOND DOUBT THAT PLAINTIFFS CAN PROVE NO SET OF FACTS IN SUPPORT OF THEIR CLAIM WHICH WOULD ENTITLE THEM TO RELIEF. (SEE VALMONTE V. BANE, 18 F. 3D 992, 998 (2ND CIR. 1994)).

PLAINTIFFS BELIEVE DEFENDANTS' MOTION TO DISMISS, TOO, IS IN ERROR,

2

WHERE DEFENDANTS CLAIM THAT DEFENDANTS' *FLAG POLICY* IS *UNIFORM* IN

APPLICATION TO ALL TENANTS' FLAGS *REGARDLESS* OF NATIONAL ORIGIN AT THE

FACILITY (SEE DEFENDANTS MOTION TO DISMISS, SUMMARY OF ARGUMENT, P.1, PARA. 2,

LINE 3).

 PLAINTIFFS ASSERT THE *FLAG POLICY* AT THE B'NAI B'RITH HOUSE IS *NOT*

UNIFORM AND THE *POLICY,* ON ITS *FACE, DOES DISTINGUISH* AMONG TYPES OF FLAGS ,

ALLEGEDLY, ON THE BASIS OF *CONTENT.*

 CLARIFICATION OF DEFENDANTS' *FLAG ORDINANCE* READS IN A NOTICE TO ALL
RESIDENTS ON SEPTEMBER 18, 2006:
(AT EXH A).

*"TO ALL RESIDENTS:*
 IT SEEMS THAT CLARIFICATION MAY BE NEEDED CONCERNING HANGING FLAGS ON THE
 BALCONIES. B'NAI B'RITH HOUSE IS NOT OPPOSED TO RESIDENTS DISPLAYING FLAGS ON
 THEIR BALCONIES AS LONG A THEY DO NOT VIOLATE THE RULES AND REGULATIONS
 TO DO SO. THIS MEANS YOU *CANNOT (EMPHASIS ADDED)* HANG FLAGS ON THE BALCONY.
 YOU MAY BE CREATIVE; FOR EXAMPLE - YOU MAY PUT A FLAG ON A STICK IN A
 FLOWER POT, DRAPE ONE (A FLAG) ON A CHAIR, ETC. JUST BE SURE (THE) FLAG WILL NOT
 COME LOOSE AND FALL ON YOUR NEIGHBOR. L. ROTAN (BBH, CLAYMONT).

 *QUOTE*: "YOU MAY BE CREATIVE; FOR EXAMPLE - YOU MAY PUT A FLAG ON A

STICK IN A FLOWER POT, DRAPE ONE ON A CHAIR, ETC.", *END QUOTE*; IS WHERE,

UNFAIRLY, PLAINTIFFS' AND OTHER TENANTS' AMERICAN FLAGS "OUTSIZE"

DEFENDANTS' INTENDED FLAG POLICY; AND ARE WITHOUT ACCOMMODATION IN THE

DEFENDANTS' *POLICY.* IT IS NOT PLAUSIBLE AND UNREASONABLE FOR PLAINTIFFS'

3' X 5' AMERICAN FLAG OR OTHERS' AMERICAN FLAGS THAT ARE EVEN LARGER THAN

PLAINTIFFS' FLAG, TO BE IN KEEPING WITH FLAGS ON BALCONIES WHOSE SIZE AND

MESSAGE CAN FIT IN A FLOWER POT.

 PLAINTIFFS BELIEVE DEFENDANTS IMPOSE THEIR VIEWS ON TENANTS IN THEIR

*FLAG POLICY,* WHICH *POLICY*, ALLEGEDLY PROHIBITS PLAINTIFFS' "OUTSIZED"

AMERICAN FLAG FROM BEING ON DISPLAY ON PLAINTIFFS' PRIVATE BALCONY.

 THE *FLAG POLICY,* ALSO, *ALLEGEDLY* GRANTS DEFENDANTS DISCRETIONARY

AUTHORITY TO DENY OR REVOKE CERTAIN SIZE FLAGS, AND "AT DEFENDANTS' WHIM,"

3

ALL IN VIOLATION OF THE FIRST AMENDMENT AND THE ANTI-DISCRIMINATION

PROVISIONS OF TITLE VIII.

*QUOTE*: "B'NAI B'RITH HOUSE IS NOT OPPOSED TO RESIDENTS DISPLAYING FLAGS

ON THEIR BALCONIES AS LONG A THEY DO NOT VIOLATE THE RULES AND REGULATIONS

TO DO SO. THIS MEANS YOU *CANNOT HANGS FLAGS* ON THE BALCONY…(EMPHASIS

ADDED)." *END QUOTE*. (SEE 9/18/06 FLAG POLICY CLARIFICATION). THIS *POLICY* IS WHERE

DEFENDANTS ADMIT THEY HAVE *PREVIOUSLY* PERMITTED PLAINTIFFS' 3' X 5' FLAG

AMERICAN FLAG TO HANG ON PLAINTIFFS' PRIVATE BALCONY PRIOR TO SEPTEMBER 15,

2006 (SEE MOTION TO DISMISS, P. 3, NO. 6).

BEGINNING SEPTEMBER 15, 2006, HOWEVER, IS WHERE *DEFENDANTS' FLAG POLICY*

IS ALLEGEDLY A DELIBERATE EFFORT BY DEFENDANTS TO REDUCE PLAINTIFFS' AND

OTHERS' SPEECH IN THE SUBJECT FACILITY WITH A *POLICY*-FAVORED SIZE RESTRICTION

ON FLAGS, AFFECTING PLAINTIFFS' AND THE DISPLAY OF THEIR FLAG OF NATIONAL

ORIGIN, THE AMERICAN FLAG ON THEIR RENTED BALCONY.

FACTS THAT CAN BE PROVEN ARE THAT DEFENDANTS' *FLAG POLICY*

APPLICATION *PERMITS* CHIMES AND THERMOMETERS TO HANG ON TENANTS'

BALCONIES; AND UMBRELLAS, PLANTERS, FLAG HOLDERS, AND HOLIDAY WREATHES

AND GARLAND TO HANG ON BALCONY RAILS, BUT NOT PLAINTIFFS' AMERICAN FLAG.

**HUD'S** MULTI-FAMILY PROPERTIES ARE TO TREAT TENANTS INEQUITABLY AND

IN TERMS OF LEASE AND HOUSE RULES. FN 1& 2.

--------------------FOOTNOTES----------------



FN 1. "OWNERS OF HUD-SUBSIDIZED MULTIFAMILY PROPERTIES ARE SUBJECT OF SEVERAL
FEDERAL CIVIL RIGHTS LAWS AFFECTING OCCUPANCY. THE REQUIREMENTS SEEK TO ENSURE
THAT ALL APPLICANTS HAVE EQUAL ACCESS TO AFFORDABLE HOUSING AND THAT OWNERS
TREATS ALL TENANTS EQUITABLY." HUD OCCUPANCY HANDBOOK, CIVIL RIGHTS, P. 2-1, (A).
FN 2 . UNDER THE FAIR HOUSING ACT, "OWNERS…BASED ON RACE, COLOR, RELIGION, SEX,
DISABILITY, FAMILIAL STATUS, OR NATIONAL ORIGIN:…(MUST NOT TAKE THE ACTION) TO TREAT
ANYONE DIFFERENTLY…IN THE TERMS AND CONDITIONS OF A LEASE." HUD OCCUPANCY
HANDBOOK, TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, P.2-4,5. (B).
--------------------------END FOOTNOTES---------------

## THE DEFENDANTS' FLAG POLICY/ORDINANCE:

4

"HOUSE RULES ARE BENEFICIAL IN KEEPING THE PROPERTIES SAFE AND MAKING

THEM MORE APPEALING. (HUD HANDBOOK P. 6-15. NO 6-9). OWNERS, HOWEVER, MUST BE

CAREFUL NOT TO DEVELOP RESTRICTIVE RULES THAT LIMIT THE FREEDOM OF TENANTS.

IF OWNERS DEVELOP HOUSE RULES...THESE HOUSE RULES MUST BE CONSISTENT WITH

**HUD** REQUIREMENTS FOR OPERATING **HUD**-SUBSIDIZED PROJECTS, MUST BE

REASONABLE, AND MUST NOT INFRINGE ON TENANTS' CIVIL RIGHTS. THE KEY

REQUIREMENTS FOR HOUSE RULES IS THAT THEY MUST BE *REASONABLE*. REASONABLE

HOUSE RULES ARE WITHIN THE BOUNDS OF COMMON SENSE; NOT EXCESSIVE OR

EXTREME, AND MOST IMPORTANTLY, THEY ARE *FAIR*. (HUD HANDBOOK P. 6-9. A.2).

DEFENDANTS' UNDERLYING HOUSE RULE FOR FLAGS ON BALCONIES STATES

THAT EACH UNIT'S TENANT SHALL NOT HANG MOPS, CLOTHING, CLOTHES LINES, RUGS

OR OTHER ARTICLES OUTSIDE THE PREMISES (AT HOUSE RULE BOOK NUMBER FIFTEEN):

**"#15. BALCONIES/PORCHES/PATIOS....**
NO MOPS, CLOTHING, CLOTHES LINES, RUGS OR OTHER ARTICLES SHALL BE HUNG
OUTSIDE OF THE PREMISES. NO RUGS OR DUST MOPS SHALL BE BEATEN, CLEANED OR
SHAKEN OUT OF THE WINDOWS, PORCHES, PATIOS, BALCONIES, OR IN HALLS..., NOR
SHALL ANYTHING BE THROWN OR SWEPT BY THE RESIDENTS OR THEIR GUESTS OUT
OF THE WINDOWS, DOORS... . ONLY PATIO FURNITURE AND LIVE PLANTS MAY BE STORED
ON...BALCONIES. NO PERSONAL BELONGINGS OF THE RESIDENT MAY BE STORED ON THE
BALCONY...UNLESS APPROVED BY MANAGEMENT... . NO GAS GRILLING, CHARCOAL
GRILLING, OR FOOD/SMOKERS ARE ALLOWED ...ON RESIDENT'S PATIO OR BALCONY.
... (CREDIT: (SPM-7010 REV. 05/06 (B.B. CLAYMONT ONLY)))."
(AT EXH. B)

(NOTE: THERE IS NO *CLEAR* ORDINANCE IN THE BALCONY RULE REGARDING FLAGS).

THE DEFENDANTS THEMSELVES HAD EXISTING NONCONFORMING FLAGS TO THE

HOUSE RULE #15, WHERE THEY POSTED AMERICAN FLAGS ON TENANTS' BALCONY RAILS

SINCE SHORTLY AFTER THE TERRORIST ATTACK ON THE WORLD TRADE CENTER.

DEFENDANTS REMOVED THE FLAGS FROM TENANTS' BALCONY RAILS IN 2004, WITH THE

REASON THAT THE FLAGS WERE WORN AND TATTERED *(NOT FOR SAFETY REASONS)*.

THEN IN 2006, ON SEPTEMBER 15, 2006, IN A LETTER TO THE ALL TENANTS,

DEFENDANTS REQUESTED THE PROMPT *REMOVAL* OF *"ALL"* FLAGS FROM TENANTS'

BALCONIES, WITH REASON OF (THE BROAD GOAL OF) "SAFETY CONCERNS".

(AT EXH. C).                                            5

IN THE DEFENDANTS' AMENDED *FLAG POLICY* OF SEPTEMBER 18, 2006,
DEFENDANTS NOW PERMITTED RESIDENTS TO RETURN THEIR FLAGS TO THEIR
BALCONIES, BUT THE AMENDMENT WAS RESTRICTIVE WHERE IT DISTINGUISHES THAT
THE RETURNING FLAGS MAY BE PUT ON A STICK AND PUT INTO A FLOWER POT, BUT
MADE NO ACCOMMODATION FOR OUTSIZED FLAGS BELONGING TO PLAINTIFFS AND
OTHERS AT THE FACILITY.

SUBSEQUENTLY, PLAINTIFFS' AND OTHERS' FLAGS, AMERICAN FLAGS, WITH A
LARGER MESSAGE, THAT DO NOT CONFORM TO THE FAVORED SIZE AND MEASUREMENT
OF A FLOWER POT; AND WHERE OTHERS' SMALLER FLAGS OR SOME "CUTESY" FLAGS *DO*,
IS WHERE THE *FLAG POLICY* DOES NOT APPLY TO *ALL* TENANTS AND *ALL* MANNERS OF
FLAGS.

PLAINTIFFS ASSERT DEFENDANTS' *FLAG POLICY* IS NOT *NEUTRAL*, ON ITS FACE, AS
DEFENDANTS CONTEND (SEE <u>MOTION TO DISMISS, P.5, LAST PARA</u>). PLAINTIFFS
CHALLENGE THE ALLEGEDLY CONTENT-BASED *FLAG POLICY* AND IN REGARD TO
PLAINTIFFS' MESSAGE CONTENT INTENDED FOR DISPLAY WITH THEIR AMERICAN FLAG
ON PLAINTIFFS' PRIVATE BALCONY. (SEE <u>R.A.V. *V.* CITY OF ST. PAUL, 505 U.S. 377, 381, 120</u>
<u>L. ED. 2D 6305, 112 S. CT 2538 (1992)</u>,

TO DETERMINE WHETHER THE DEFENDANTS' FLAG POLICY IS CONTENT-BASED
OR CONTENT-NEUTRAL, THE COURT MUST APPLY THE PROPER LEVEL OF SCRUTINY. (SEE
<u>RICHLAND BOOKMART, INC. V. NICHOLS, 137 F. ED. 435, 440 (6TH CIR. 1998)</u>,

CONTENT-BASED RESTRICTIONS ON PROTECTED SPEECH RECEIVE *STRICT*
SCRUTINY. THE GOVERNMENT MUST "SHOW THAT THE REGULATION IS NECESSARY
TO SERVE A COMPELLING STATE INTEREST AND THAT IT IS NARROWLY DRAWN TO
ACHIEVE THAT END," <u>BOOS V. BARRY, 485 U.S. 312, 321-22, 99 L. ED. 2D 333, 108 S. CT. 1157</u>
<u>(1988); TURNER, 512 U.S. AT 680</u>, AND USES THE *LEAST* RESTRICTIVE MEANS TO DO SO,
<u>(WARD, 491 U.S. AT 798)</u>.

A REGULATION OF SPEECH IS CONTENT-BASED WHEN THE CONTENT CONVEYED

6

DETERMINES WHETHER SPEECH IS SUBJECT TO RESTRICTION. TURNER BROAD. SYS. V. FCC, 512 U.S. 622, 643, 129 L. ED. 2D 497, 114 S. CT. 2445 (1994) (I.E. THE DISPLAY OF THE AMERICAN FLAG), ("... THAT BY THEIR TERMS DISTINGUISH *FAVORED* SPEECH FROM *DISFAVORED* SPEECH ON THE BASIS OF THE IDEAS OR VIEWS ARE CONTENT-BASED." (I.E. THE DEFENDANTS' IDEA OR VIEW IN THEIR *FLAG POLICY* FOR TENANTS' BALCONIES).

THE SUPREME COURT HAS DETERMINED THAT "SAFETY" IS A SUBSTANTIAL INTEREST. HOWEVER, THE COURT HAS NEVER DETERMINED THAT THESE INTERESTS ARE COMPELLING ENOUGH TO JUSTIFY CONTENT-BASED RESTRICTIONS ON FULLY PROTECTED SPEECH. (METROMEDIA, INC. V. CITY OF SAN DIEGO, 453 U.S. 490, 507-08, 69 L. ED. 2D 800, 101 S. CT 2882 (1981).

EVEN IF THE DEFENDANTS' INTEREST IN "SAFETY CONCERNS" COULD BE CONSIDERED "COMPELLING," PLAINTIFFS BELIEVE THE *FLAG POLICY* WOULD FAIL THE *STRICT* SCRUTINY TEST BECAUSE IT IS NOT EMPLOYING THE *LEAST* RESTRICTIVE MEANS AVAILABLE TO SERVE THE DEFENDANTS' COMPELLING INTEREST. (SEE PERRY EDUC. ASS'N V. PERRY LOCAL EDUCATORS' ASS'N, 460 U.S. 37, 45, 74 L. ED. 2D 794, 103 S. CT 948 (1983).

ON OCTOBER 12, 2006, WITH EXISTING UMBRELLAS AND PLANTERS HANGING ON OTHERS' BALCONY RAILS AT THE SUBJECT FACILITY (PERMITTED BY THE DEFENDANTS IN THEIR *FLAG POLICY* APPLICATION) PLAINTIFFS MADE WRITTEN APPLICATION FOR AN ALTERNATIVE...FOR PLAINTIFFS TO HANG THEIR 3' X 5' FLAG IN THE MANNER ON THEIR BALCONY RAIL. DEFENDANTS DENIED THE REQUEST.

(AT EXH. D).

THE ALLEGEDLY OUTRIGHT BANNING OF PLAINTIFFS' AMERICAN FLAG ON PLAINTIFFS' BALCONY AND THE OVERALL *EFFECT* ON PLAINTIFFS' AND THEIR MESSAGE OF NATIONAL ORIGIN, (SEE MARCH 15, 2006 COMPLAINT), IS WHERE PLAINTIFFS BELIEVE AN AFFIRMATIVE COURSE OF ACTION *COULD* HAVE BEEN ADOPTED BY THE DEFENDANTS THAT WOULD OF ENABLED DEFENDANTS' INTEREST TO BE SERVED WITH LESS DISCRIMINATORY *IMPACT* ON PLAINTIFFS, AND AS ADOPTED AT *OTHER* APARTMENTS:

7

- **B'NAI B'RITH APT/WEST SUBSIDIZED HOUSING FOR THE ELDERLY,** ALLENTOWN, PA. 13 FLOORS. BALCONY RULES - SECURE ATTACHMENT ON BALCONY RAILING OK. 610-821-0207.
- **B'NAI B'RITH HOMECREST HOUSE APT FOR THE ELDERLY,** SILVER SPRINGS, MD. 5 FLOORS. BALCONY RULES - HANGING ITEMS OK ON BALCONY. 301-598-4000.
- **SILVER SPRINGS APTS,** WILMINGTON, DE. SECTION EIGHT LANDLORD; 4 FLOORS. BALCONY RULES - HANGING ITEMS OK ON BALCONY. 302-992-0800.
- **QUAKER HILL PLACE APTS,** WILMINGTON, DE. SUBSIDIZED HOUSING FOR THE ELDERLY; 8 FLOORS; BALCONY RULES - HANGING ITEMS ON BALCONY OK. 302-571-0100
- **STRATFORD APTS,** WILMINGTON, DE. 4 FLOORS; BALCONY RULES: HANGING ITEMS ON BALCONY OK; FLAGS AND HANGING FLOWER BOX ON BALCONY RAILS OK. 302-478-1215
- **SAM J. STONE B'NAI B'RITH COVENANT APTS I/II,** PEORIA, ILL. 11 FLOORS. BALCONY RULES - HANGING ITEMS ON WALL *BELOW* RAIL-HIGH BALCONY RAIL OK. 309-676-0041.

HUD STATES **"FEDERAL DISCRIMINATION LAWS GENERALLY PROHIBIT**

**PROVIDERS FROM IMPLEMENTING POLICIES THAT APPEAR TO BE *NEUTRAL* ON**

**THEIR FACE BUT HAVE A SIGNIFICANT ADVERSE OR DISPROPORTIONATE *IMPACT* ON**

**PERSONS BASED ON ...NATIONAL ORIGIN."** (HUD HANDBOOK, P. 2-13 AT 2-18, AT "C").

PLAINTIFFS BELIEVE THEY HAVE MADE A SHOWING IN THEIR COMPLAINT THAT A

PRIMA FACIE HOUSING DISCRIMINATION CLAIM EXISTS IN *DEFENDANTS' FLAG POLICY.*

(TOWN HALL TERRACE ASS'N, 1997 U.S. DIST. LEXIS, 1997 WL 128353), AND, THAT THE

DEFENDANTS' *FLAG POLICY* IS FACIALLY DISCRIMINATORY (SEE ARC OF N.J., INC. V. NEW

JERSEY, 950 F. SUPP. 637, 643 (D.N.J. 1996)).

FREE SPEECH CLAUSE OF THE FIRST AMENDMENT STATES THAT "CONGRESS

SHALL MAKE NO LAW...ABRIDGING THE FREEDOM OF SPEECH..."(U.S. CONST. AMEND. I.).

THE FIRST AMENDMENT IS APPLICABLE TO THE POLITICAL SUBDIVISIONS OF THE STATES

UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT. LIQUORMART,

INC. V. RHODE ISLAND, 517 U.S. 484, 489 N. 1, 134 L. ED. 2D 711, 116 S. CT 1495 (1996). FN2

--------------------FOOTNOTE-------------------

FN2: AT THE HEART OF THE FIRST AMENDMENT LIES THE PRINCIPLE THAT EACH PERSON SHOULD DECIDE FOR HERSELF OR HIMSELF THE IDEAS AND BELIEFS DESERVING OF EXPRESSION.... . GOVERNMENT ACTION THAT STIFLES SPEECH ON ACCOUNT OF ITS MESSAGE, OR THAT REQUIRES THE UTTERANCE OF A PARTICULAR MESSAGE FAVORED BY THE GOVERNMENT, CONTRAVENES THIS ESSENTIAL RIGHT. LAWS OF THIS SORT POSE THE INHERENT RISK THAT THE GOVERNMENT SEEKS NOT TO ADVANCE A LEGITIMATE REGULATORY GOAL, BUT TO SUPPRESS UNPOPULAR IDEAS OR INFORMATION OR MANIPULATE THE PUBLIC DEBATE THROUGH COERCION RATHER THAN PERSUASION. THESE RESTRICTIONS RAISE THE SPECTER THAT THE GOVERNMENT MAY EFFECTIVELY DRIVE CERTAIN IDEAS...FROM THE MARKET PLACE." TURNER, 512 U.S. AT 641. ----------------END FOOTNOTE----------------

CURRENT SUPREME COURT DECISIONS MANDATE THAT TO ESTABLISH WHERE

8

DEFENDANTS HAVE ABRIDGED CONSTITUTIONAL GUARANTIES, SOMETHING MORE THAN

A DISPROPORTIONATE DISCRIMINATORY IMPACT MUST BE PROVEN. THE "IMPACT-PLUS"

TEST IS SATISFIED IF, IN ADDITION TO DISPROPORTIONATE IMPACT, A DISCRIMINATORY

PURPOSE IS SHOWN. DAYTON BOARD OF EDUCATION V. BRICKMAN, 433 U.S. 406, 53 L. ED.

2D 851, 45 U.S.L.W. 4910, 4914, 97 S. CT. 2766 (1977).

KNOWING THAT THE DEFENDANTS DID NOT REQUEST PLAINTIFFS AND OTHERS

TO REMOVE FLAGS FROM BALCONIES BETWEEN 2001 AND PRIOR TO SEPTEMBER 15, 2006

CIRCUMSTANCE, SHOWS A SUDDEN SHIFT IN THE DEFENDANTS' POSITION FROM

DEFENDANTS' ADMITTED PASSIVE ACCEPTANCE OF FLAGS TO ACTIVE OPPOSITION OF

FLAGS ON TENANTS' BALCONIES. IN THE FACE OF PROTESTS BY OTHERS

OF HAVING TO REMOVE THEIR FLAGS ON BALCONIES, (WHO WERE MANIFESTING

NATIONAL ORIGIN BIAS BY THE DEFENDANTS), IS WHERE THE DEFENDANTS' *FLAG*

*POLICY* CLARIFICATION OF SEPTEMBER 18, 2006, WAS AN ALLEGED EFFORT BY

DEFENDANTS TO REDUCE TENANTS' SPEECH TO THE SIZE OF A FLOWER POT AND

PROVIDES SOME INDICATION OF AN IMPROPER PURPOSE BY THE DEFENDANTS.

GIVEN THE INCREASED BURDEN OF PROOF WHICH IS NOW PLACED UPON EQUAL

PROTECTION CLAIMANTS, (SEE VILLAGE OF ARLINGTON HEIGHTS V. METROPOLITAN

HOUSING DEVELOPMENT CORP., SUPRA, 45 U.S.L.W. AT 4077 (1988)), TITLE VIII RIGHTS

MAY BE ENFORCED EVEN *WITHOUT* DIRECT EVIDENCE OF DISCRIMINATORY INTENT. FN3.

----------------------FOOTNOTES----------
FN3 PLAINTIFFS' CLAIM UNDER THE FAIR HOUSING ACT, TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, 42 U.S.C. SECTION 3601 ET SEQ, IS WHERE IT IS ONE OF THE EASIEST TO PROVE (AS PLAINTIFFS NEED NOT SHOW UNDER THAT ACT THAT DEFENDANT'S DISCRIMINATORY ACTS WERE DONE INTENTIONALLY),RESIDENT ADVISORY BOARD V. RIZZO, 564 F. 2D 126 (3D CIR. 1977), CERT. DENIED 435 U.S. 908, 55 L. ED. 2D 499, 98 S. CT. 1457 (1978).
----------------------END FOOTNOTES----

AS A RESULT OF DEFENDANTS' *FLAG ORDINANCE*, FACTS ARE THAT OTHERS AT

THE SUBJECT FACILITY ARE REFRAINING FROM ENGAGING IN THEIR CONSTITUTIONALLY

PROTECTED ACTIVITY AT THE FACILITY BY HANGING THEIR AMERICAN FLAGS AT THE

LOCATION OF THEIR PRIVATE BALCONIES, FLAGS WHOSE SIZE OF EXPRESSION

9

"OUTSIZES" THE *FLAG POLICY*, AT A TIME WHEN DEFENDANTS' OFFICE HOURS ARE *NOT* IN

OPERATION.

## CONCLUSION

PLAINTIFFS ASSERT THAT, AS A RESULT OF THE DEFENDANTS' *FLAG POLICY*,

PLAINTIFFS AND OTHERS HAVE SUFFERED, AND WILL SUFFER, IRREPARABLE INJURY,

AN "INJURY IN FACT" TO THEIR SPEECH, THAT IS "CONCRETE AND PARTICULARIZED" AS

WELL AS "ACTUAL OR IMMINENT," RATHER THAN "CONJECTURAL OR HYPOTHETICAL";

AN INJURY THAT IS TRACEABLE TO THE CHALLENGED *FLAG POLICY*; ALL OF WHICH MAY

BE REDRESSED BY A FAVORABLE DECISION OF THIS COURT. BOARD OF ELECTIONS IN

THE CITY OF NEW YORK, 232 F. 3D 135, 142 (2D CIR. 2000).

PLAINTIFFS PRAY THE COURT WILL DENY DEFENDANTS' MOTION TO DISMISS

AND SUBSEQUENTLY SUBMIT A FORM OF ORDER TO IMPLEMENT THE DENIAL.

RESPECTFULLY SUBMITTED BY:

ISIDORE CORWIN
B'NAI B'RITH SENIOR HOUSE
8000 SOCIETY DRIVE
APT #608
CLAYMONT, DELAWARE, 19703
PHONE/FAX 302-798-5116

BONNIE CORWIN
B'NAI B'RITH SENIOR HOUSE
8000 SOCIETY DRIVE
APT #608
CLAYMONT, DELAWARE, 19703
PHONE/FAX 302-798-5116

DATED May 7, 2007

EXHIBITS ATTACHED: A, B, C, D, AND E, SAVAGO V. VILLAGE OF NEW PALTZ, 214 F. SUPP.
2D 252; 2002 U.S. DIST. LEXIS 15215, DECIDED JULY 3, 2002.

CORWIN V. B'NAI B'RITH SENIOR ET AL

## **NO. 1:07-CV-152-\*\*\***

PLAINTIFFS' *RESPONSE*
TO
DEFENDANTS' MOTION TO DISMISS

EXHIBITS A, B, C, D, & E

**9-18-06**

**To all residents:**

**It seems that clarification may be needed concerning hanging flags on the balconies. B'nai B'rith House is not opposed to residents displaying flags on their balconies as long as they do not violate the Rules and Regulations to do so. This means you cannot hang flags on the balcony, you may be creative; for example- you may put a flag on a stick in a flower pot, drape one on a chair, etc. Just be sure flag will not come loose and fall on your neighbor.**

**If you have any questions, please contact the office.**
L. Rotan

# B'nai B'rith Senior Citizen Housing, Inc.
## Rules and Regulations

**1. Office Hours**
The rental office is open Monday through Friday, 9:00 a.m. through 4:00 p.m.  All business is to be transacted in the rental office.

**2. Rent**
All rent is due and payable on the first day of the month, payable by check or money otherwise directed by the management.  If rent is not paid by the seventh (7th) of the month, an administrative and bookkeeping charge of $5.00 shall be due by the Resident.  In addition, any Resident rent checks which are returned from the bank for nonpayment, the Resident will be charged an additional $5.00 bookkeeping fee. After two (2) such returned checks, the Landlord will no longer accept checks for rent payment.

**3. Maintenance**
Requests for routine maintenance must be made to the rental office during rental office hours.

**4. Emergencies**
Emergencies should be promptly reported to the Office.  Emergencies after office hours, on weekends or holidays should be phoned to **302-798-6846**.  Residents are cautioned to use discretion in reporting emergencies after office hours, AS ONLY ABSOLUTE EMERGENCIES WILL RECEIVE ATTENTION AFTER REGULAR HOURS.

**5. Vehicles**
All vehicles parked on the property must be currently licensed and be in operable condition.  No vehicles with broken out windshields or flat tires will be allowed on the premises.  The washing or hosing down of automobiles or other type vehicles is prohibited.  All vehicles of Residents and guests of Residents shall be parked in the designated areas, and the driveways and access ways shall be kept open and clear at all times.  No vehicles shall be driven onto the sidewalks or grassed areas.  The parking of boats, trailers or commercial vehicles anywhere on the property is prohibited.  No vehicles of any type without mufflers shall be allowed on the premises.  Motorcycles, scooter bikes, and bicycles shall be parked in the assigned areas, and shall not be brought into hallways, apartments, or on sidewalks or lawns.  Auto repairs, except for the changing of flat tires and other minor adjustments, are not permitted on the premises.  No mechanical work shall be allowed on any vehicle while on the property.  Further, no vehicles may be placed on blocks or dismantled while on the property.  All motorcycles will be parked with wooden block under kickstand.  Vehicles leaking oil must be repaired immediately or Resident will be charged for removal of grease from the pavement.  MANAGEMENT RESERVES THE RIGHT TO HAVE ANY VEHICLE(S) TOWED AWAY AT THE OWNER'S EXPENSE FOR FAILURE TO COMPLY WITH RULES RELATING TO VEHICLES HEREIN.

**6. Lost Keys**
The Resident will be charged a fee for lost keys and changing locks.

**7. Lockouts**
Lock-outs occurring after normal hours will be charged $5.00.  These fees will be billed to you.

**8. Additional Locks**
No additional locks shall be affixed to any door except by written consent of the Landlord.  Nor shall existing locks be changed without the consent of the Landlord.

B'nai B'rith House - retirement living for senior citizens



8000 Society Drive □ Claymont, Delaware 19703 □ 302-798-6846 Fax: 302-798-2275

## 9. Household and Guests

Resident will be held directly responsible for the conduct and actions of their household and/or visiting guests. Resident, other household members, and guest(s) understand that they are prohibited from: threatening or assaulting any person within the premises and from acting violently or in such a manner as to threaten the health, safety, or welfare of other persons or their property on the premises; or violating any provision of the Landlord and Tenant Act adopted by the state. Residents and their guests shall not play in public areas except in those designated recreational areas in accordance with the rules and regulations and times posted in said areas. Children under the age of 12 years must be supervised by the Resident at all times. No playing is permitted in hallways, lobbies, elevators, etc. Planted and landscaped areas shall not be walked upon nor used as play areas. Residents will be held liable for any damage. Failure to follow these rules may result in the Lease being terminated.

## 10. Moving

Moving in and out of an apartment must be accomplished between the hours of 8 a.m. and 4 p.m. The moving procedures should be coordinated with the Office. The Resident is responsible for any damages to the premises caused by moving in and out of the premises. Vehicles will not be permitted on the grass or sidewalks.

## 11. Attorney Fees

If Landlord employs an attorney because of a violation by the Resident of the Lease or Rules and Regulations, Resident shall pay all attorney fees and cost of collection or litigation if Landlord prevails in such action.

## 12. Alcoholic Beverages

Alcoholic beverages are not permitted on the grounds, common areas or recreational facilities. The drinking of alcoholic beverages must be confined to your individual unit. The only exception to this will be for a B'nai B'rith sponsored event.

## 13. Apartment Occupancy

The maximum occupancy standards must be followed. Occupants are limited to those persons listed on the most recent Resident certification. The Resident must advise and receive written permission in advance from management of any change in household composition. Resident may be permitted to have an out of town guest(s) visit their household; however, this visit is restricted to no more than 14 days and nights within a twelve (12) month period. Exceptions may be made on special extenuating circumstances at the discretion of management. However, a written letter of request is required detailing any extenuating circumstances before any visit beyond the time described above is granted. A person(s) making recurring overnight visits will be counted as a household member(s) and constitutes material non-compliance of the Lease Agreement. Residents are responsible for the actions of their guests. The leased apartment is to be occupied only as a private dwelling. Overnight guests are expected to sign in at the office as they enter and again as they end their visit.

## 14. Absence from your apartment

The office staff is to sign you out if you will be away overnight, on vacation or are admitted to the hospital. Absence form your unit during a calendar year is restricted to no more than 60 days for extended family visits and no more than 180 days due to illness.

## 15. Balconies/Porches/Patios/Breezeways/Hallways/Windows

No mops, clothing, clothes lines, rugs or other articles shall be hung outside of the premises. No rugs or dust mops shall be beaten, cleaned or shaken out of the windows, porches, patios, balconies, or in the halls or corridors of the building, nor shall anything be thrown or swept by the Residents or their guest out of the windows, doors or other openings, or in the halls of the building. Only patio furniture and live plants may be stored on patios, porches and/or balconies. No personal belongings of the Resident may be stored on the balcony, halls or corridors unless approved by management, no rugs or mats outside door of interior hallway. No gas grilling, charcoal grilling or food smokers/cookers are allowed in the hallways, breezeways, grounds or on Resident's patio or balcony. All Residents must observe strict care not to leave windows open when it rains, sleets, snows or in high winds. Before leaving the apartment

# B'nai B'rith Senior Citizen Housing, Inc.

September 15, 2006

Dear Residents:

We understand that some residents wish to hang flags from their balcony. Unfortunately, because of safety concerns we cannot allow flags or any other hanging items on your balcony. Although we hung small flags on the balconies to honor the victims of 9/11, that was a special circumstance which we hope we never have to repeat.

Residents that have flags on their balconies must remove them promptly. Thank you for your cooperation.

Sincerely:

Lynne Rotan, administrator

B'nai B'rith House - retirement living for senior citizens
8000 Society Drive □ Claymont, Delaware 19703 □ 302-798-6846 Fax: 302-798-2275

EQUAL HOUSING
OPPORTUNITY

# B'nai B'rith Senior Citizen Housing, Inc.

**10-30-06**

**To: Isidore & Bonnie Corwin**

**From: Lynne Rotan**

**RE: Flag hanging**

**The answer to your question is no, please refer to your Rules and Regulations, #15.**

◄Return to Full

# LexisNexis™ Academic

## PETER J. **SAVAGO**, Plaintiff, -v- **VILLAGE OF NEW PALTZ**, Defendant.

## 1:02-CV-87

## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

## 214 F. Supp. 2d 252; 2002 U.S. Dist. LEXIS 15215

### July 3, 2002, Decided

**DISPOSITION:** [**1] Defendant's motion for dismissal under Fed. R. Civ. P. 12(b)(6) was denied; Plaintiff's cross motion for summary judgment under Fed. R. Civ. P. 56(c) was granted except as to damages; and Village of New Paltz Sign Regulations, section 30.53 of the Village of New Paltz zoning ordinance was deemed invalid and was stricken in its entirety.

**COUNSEL:** Stephen Bergstein, Esq., of counsel, Thornton, Bergstein & Ullrich, LLP, Chester, New York, for Plaintiff.

Maria C. Tebano, Esq., of counsel, Ainsworth, Sullivan, Tracy, Knauf, Warner and Ruslander, P.C., Albany, New York, for Defendant.

**JUDGES:** Hon. Norman A. Mordue, United States District Judge.

**OPINION BY:** Norman A. Mordue

**OPINION:** [*253] **MEMORANDUM-DECISION AND ORDER**

## INTRODUCTION

In this action under 42 U.S.C. § 1983, plaintiff challenges a municipal sign ordinance as violative of the First Amendment. Defendant moves for dismissal under Fed. R. Civ. P. 12(b)(6). Plaintiff cross-moves for summary judgment under Fed. R. Civ. P. 56(c). For reasons stated below, the Court denies defendant's motion and grants plaintiff's cross motion.

## COMPLAINT

The complaint, filed January 22, 2002, states that plaintiff owns a building in defendant Village of New Paltz ("Village"). [**2] Shortly after the terrorist attack on the World Trade Center on September 11, 2001, plaintiff hung on the building a sign measuring four feet by 25 feet, depicting two American flags and proclaiming: "Keep looking over your shoulder terrorists -- we're coming for you. God bless America." Plaintiff states in his complaint that, although he removed his sign in December 2001, he intends to display it again if the nation experiences another terrorist attack. As a result of a recent amendment to the Village zoning ordinance, however, [*254] plaintiff would now be required to obtain a permit to do so.

Plaintiff complains that the Village sign ordinance as amended distinguishes among classes of signs on the basis of content, grants Village officials discretionary authority to deny or revoke sign permits "at their whim," and elevates commercial speech over noncommercial speech, all in violation of the First Amendment. Plaintiff seeks judgment declaring that the ordinance is invalid, striking down the ordinance, enjoining defendant from enforcing the offending provisions, and awarding money damages and attorney's fees. The Court has subject matter jurisdiction. 28 U.S.C. §§ 1331, [**3] 1343(a)(3), (4).

## THE MOTIONS

Defendant moves to dismiss the action under Fed. R. Civ. P. 12(b)(6). Plaintiff cross-moves for summary judgment under Fed. R. Civ. P. 56(c). Plaintiff's challenge to the ordinance is addressed to its face and not to the manner in which the village applied it in a particular factual context. There are no factual issues requiring discovery. Neither party requests discovery or relies on disputed facts. Indeed, defendant did not respond to plaintiff's Statement of Material Facts under Local Rule 7.1(a)(3). Accordingly, the

Court proceeds to consider the motions based on the complaint and the text of the ordinance.

## APPLICABLE LEGAL STANDARDS

In addressing defendant's motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), the Court accepts as true all material facts alleged in the complaint and draws all reasonable inferences in plaintiff's favor. *See McEvoy v. Spencer,* 124 F.3d 92, 95 (2d Cir. 1997). Dismissal is proper only where it appears beyond doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *See Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir. 1994). [**4]

On his cross-motion for summary judgment, plaintiff bears the initial burden of demonstrating that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). If plaintiff satisfies this burden, and defendant does not demonstrate the existence of a disputed issue of material fact requiring a trial, summary judgment is appropriate. *See id.*

## STANDING

As a general rule, a party has standing to assert only a violation of its own rights. *See Virginia v. American Booksellers Ass'n, Inc.,* 484 U.S. 383, 392, 98 L. Ed. 2d 782, 108 S. Ct. 636 (1988). Exceptions to this rule in the First Amendment context allow a plaintiff to challenge a law on its face on the grounds that it is content-based, *see R.A.V. v. City of St. Paul,* 505 U.S. 377, 381, 120 L. Ed. 2d 305, 112 S. Ct. 2538 (1992), that it might chill the First Amendment rights not only of the plaintiff, but of others not before the court, *see American Booksellers,* 484 U.S. at 392-93, or that it improperly delegates unbridled licensing discretion to a government official or agency. *See City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 757, 100 L. Ed. 2d 771, 108 S. Ct. 2138 (1988). [**5]  Plaintiff, who advances all three of these arguments, has standing to bring this action. *See, e.g., North Olmsted Chamber of Commerce v. City of North Olmsted,* 86 F. Supp. 2d 755, 761-62 (N.D.Ohio 2000).

## THE ORDINANCE

The Village's sign regulation scheme is set forth in section 30.53 of the Village zoning ordinance, as amended January 9, [*255] 2002. Section 30.53(B)(1) states that "no sign or other advertising device shall be erected, constructed, displayed, moved, reconstructed, extended, enlarged or altered within the Village of New Paltz, except in conformity with these regulations nor without first having obtained a permit from the Building Inspector." Section 30.53(B)(3) sets forth the procedure for issuance of a permit:

a. Process - It shall be the duty of the Building Inspector upon receipt of a properly completed application for a sign permit and fee, to examine such plans, specifications, locations and other data submitted and approve said plans if they are in compliance with all requirements of this Regulation and the Municipal Code of the Village. The Building Inspector shall then, within ten (10) working days, issue a permit for the erection of [**6] the proposed sign.
b. Condition - All sign permits shall include the condition that the permitted sign shall be maintained in safe and orderly condition. The Building Inspector may add such other conditions as may be necessary for the public safety and welfare.
c. Disapproval - In the event that plans submitted do not meet requirements of the Municipal Code, the Building Inspector shall notify the applicant in writing of the reason for refusal to issue a permit and return the application and fee to the applicant.
d. Time Limit - If the authorized sign is not erected within 180 days of the date the sign permit is granted, the permit shall become null and void and a new application must be submitted.
e. Violation - If, subsequent to inspection by the Building Inspector, a sign is found in violation of the condition specified in the sign permit, the owner shall be notified to bring the sign into compliance with the specified conditions. Failure to comply within thirty (30) days shall be cause for revocation of the permit and removal of the sign in accordance with § 30.53(F)(3) hereof.

Section 30.53(C) sets forth exemptions from the permit requirement as

follows:

A [**7]  permit shall not be required for the following signs...:

1. Name plate: One professional or business name plate not exceeding one (1) square foot in area for each professional tenant of the site.

2. Construction sign: One sign denoting the architect, engineer and/or contractor when placed on the site under construction; provided that such sign does not exceed twenty (20) square feet in area.

3. Real estate sign: A sign advertising the sale, lease or rental of the premises on which said sign is located, provided that the total aggregate face area of such sign shall not exceed twenty (20) square feet in the B-3 zoning district or six (6) square feet in all other zoning districts and further provided that such sign shall be removed no later than three (3) weeks after, the sale, lease or rental is consummated.

4. Traffic or municipal signs, legal notices and temporary emergency non-advertising signs as may be authorized by the Village Board of Trustees.

5. Temporary non-illuminated window advertising signs which occupy no more than twenty (20) percent of the total window area of the principal facade of the establishment and are  [*256] displayed for no longer than two [**8]  (2) weeks.

6. Posters. Temporary signs n1 covering such activities as political and sporting events, entertainments and elections, provided that such signs shall not be displayed earlier than four (4) weeks prior to the event advertised and shall be removed within one (1) week after such event, and provided further that the size, height, illumination, location and other features of each sign must conform with, and the total aggregate face area of such signs shall not exceed, the regulations specified for the zoning district in which the poster or

sign is located, excluding from the computation of such aggregate face area commercial or other signs on the premises for which a permit is required under this § 30.53.

7. Historical markers: Emblems, tablets, plaques or memorial signs when cut into masonry surface or when constructed of bronze, stainless steel or other similar permanent material installed by governmental agencies, religious or nonprofit organizations.

8. Accessory signs, as defined in § 30.5(B)(74)(a) hereof. n2

9. Lights erected for holiday celebration between Thanksgiving Day and January 10th.

10. Signs displaying a noncommercial message, provided [**9] that the size, height, illumination, location and other features of each sign must conform with, and the total aggregate face area of such sign shall not exceed, the regulations specified for the zoning district in which the sign is located, excluding from the computation of such aggregate face area commercial or other signs on the premises for which a permit is required under this § 30.53.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Section 30.5(B)(74)(m) defines a temporary sign as follows: "Any sign that is displayed only for a specified period of time and is not permanently mounted."
n2 Section 30.5(B)(74)(a) defines an accessory sign as follows: "A sign located on premises which provides information such as 'In', 'Enter', 'Out', 'Exit', 'Parking in Rear', 'Crosswalk' or 'Watch for Pedestrians'."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Section 30.53(F)(1) provides:

> 1. An application must be made for each sign of a temporary nature before being displayed except those specified under "Exceptions to Approval requirements." (§ 30.53(C)).
> 2. Temporary signs shall [**10] be permitted for a period not exceeding two (2) weeks prior to the activity or event nor exceeding one (1) week after the activity or event.

Section 30.53(F)(7)(c) provides: "The Building Inspector may require that landscaping be used at the base of a free standing sign if such landscaping will make the sign more compatible with the surrounding area. The Building Inspector need not approve a sign permit if landscaping is deemed insufficient."

## DISCUSSION

### Content neutrality

"With respect to noncommercial speech, [a municipality] ... may not choose the appropriate subjects for public discourse[.]" *Metromedia Inc. v. City of San Diego,* 453 U.S. 490, 515, 69 L. Ed. 2d 800, 101 S. Ct. 2882 (1981) (plurality decision); *accord National Advertising Co. v. Town of Niagara,* 942 F.2d 145, 147 (2d Cir. 1991) (noting that Second Circuit has adopted *Metromedia* plurality rationale). Content-based regulation of speech presumptively violates the First Amendment, [*257] *see R.A.V.,* 505 U.S. at 382, and, upon constitutional challenge, is subjected to strict scrutiny. *See Boos v. Barry,* 485 U.S. 312, 321, 99 L. Ed. 2d 333, 108 S. Ct. 1157 (1988). To withstand strict scrutiny, the ordinance [**11] must be shown to be necessary to serve a compelling governmental interest and narrowly drawn to achieve that end. *See id.; Eclipse Enters., Inc. v. Gulotta,* 134 F.3d 63, 67 (2d Cir. 1997).

An ordinance is content-based where it "prohibits otherwise permitted speech solely on the basis of the subjects the speech addresses[,]" *R.A.V.,* 505 U.S. at 381, that is, where the municipal officer must examine the content of the

speech to determine the applicability of the ordinance. *See Metromedia,* 453 U.S. at 515 (invalidating as content-based an ordinance prohibiting all noncommercial signs except certain classes of signs such as those conveying religious symbols, news items, historical information and governmental information); *Sugarman v. Village of Chester,* 192 F. Supp. 2d 282, 300 (S.D.N.Y. 2002) (invalidating as content-based a number of sign ordinances including Village of Warwick ordinance, which exempted political signs from permit requirements provided that they met durational and size limitations, but exempted other classes of noncommercial signs from permit requirements without imposing such limitations); *Knoeffler v. Town of Mamakating,* 87 F. Supp. 2d 322, 330 (S.D.N.Y. 2000) [**12] (invalidating as content-based an ordinance exempting from permit requirement certain classes of signs, including traffic control signs, flags, memorial plaques, and signs concerning matters of public information and convenience).

Plaintiff here contends that the ordinance at bar discriminates among classes of noncommercial signs based on their content in two respects. First, he urges that the ordinance imposes impermissible content-based size restrictions on certain classes of noncommercial signs, *i.e.,* some noncommercial signs which exceed the size restrictions applicable in the district are subject to the permit requirement while others are not, depending on their message. For example, traffic signs, n3 legal notices, historical plaques, memorial signs and accessory signs, covered by subdivisions 4, 7 and 8, are exempt from the permit requirement regardless of their size, whereas those noncommercial signs covered by subdivisions 6 and 10 are exempt only if they comply with the size limitations applicable to the districts in which the signs are located. The Court agrees with plaintiff that the distinction between those "outsized" noncommercial signs which do require a permit [**13] (under subdivisions 6 and 10) and those which do not (under subdivisions 4, 7 and 8) can be made only by examining the text of each sign to determine whether it constitutes, for example, an historical marker, an accessory sign, or some other type of noncommercial sign. The Court finds that the ordinance contains content-based exemptions from the permit requirement for certain classes of outsized noncommercial signs, thus implicating the First Amendment.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 While subdivision 4 excepts only those traffic or municipal signs, legal notices and temporary emergency non-advertising signs "as may be authorized by the Village Board of Trustees," there is no indication of what type of review the board would conduct or what standards it would apply. It is apparent from the context of the ordinance, however, that this requirement differs from a permit requirement. The parties have raised no issue concerning this authorization requirement and, in view of the Court's holding herein, it is not necessary to consider whether the authorization requirement constitutes a content-based burden on certain classes of noncommercial signs.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**14]

[*258]  Second, plaintiff argues that the ordinance at bar contains content-based restrictions on temporary noncommercial signs. Section 30.53(F)(1)(a) provides that "an application must be made for each sign of a temporary nature before being displayed except those specified under 'Exceptions to Approval Requirements.' (§ 30.53(C))." Section 30.53(C)(6) exempts from the permit requirement "temporary signs covering such activities as political and sporting events, entertainments and elections, provided that such signs shall not be displayed earlier than four (4) weeks prior to the event advertised and shall be removed within one (1) week after such event[.]" Non-exempt temporary signs n4 are "permitted for a period not exceeding two (2) weeks prior to the activity or event nor exceeding one (1) week after the activity or event" under section 30.53(F)(1)(b). Thus, a permit is required for all temporary noncommercial signs which do not cover activities such as political and sporting events, entertainments and elections, resulting in a content-based distinction which presents First Amendment concerns. *See National Advertising Co. v. Town of Babylon,* 900 F.2d 551, 557 (2d Cir. 1990). [**15]

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 The Court assumes, although the ordinance is unclear on the point, that noncommercial temporary signs which do not cover "such activities as political and sporting events, entertainments and elections," do not fall within subdivision 10, which applies to "Signs displaying a noncommercial

message." A review of the entire ordinance, including in particular section 30.53(F)(1), leads the Court to conclude that subdivision 10 is intended to be limited to permanent signs. In any event, if subdivision 10 were read to cover all noncommercial signs -- temporary and permanent -- except those included in subdivision 6, the result would be to impose a durational limitation only on those temporary noncommercial signs which cover such activities as political and sporting events, entertainments and elections, and to exempt all other temporary noncommercial signs from any durational limitation. Such an outcome creates a content-based durational limitation with First Amendment implications.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Defendant argues that the ordinance [**16] does not offend the First Amendment because it does not prohibit any class of signs but merely regulates their size and/or duration. It is true that the ordinance does not bar outright any class of signs; rather, it imposes a permit requirement on some classes of signs but not on others. First Amendment protections, however, encompass not only content-based prohibitions on speech, but also content-based restrictions on speech. *See, e.g., Whitton v. City of Gladstone,* 54 F.3d 1400, 1405-07 (8th Cir. 1995) (declaring ordinance unconstitutional on ground that "the durational limitations which are applicable only to political signs is a content-based restriction"); *Sugarman,* 192 F. Supp. 2d at 300 (holding, *inter alia,* that Village of Warwick ordinance is content-based, where it exempted political signs from permit requirements provided that they met durational and size limitations, but exempted other classes of noncommercial signs from permit requirements without imposing such limitations). As stated by the court in *Sugarman,* "The First Amendment proscribes municipal favoritism of one form of speech over another, even if the ordinance merely [**17] allows one entity to post larger signs than another on the basis of the sign's content." 192 F. Supp. 2d at 302.

## Strict scrutiny

As stated above, a content-based regulation of speech will be stricken as unconstitutional unless it survives strict scrutiny, that is, unless the municipality shows that it is "necessary to serve a compelling state interest

and that it is narrowly drawn to [*259] achieve that end." n5 *Boos,* 485 U.S. at 321; *Sugarman,* 192 F. Supp. 2d at 291-92. Considering the Village of New Paltz ordinance in light of this standard, the Court notes that section 30.53(A) of the ordinance states the purposes of the sign regulations as follows:

These regulations are intended to
. protect and enhance the unique visual qualities of New Paltz
. conform to the guidelines and intent of the Comprehensive Master Plan of the Village
. encourage the installation of appropriate signs that harmonize with the buildings, neighborhood, and other signs in the area
. eliminate excessive and unsightly competition for visual attention through signs
. safeguard the general public by elimination of signs which may distract a motorist [**18] or contribute to the hazards of driving
. create a more attractive economic and business climate
. preserve citizens' rights to a customary means of earning a living
. protect property values
. maintain a standard of quality of all signs
. colors and material of signs should enhance the visual continuity of the district.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 *Long Island Board of Realtors v. Incorporated Village of Massapequa,* 277 F.3d 622 (2d Cir. 2002), relied on by defendant, is inapposite. Unlike the case at bar, *Long Island Board* involves commercial speech. It is well established that commercial speech is afforded less protection than noncommercial speech. *See, Metromedia Inc. v. City of San Diego,* 453 U.S. 490, 513, 69 L. Ed. 2d 800, 101 S. Ct. 2882 (1981).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

These stated purposes primarily promote aesthetics and traffic safety. While such interests may be substantial, *see, e.g., Metromedia,* 453 U.S. at 507-08, there is no basis to hold that they are compelling. *See generally Sugarman,* 192 F. Supp. 2d at 302; [\*\*19] *North Olmsted,* 86 F. Supp. 2d at 767. Moreover, the ordinance is not sufficiently narrowly drawn to promote such interests. For example, the Court finds no basis for concluding that outsized historical plaques, memorial signs and accessory signs are any more aesthetic or safe than other outsized noncommercial signs. *See generally North Olmstead,* 86 F. Supp. 2d at 768. Nor is there a basis for concluding that temporary signs covering political and sporting events, entertainments and elections are any more aesthetic or safe than other temporary signs. Accordingly, the Court holds that the permit requirement for outsized noncommercial signs found in subdivisions 6 and 10 of section 30.53(C) does not withstand strict scrutiny and must be stricken. Likewise, so much of section 30.53(C)(6) as exempts from the permit requirement those temporary signs which cover activities such as political and sporting events, entertainments and elections, does not withstand strict scrutiny and must be stricken.

## Severability

The severability of a local ordinance is a question of state law. *See City of Lakewood,* 486 U.S. at 772; *Gary D. Peake Excavating Inc. v. Town Bd. of Town of Hancock,* 93 F.3d 68, 72 (2d Cir. 1991) [\*\*20] (citing *National Advertising Co. v. Town of Niagara,* 942 F.2d at 148). A court should refrain from invalidating an entire statute when only portions of it are objectionable. *See id.* Under New York law,

[\*260] the question is in every case whether the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. The answer must be reached pragmatically, by the

exercise of good sense and sound judgment, by considering how the
statutory rule will function if the knife is laid to the branch instead
of at the roots.

*People ex rel. Alpha Portland Cement Co. v. Knapp,* 230 N.Y. 48, 60, 129
N.E. 202 (1921). Thus, "severance is inappropriate when the valid and invalid
provisions are so intertwined that excision of the invalid provisions would
leave a regulatory scheme that the legislature never intended." n6 *National
Advertising Co. v. Town of Niagara,* 942 F.2d at 148. Moreover, judicial
rewriting of an ordinance in order to save it is "decidedly disfavored."
*National Advertising Co. v. Town of Babylon,* 900 F.2d at 557.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 While the preference for severance is particularly strong when the law
contains a severability clause, *Gary D. Peake Excavating Inc. v. Town Bd. of
Town of Hancock,* 93 F.3d 68, 72 (2d Cir. 1991), the record herein does not
establish whether defendant's ordinance contains such a clause.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [\*\*21]

Excision of the size limitations on permit-exempt noncommercial signs found
in subdivisions 6 and 10 would, in the Court's view, impair the overall
functioning of section 30.53(C) and would leave a sign permit exemption
scheme that the legislature did not intend. The fact that the Village recently
amended subdivision 6 to add a size restriction demonstrates that the Village
is currently concerned with limiting the size of permit-exempt signs, as does
the fact that the recently enacted general permit exception for noncommercial
signs (subdivision 10) contains a size restriction. All permit exceptions for
commercial signs contain size restrictions. Thus, as the ordinance now stands,
almost all permit-exempt signs -- temporary and permanent, commercial and
noncommercial -- are subject to size restrictions, except for a few classes of
noncommercial signs, such as historical markers and accessory signs, which

by their nature are likely to be relatively few in number. The Court interprets the ordinance as setting forth a comprehensive scheme effectuating the Village's intention to impose size limitations on most classes of permit-exempt signs. Therefore, it would be improper for the Court [**22] to eliminate a significant portion of those restrictions. Nor could the Court properly impose judge-made size limitations on historical markers, accessory signs and other classes of signs which presently have no limitation; such an exercise would require the Court to assume the role of the Village in selecting appropriate size limitations.

Moreover, the limitation of permit exemptions under subdivision 6 to those temporary signs concerning activities such as political and sporting events, entertainments and elections demonstrates that the Village intended to restrict severely the classes of temporary signs which are permit-exempt, that is, to exempt only those signs addressing limited subjects, and then only for a short period of time (five weeks). Other exempt temporary signs are limited in duration by virtue of their nature (*e.g.,* construction signs and holiday displays) and/or by the terms of the ordinance (*e.g.,* real estate and temporary window advertising signs). The duration for all non-exempt temporary signs is three weeks. These aspects of the ordinance evince a municipal purpose of close supervision of content, size and duration of temporary signs. Thus, the Court [**23] cannot reasonably conclude that the Village's intent would be reflected by judicial modification of subdivision [*261] 6 to create a permit exemption for all temporary signs, regardless of content or duration. Nor can the Court properly modify the ordinance by striking subdivision 6 altogether, as there is no basis to believe that the Village would approve an ordinance requiring permits for all temporary signs now exempt under subdivision 6, such as, for example, all political campaign signs.

Having found that it cannot properly salvage section 30.53(C), "Exemptions to Approval Requirements," by severing subdivisions 6 and 10, the Court considers whether it may properly strike the entire section 30.53(C) and leave intact the balance of the sign regulation scheme. On review of the entire sign regulation ordinance, the Court concludes that section 30.53(C) is inextricably intertwined with other portions of section 30.53, such that the entire sign regulation scheme must be stricken. For example, both subdivisions 6 and 10 of 30.53(C) incorporate the size, height, illumination, location and other limits applicable to the zoning district in which the sign is

located, as set forth in section 30.53 [**24] (F)(4), (5) and (6). Also, section
30.53(F)(7) sets forth requirements applicable in all districts. Indeed, the
general guidelines found in section 30.53(A) state that the sign regulations
are intended to "conform to the guidelines and intent of the Comprehensive
Master Plan of the Village" and "encourage the installation of appropriate
signs that harmonize with the buildings, neighborhood, and other signs in the
area." These guidelines are evidence that the permit exemptions of section
30.53(C) are interwoven into an integrated sign regulatory scheme.

Another example of the interdependence of various provisions of the Village
sign ordinance is found in section 30.53(F)(1), "Temporary signs," which
requires a permit and imposes a three-week durational limitation for
temporary signs pertaining to activities or events except those specified under
section 30.53(C). Elimination of section 30.53(C) would leave unanswered a
number of questions, such as, for example, whether to apply the three-week
durational limitation of section 30.53(F)(1) to temporary real estate "For
Sale" signs.

Moreover, the number and specificity of the permit exemptions found in
section 30.53(C) strongly support [**25] the conclusion that the Village
intended to leave several relatively large classes of signs free from the permit
application process. A blanket permit requirement would thus not serve to
effectuate the Village's intent.

The Court notes further that excision of 30.53(C) would not eliminate all
content-based distinctions from the Village's sign-permit scheme. For
example, section 30.53(D)(5) prohibits sandwich boards "except as displayed
on the occasion of special events sponsored by non-profit or municipal
organizations," and section 30.53(D)(5)(8) prohibits banners and similar
devices "except for such non-permanent ones as are displayed on the occasion
of special events sponsored by non-profit or municipal organizations." Both
of these exceptions require the building inspector to examine the content of
the signs to determine whether they pertain to special events.

## CONCLUSION

The Court concludes that portions of the sign ordinance offend the First
Amendment, that these portions cannot be properly be severed, and that

therefore the Village's entire sign permitting scheme as it presently exists is unconstitutional and must be redrafted. n7 Redrafting the sign [*262] regulations is a [**26] task for the Village, not the Court. n8 *See National Advertising Co. v. Town of Niagara,* 942 F.2d at 151. Accordingly, defendant's motion for dismissal under Fed. R. Civ. P. 12(b)(6) is denied. Plaintiff's cross motion for summary judgment under Fed. R. Civ. P. 56(c) is granted except as to damages. The Village is enjoined from enforcing section 30.53, which is declared invalid and stricken in its entirety.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -


n7 Although the Court does not reach the issue, in redrafting the sign regulations, the Village may wish to reconsider those portions of the ordinance which plaintiff has challenged on the ground that they vest unbridled discretion in the building inspector. (For example, plaintiff challenges so much of section 30.53(B)(3)(b) as authorizes the building inspector, upon reviewing a sign permit application, to "add such other conditions as may be necessary for the public safety and welfare"; so much of section 30.53(B)(3)(b) as requires that each permit include the condition that the sign "shall be maintained in safe and orderly condition"; so much of section 30.53(F)(7)(c) as allows the building inspector to require landscaping to make free-standing signs "more compatible with the surrounding area"; and so much of section 30.53(E)(1) as provides that the Village Planning Board may disapprove an application for the installation of bulletin boards, community poles, murals, shopping center and office building sign plans "upon a finding that approval would be detrimental to the desirability, property values, safety or harmonious development of the municipality.") It is well established that "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional[,]" *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150-51, 22 L. Ed. 2d 162, 89 S. Ct. 935 (1969), because such "unbridled discretion in the hands of a government official or agency ... may result in censorship." *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 757, 100 L. Ed. 2d 771, 108 S. Ct. 2138 (1988). It is true that an ordinance which is not sufficiently precise, standing alone, to survive a facial challenge may yet pass constitutional muster if the municipality demonstrates that its application is "constrained by

administrative construction or by well-established practice," *MacDonald v. Safir,* 206 F.3d 183, 192 (2d Cir. 2000); nevertheless, the Village may prefer to redraft questionable portions of the ordinance with the goal of avoiding future challenges which might present triable issues of Village practice. [\*\*27]

n8 As the Second Circuit observed in *National Advertising Co. v. Town of Niagara,* 942 F.2d 145, 151 (2d Cir. 1991) (citation omitted):

> We are particularly hesitant to undertake revisions of the ordinance in light of the fact that we are a federal court interpreting a local ordinance. The interests of federalism and comity dictate conservatism in imposing our interpretive views on state statutes. Mindful of our responsibility to respect the interests of comity and federalism, we find that the ordinance must be declared unconstitutional as a whole.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Plaintiff has requested an award of "any damages available to him by law, including nominal damages, for the violation of his constitutional rights," and an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988. The Court will address these issues upon papers submitted by the parties in accordance with the following schedule. Plaintiff is directed to serve and file all papers in support of his application for damages, attorney's fees and costs within 30 calendar days of the date [\*\*28] of this Memorandum-Decision and Order. Defendant is directed to serve and file all opposing papers within 20 calendar days thereafter. Plaintiff may, if so desired, serve and file reply papers within 10 calendar days thereafter. The form and length of all papers shall comply with Local Rule 7.1(a)(1) and (2), and any reply brief shall not exceed ten pages. The Court will consider the papers on submission, without oral argument, and will thereafter notify the parties if a hearing is required.

It is therefore

ORDERED that defendant's motion for dismissal under Fed. R. Civ. P. 12(b) (6) is denied; and it is further

[*263] ORDERED that plaintiff's cross motion for summary judgment under Fed. R. Civ. P. 56(c) is granted except as to damages; and it is further

DECLARED that the Village of New Paltz Sign Regulations, section 30.53 of the Village of New Paltz zoning ordinance, is invalid; and it is further

ORDERED that the Village of New Paltz Sign Regulations, section 30.53 of the Village of New Paltz zoning ordinance, is hereby stricken in its entirety; and it is further

ORDERED that the Village of New Paltz is enjoined from enforcing Village of New Paltz Sign Regulations, section 30.53 of [**29] the Village of New Paltz zoning ordinance; and it is further

ORDERED that the Court will address the issues of damages, attorney's fees and costs in accordance with the decision herein.

IT IS SO ORDERED.

July 3RD, 2002

Syracuse, New York

Hon. Norman A. Mordue

United States District Judge

# IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF DELAWARE

- - -

ISIDORE CORWIN AND BONNIE CORWIN  :          CIVIL ACTION
(INFORMA PAUPERIS STATUS)                               :
                                                                            :
                    PLAINTIFFS,                               :
                                                                            :
                                                                            :
                                                                            :          **NO. 07-CV-152-\*\*\***
                                                                            :          JURY TRIAL DEMANDED
          V.                                                        :
                                                                            :
B'NAI B'RITH SENIOR CITIZEN HOUSING, INC.,  :
ET AL                                                                :
                    DEFENDANTS.                             :

- - -

## CERTIFICATE OF SERVICE

WE, ISIDORE AND BONNIE CORWIN, PRO SE, DO HEREBY CERTIFY THAT ON _____ 5 – 7 – 07 _____, WE CAUSED THE ORIGINAL AND (1) COPY OF THE FOREGOING *PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS* TO BE FILED WITH THE CLERK OF THE COURT AND A COPY OF SUCH FILING WAS SERVED IN THE MANNER INDICATED UPON THE FOLLOWING PARTIES' COUNSEL OF RECORD:

BY FAX TO:
ATTORNEY DANIEL GRIFFITH
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
1220 N. MARKET ST
PO BOX 8888
WILMINGTON, DE 19899-8888
TELE 302-552-4300
FAX 302-651-7905

BY:  ISIDORE & BONNIE CORWIN, PRO SE
            8608 SOCIETY DRIVE
            CLAYMONT, DELAWARE 18703
            PHONE/FAX: 302-798-5116

CORWIN
8608 Society Dr
CLAYMONT, DE 19703-1749




CERTIFIED MAIL

7006 0100 0003 8080 8397

U.S. POSTAGE
PAID
ROCKLAND DE
MAY 10-07
AMOUNT
$7.80
00055072-01

UNITED STATES
POSTAL SERVICE

0000

PETER T DALLEO, CLERK
U.S. District Court for the District of DE
844 N. KING ST.
Lock Box 18
Wilmington, DE 19801-3570



PRIORITY
MAIL
UNITED STATES POSTAL SERVICE

WWW.USPS.GOV

L1007B, OCT 1997