**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ISIDORE CORWIN AND BONNIE )
CORWIN, )
  )
       Plaintiffs, )
  )    C.A. No.:  1:07-cv-00152-***
      v. )
  )
B'NAI B'RITH SENIOR CITIZEN )    JURY TRIAL DEMANDED
HOUSING, INC., SOUTHEASTERN )
PROPERTY MANAGEMENT, INC., )
AND LYNNE ROTAN, an agent, )
servant or employee of B'Nai B'Rith )
Senior Citizen Housing, Inc., )
  )
       Defendants. )

**<u>DEFENDANTS', B'NAI B'RITH SENIOR CITIZEN HOUSING, INC., SOUTHEASTERN
PROPERTY MANAGEMENT, INC., AND LYNNE ROTAN, REPLY BRIEF IN
SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

*/s/ Daniel A. Griffith*    DE ID  4209

_____

DANIEL A. GRIFFITH, ESQUIRE
Delaware Bar I.D. No. 4209
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
1220 N. Market Street
P.O. Box 8888
Wilmington, DE 19899-8888
(302) 552-4300
*Attorney for Defendants B'Nai B'Rith Senior
Citizen Housing, Inc., Southeastern
Property Management, Inc., and
Lynne Rotan*

Dated: May 16, 2007

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES………………………………………………………………ii

NATURE AND STAGE OF THE PROCEEDINGS………………………………………1

ARGUMENT……………………………………………………………………………2

    I.     PLAINTIFFS RAISE CONSTITUTIONAL ISSUES IN THEIR
            ANSWERING BRIEF THAT ARE INAPPLICABLE TO THEIR
            CASE………………………………………………………………………… 2

           A.    Constitutional issues cannot arise from the Federal and
                     Delaware Fair Housing Acts, and even if they did as Plaintiffs
                     present, they would not involve Defendants because Defendants
                     are not state actors…..…………………………………………….... 2

           B.    Because Defendants' flag-display policy is uniform as to all
                     tenants and national origins, Plaintiffs are unable to demonstrate
                     that they are entitled to relief under any set of facts, and
                       consequently, to defeat Defendant's Motion to Dismiss…………… 4

CONCLUSION……………………………………………………………………..5

## <u>TABLE OF AUTHORITIES</u>

*Barr v. The Camelot Forest Conservation Association, Inc.*,
    153 Fed. Appx. 860 (3d Cir. 2005)……………………………………………... 3

*Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961)…………………………… 3

*Crissman v. Dover Downs Entertainment, Inc.*, 289 F.3d 231 (3d Cir. 2002)…………… 3

*Smith v. National Collegiate Athletic Association*, 266 F.3d 152 (3d Cir. 2001)………… 3

*Tower v. Glover*, 467 U.S. 914 (1984)……………………………………………….. 3

## NATURE AND STAGE OF THE PROCEEDINGS

Defendants, B'Nai B'Rith Senior Citizen Housing, Inc., Southeastern Property Management, Inc., and Lynne Rotan ("Defendants"), filed a Motion to Dismiss and Opening Brief in support thereof on April 25, 2007. (D.I. Nos. 7 and 8).  On May 8, 2007, Plaintiffs Isidore and Bonnie Corwin ("Plaintiffs") filed a Response to Defendants' Motion to Dismiss which the Court construed as their Answering Brief in Opposition to Defendants' Motion to Dismiss. (D.I. No. 9).

This is Defendants' Reply Brief in support of their Motion to Dismiss.

<u>**ARGUMENT**</u>

I.    **PLAINTIFFS RAISE CONSTITUTIONAL ISSUES IN THEIR ANSWERING BRIEF THAT ARE INAPPLICABLE TO THEIR CASE.**

      A.    **Constitutional issues cannot arise from the Federal and Delaware Fair Housing Acts, and even if they did as Plaintiffs present, they would not involve Defendants because Defendants are not state actors.**

      Plaintiffs have based their action on alleged violations by Defendants of the Federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, as well as the Delaware Fair Housing Act, 6 *Del. C.* § 4601, *et seq.*[1]  Plaintiffs' Complaint includes two Counts, one arising under the Federal Act,[2] and the other under Delaware's version.[3]

      Constitutional issues do not arise from either Act.  Stated differently, an alleged violation of either Act does not equate to an alleged infringement on one's Constitutional rights.  The Acts are statutory law passed by the Federal and Delaware state legislatures, respectively, but neither implicate the United States Constitution.

      Nevertheless, despite that Plaintiffs' claims in their Complaint are not at all based upon Constitutional principles, their Answering Brief in Opposition to Defendants' Motion to Dismiss is based *entirely* on them.  Plaintiffs' Answering Brief makes continual mention that Plaintiffs' First Amendment right of free speech was allegedly violated, provides that the appropriate standard of review is the strict scrutiny test, and the like.  The issue in the present case, as pled by Plaintiffs themselves, is whether Defendants violated the Federal and Delaware Fair Housing Acts with their policy regarding the display of flags on residents' balconies.  The issue is *not* free speech, whether a Constitutional right was violated, or the Constitution at all.  Therefore, Plaintiffs essentially failed to respond to Defendants' Motion to Dismiss in any meaningful way.

---

[1]    *See* Plaintiffs' Complaint at ¶ 7 (attached as Exhibit 1).
[2]    *Id.* at ¶¶ 83-92.
[3]    *Id.* at ¶¶ 93-96.

Even if Constitutional issues did arise from the two Fair Housing Acts, which they do not, they would not involve Defendants because Defendants are not state actors. It is firmly established that a party alleging a Constitutional violation, whether directly under an Amendment or through 42 U.S.C. § 1983, must do so against a governmental, and not a private, actor.[4] All of the Defendants are private actors, unable to violate the Constitutional rights of another. Therefore, even assuming that Plaintiffs were able to raise Constitutional issues under the Fair Housing Acts, Defendants would *still* be the wrong targets.

Defendants acknowledge that there are circumstances under which private actors can be treated as state actors, such as when governmental and private actors are heavily intertwined,[5] or even more remotely, when a private actor conspires with state officials to deprive another of their Constitutional rights.[6] Clearly, however, neither of these situations is present here. Governmental and private actors can actually have a connection without the private actor being deemed a state actor, such as with government funding of a private entity.[7] In other words, whether or not Defendant B'Nai B'Rith Senior Citizen Housing, Inc. received Federal funds through the Department of Housing and Urban Development, or any other governmental source, is irrelevant because that Defendant, and in turn the other Defendants, would not be transformed into state actors thereby.

Frankly, Plaintiffs' filings to date are inconsistent. Plaintiffs alleged no Constitutional violations in their Complaint, but countered Defendants' Motion to Dismiss with strictly

---

[4]    *Barr v. The Camelot Forest Conservation Association, Inc.*, 153 Fed. Appx. 860, 862 (3d Cir. 2005)(attached as Exhibit 2).

[5]    *See Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961); *Smith v. National Collegiate Athletic Association*, 266 F.3d 152 (3d Cir. 2001).

[6]    *See Tower v. Glover*, 467 U.S. 914 (1984).

[7]    *See Crissman v. Dover Downs Entertainment, Inc.*, 289 F.3d 231, 243 (3d Cir. 2002)("[T]he Government may subsidize private entities without assuming constitutional responsibility for their actions.")(citation omitted).

Constitutional theories. This approach only confuses the case's issue as originally pled and leaves Plaintiffs with no meaningful response to Defendants' motion to dismiss.

> **B.    Because Defendants' flag-display policy is uniform as to all tenants and national origins, Plaintiffs are unable to demonstrate that they are entitled to relief under any set of facts, and consequently, to defeat Defendant's Motion to Dismiss.**

Defendants' entire argument on this point appears in their Opening Brief in support of their Motion to Dismiss and for the sake of brevity will not be duplicated herein. It is worthwhile to reiterate it generally, however, especially in light of Plaintiffs' Answering Brief that did not address it at all.

By Plaintiffs' admission, Defendants' flag-display policy, on its face, does not apply unequally to the tenants. Additionally, there has been no allegation by Plaintiff that the policy is enforced disparately as to the tenants. Therefore, as those are the two bases on which to bring a claim like Plaintiffs', and neither one is shown by Plaintiffs, they are unable to defeat Defendants' Motion to Dismiss and their action fails.

Defendants recognize and appreciate Plaintiffs' frustration at not being able to fly the American flag, at least in the manner they would like, but their co-tenants must abide by the same rule because the policy is not geared toward any particular national origin. Were a neighbor of Jamaican, Irish, Italian, or any other descent allowed to fly their flag in any way they chose under the policy while Plaintiffs were not, Plaintiffs would stand a chance of success in their suit, at least at the pleading stage. Because that is not the case, and the policy is equal as to all tenants, Plaintiffs' suit fails and should be dismissed.

## <u>CONCLUSION</u>

For all of the foregoing reasons, as well as those contained in Defendants' Opening Brief in support of their Motion to Dismiss, it is respectfully requested that this Honorable Court dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

/s/ Daniel A. Griffith   DE ID 4209

_____

DANIEL A. GRIFFITH, ESQUIRE
Delaware Bar I.D. No. 4209
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
1220 N. Market Street
P.O. Box 8888
Wilmington, DE 19899-8888
(302) 552-4300
*Attorney for Defendants B'Nai B'Rith Senior*
*Citizen Housing, Inc., Southeastern*
*Property Management, Inc., and*
*Lynne Rotan*

Dated: May 16, 2007

**EXHIBIT "1"**

15:39 MAR 27, 2007                        FAX NO: 8857056                    #0421  PAGE: 7/28
03/27/07  10:51 FAX 1 302 858 8076        ZUTZ-PLI                                    Ⓐ004

# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ISIDORE CORWIN AND BONNIE CORWIN          CIVIL ACTION NO.:  0 7 - 1 5 2

*PLAINTIFFS,*

-AGAINST-

**COMPLAINT**
**(TRIAL BY JURY DEMANDED)**

B'NAI B'RITH SENIOR CITIZEN HOUSING, INC.;
SOUTHEASTERN PROPERTY MANAGEMENT, INC.;
AND LYNNE ROTAN, AN AGENT, SERVANT OR EMPLOYEE OF
B'NAI B'RITH SENIOR CITIZEN HOUSING, INC.

*DEFENDANTS.*

PLAINTIFFS ISIDORE CORWIN AND BONNIE CORWIN, PRO SE, UNDERSIGNED,
BRING THIS COMPLAINT AGAINST THE ABOVE-NAMED DEFENDANTS AND
THEIR AGENTS, SERVANTS, AND EMPLOYEES, AND IN SUPPORT THEREOF
ALLEGE THE FOLLOWING ON PERSONAL KNOWLEDGE AS TO THEMSELVES
AND THEIR OWN ACTIONS, AND UPON INFORMATION AND BELIEF AS TO ALL
OTHER MATTERS.

## PARTIES

1. PLAINTIFF ISIDORE CORWIN ("I. CORWIN") IS A CITIZEN OF THE UNITED
STATES AND RESIDES IN THE STATE OF DELAWARE AT 8608 SOCIETY DRIVE,
CLAYMONT, COUNTY OF NEW CASTLE, DELAWARE, 19703.

2. PLAINTIFF BONNIE CORWIN ("B. CORWIN") IS A CITIZEN OF THE UNITED
STATES, IS THE LAWFUL SPOUSE OF PLAINTIFF ISIDORE CORWIN, AND
RESIDES WITH HIM AT 8608 SOCIETY DRIVE, CLAYMONT, COUNTY OF NEW
CASTLE, STATE OF DELAWARE, 19703.

3. DEFENDANT B'NAI B'RITH SENIOR CITIZEN HOUSING, INC. ("B'NAI B'RITH
SENIOR") HAS ITS PRINCIPAL PLACE OF BUSINESS AT 8008 SOCIETY DRIVE,
CLAYMONT, DE, 19703, AND ITS CORPORATE OFFICE AT 1103 R. ARRINGTON,
JR. BOULEVARD SOUTH, BIRMINGHAM, ALABAMA, 35205.

1

04/04/07  WED 15:35  [TX/RX NO 5314]

4. DEFENDANT SOUTHEASTERN PROPERTY MANAGEMENT, INC. ("SPM") IS A
MANAGEMENT AGENCY, WITH ITS CORPORATE OFFICE AT 1103 R.
ARRINGTON, JR. BOULEVARD SOUTH, BIRMINGHAM, ALABAMA, 35205.

5. DEFENDANT LYNNE ROTAN ("ROTAN") IS A PROPERTY MANAGER, WITH
HER RESIDENCE AT 15 PENNSYLVANIA AVENUE, CLAYMONT, DELAWARE,
19703.

6. AT ALL TIMES RELEVANT TO THIS COMPLAINT, DEFENDANT ROTAN ACTED
AS AN AGENT, SERVANT, OR EMPLOYEE OF B'NAI B'RITH SENIOR.

### JURISDICTION AND VENUE

7. THE CIVIL ACTION ARISES UNDER TITLE VIII OF THE CIVIL RIGHTS ACT OF
1968, § 801, *ET SEQ.*, AS AMENDED BY THE FAIR HOUSING ACT OF 1988, 42
U.S.C.A. § 3601 *ET SEQ.*, AND, MORE PARTICULARLY, 42 U.S.C.A. § 3604 (B).
THERE IS A PENDANT STATE LAW CLAIM UNDER THE DELAWARE FAIR
HOUSING ACT, DEL. CODE ANN. 6 § 4601 *ET SEQ.* JURISDICTION IS CONFERRED
ON THIS COURT PURSUANT TO 28 U.S.C. § 1331 AND 1343 (A)(3).

8. PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF ARE
AUTHORIZED BY 28 U.S.C. § 2201 AND 2202, BY RULES 57 AND 65 OF THE
FEDERAL RULES OF CIVIL PROCEDURE, AND BY THE GENERAL LEGAL AND
EQUITABLE POWERS OF THIS COURT.

9. VENUE IS PROPER UNDER 28 U.S.C. § 1391(B) BECAUSE THE HOUSING
PRACTICES ALLEGED HEREIN TO BE UNLAWFUL WERE AND ARE NOW BEING
COMMITTED WITHIN THE JURISDICTION OF THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF DELAWARE.

10. THE DISCRIMINATORY ACTS IN THIS LAWSUIT CONCERN NATIONAL
ORIGIN DISCRIMINATION ALLEGED BY THE PLAINTIFFS IN THE HANGING OF
THEIR AMERICAN FLAG ON THEIR RENTED BALCONY AT DEFENDANTS' B'NAI
B'RITH HOUSE APARTMENTS IN CLAYMONT, DELAWARE, WITH PLAINTIFFS'
DISCRIMINATION COMPLAINT COMMENCING ON OR ABOUT JULY 27, 2006.

11. ON JULY 27, 2006, PLAINTIFFS TOOK STEPS IN A WRITTEN COMPLAINT TO
THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
(THE AVAILABLE ADMINISTRATIVE AGENCY AS TO CHARGES OF THE

2

15:40 MAR 27, 2007                    FAX NO: 8857056                    #0421 PAGE: 9/28

03/27/07  10:52 FAX 1 302 658 8076        ZUTZ-PLI                              ☑006

ALLEGED DISCRIMINATORY CONDUCT BY THE DEFENDANTS IN THEIR FLAG
FLYING POLICY FOR TENANTS' BALCONIES AT THE B'NAI B'RITH HOUSE).
PLAINTIFFS' COMPLAINT WENT TO THE PROJECT MANAGER, MS. ELAINE
GARBON, WANAMAKER BUILDING, 100 PENN SQUARE EAST, PHILADELPHIA,
PA, 19107.  HUD FORWARDED PLAINTIFFS' GRIEVANCE TO MS. CHRIS
KINNIKIN, HOUSING LOAN MANAGEMENT OFFICER, DELAWARE STATE
HOUSING AUTHORITY, DOVER, DELAWARE, 19901, FOR INVESTIGATION.

12.  THE RESULT OF THE SUBSEQUENT DSHA'S INVESTIGATION WAS,
COMPLAINT "RESOLVED", AS DSHA'S ON-SITE OBSERVATION OF AUGUST 16,
2006 WAS THAT THERE WERE NO FLAGS FLYING ON TENANTS' BALCONIES AT
THE B'NAI B'RITH HOUSE.  DSHA INFORMED PLAINTIFFS OF ITS
INVESTIGATIVE COMPLAINT DETERMINATION IN A LETTER DATED AUGUST
31, 2006.

13.  SUBSEQUENT TO DSHA'S ABOVE AFOREMENTIONED DETERMINATION,
PLAINTIFFS FORWARDED A LETTER TO DEFENDANT ROTAN ON SEPTEMBER
9, 2006, FORMALLY REQUESTING PERMISSION FOR PLAINTIFFS TO HANG AN
AMERICAN FLAG ON THEIR RENTED BALCONY AT THE B'NAI B'RITH HOUSE.

14.  ON SEPTEMBER 15, 2006, DEFENDANT ROTAN RESPONDED, IN WRITING, TO
PLAINTIFFS' ABOVE AFOREMENTIONED REQUEST (AND AT THE SAME TIME
TO ALL TENANTS) THAT TENANTS CANNOT HANG FLAGS ON THE THEIR
BALCONIES, AND FOR ALL TENANTS, INCLUDING PLAINTIFFS, TO PROMPTLY
REMOVE THEIR FLAGS FROM THEIR BALCONIES, OSTENSIBLY FOR SAFETY
REASONS.

15.  IN THE FACE OF OTHER TENANTS' PROTESTS REGARDING DEFENDANT
ROTAN'S AFOREMENTIONED MEMO TO PROMPTLY REMOVE ALL FLAGS
FROM TENANT BALCONIES, DEFENDANT ROTAN THEN SUDDENLY
PROMULGATED NEW RULES ON SEPTEMBER 18, 2006 WITH A WRITTEN MEMO
TO ALL TENANTS, INCLUDING PLAINTIFFS, THAT TENANTS CAN NOT HANG
FLAGS, BUT MAY PUT A FLAG ON A STICK IN A FLOWER POT OR MAY DRAPE
A FLAG ON A CHAIR ON TENANTS' RESPECTIVE BALCONIES.

16.  ON SEPTEMBER 22, 2006, PLAINTIFFS FORWARDED A LETTER TO MRS.
ROTAN THAT DRAPING THE AMERICAN FLAG IS AGAINST U.S. FLAG CODE.

3

15:40 MAR 27, 2007                    FAX NO: 8857056                    #0421  PAGE: 10/28

03/27/07  10:53 FAX 1 302 658 8076        ZUTZ-PLI                                    ☒007

17. ON OCTOBER 3, 2006, DEFENDANT ROTAN NOTIFIED PLAINTIFFS, IN
WRITING, THAT MR. DAVID SCHLECKER (A B'NAI B'RITH SENIOR
DESIGNATED DIRECTOR & OFFICER) WAS PLANNING ON ATTENDING THE
NEXT B'NAI B'RITH HOUSE TENANT ASSOCIATION MEETING IN ORDER TO
ADDRESS THE FLAG ISSUE (TO TENANTS).

18. ON OCTOBER 11, 2006, MR. DAVID SCHLECKER ATTENDED THE OCTOBER
2006 TENANT ASSOCIATION MEETING, WHERE A CERTAIN TENANT, IN OPEN
DISCUSSION, BROUGHT TO MR. SCHLECKER'S ATTENTION THAT TENANTS AT
THE APARTMENT FACILITY ARE PERMITTED TO HANG PATIO UMBRELLAS
ON POLES, STRAPPED ON TENANTS' RESPECTIVE BALCONY RAILS
(CONTRARY TO DEFENDANTS' SEPTEMBER 15, 2006 MEMO THAT TENANTS
CANNOT HANG FLAGS ON TENANT BALCONIES).

19. SUBSEQUENTLY, ON OCTOBER 12, 2006, PLAINTIFFS FORWARDED A
LETTER TO DEFENDANT ROTAN STATING THAT PLAINTIFFS DO NOT CHOOSE
TO PUT THEIR AMERICAN FLAG ON A STICK IN A FLOWER POT, AND
REQUESTED AN ALTERNATIVE MEANS TO HANG THEIR AMERICAN FLAG, TO
STRAP THEIR FLAG ON THEIR RESPECTIVE BALCONY RAIL (AS ARE THE
HANGING PATIO UMBRELLAS ON OTHER TENANT'S BALCONIES).

20. ON OCTOBER 23, 2006, PLAINTIFFS REQUESTED, IN WRITING, TO
DEFENDANT ROTAN, IF THE DEFENDANT WOULD RESPOND TO PLAINTIFFS'
ABOVE AFOREMENTIONED REQUEST PRIOR TO VETERANS DAY 2006, IN
ORDER THAT PLAINTIFFS COULD PREPARE FOR THE HOLIDAY.

21. ON OCTOBER 30, 2006, DEFENDANT ROTAN RESPONDED TO THE
AFOREMENTIONED PLAINTIFFS' REQUEST (TO STRAP THEIR AMERICAN
FLAG ON THEIR BALCONY RAIL), DEFENDANT ROTAN STATING IN A ONE-
SENTENCE RESPONSE LETTER TO PLAINTIFFS, "THE ANSWER IS NO...".

22. HENCE, ON VETERANS DAY 2006, BOTH ON NOVEMBER 10, 2006,
NATIONALLY OBSERVED VETERANS DAY, AND ON NOVEMBER 11, 2006,
VETERANS DAY, PLAINTIFFS WERE DENIED THEIR ABILITY TO HANG THEIR
AMERICAN FLAG ON THEIR BALCONY RAIL, WHILE OTHER TENANTS WERE
PERMITTED TO OPENLY HANG PATIO UMBRELLAS ON THEIR BALCONY
RAILS (UMBRELLAS EVEN LARGER THAN THE PLAINTIFFS' AMERICAN FLAG).

4

15:41 MAR 27, 2007                    FAX NO: 8857056                    #0421 PAGE: 11/28

03/27/07  10:53 FAX 1 302 658 8076        ZUTZ-PLI                              ☒008

23. ON VETERANS DAY 2006, DEFENDANTS PERMITTED ELEVEN (11) OTHER
HANGING-LOCATIONS ON OTHER TENANTS' RESPECTIVE BALCONIES AT THE
SUBJECT FACILITY, INCLUDING THE AFOREMENTIONED UMBRELLAS,
THERMOMETERS, BALCONY-RAIL PLANTERS, WIND CHIMES, HANGING BELL,
HANGING HOOK, AND BALCONY-RAIL FLAG HOLDER, EVEN THOUGH
DEFENDANT ROTAN STATES NOTHING IS ALLOWED TO HANG ON TENANTS'
BALCONIES AT THE B'NAI B'RITH HOUSE.

24. ON NOVEMBER 15, 2006, PLAINTIFFS FORWARDED A LETTER TO THE
DEFENDANT ROTAN REQUESTING A "MANAGEMENT REVIEW" OF THE B'NAI
B'RITH HOUSE PRESENT POLICY IN AMERICAN FLAG FLYING ON TENANTS'
PRIVATE BALCONIES.

25. ON NOVEMBER 20, 2006, DEFENDANT ROTAN, IN WRITING, RESPONDED TO
PLAINTIFFS' ABOVE AFOREMENTIONED REQUEST, WITH, "WE HAVE A RULE
THAT YOU CANNOT ATTACH ANYTHING TO THE BALCONY...(THE FLAG)
CANNOT BE ATTACHED OR AFFIXED TO THE BALCONY RAIL."

26. ON MARCH 14, 2007, BASED ON ALLEGED NATIONAL ORIGIN
DISCRIMINATION BY THE DEFENDANTS, PLAINTIFFS REPORTED ALL
INFORMATION ABOUT THE DEFENDANTS' ALLEGED VIOLATIONS OF THE
FAIR HOUSING ACT TO HUD, WHERE PLAINTIFFS EXPLAINED THE FACTS AND
CIRCUMSTANCES WHERE OTHERS WERE TREATED DIFFERENTLY FROM
PLAINTIFFS, AND THAT THE DISCRIMINATION IS ONGOING, AND WHERE
THERE ARE WITNESSES AND OTHERS WHO KNOW WHAT HAPPENED.

27. ALL STATUTORY PREREQUISITES TO THE FILING OF THE HOUSING
DISCRIMINATION COMPLAINT, ACCORDINGLY, HAVE BEEN MET.

### FACTS COMMON TO ALL COUNTS

28. DEFENDANTS B'NAI B'RITH SENIOR CITIZEN HOUSING, INC. OWN AND
OPERATE, AND CONTROL THE EIGHT-STORY SENIOR CITIZEN APARTMENT
BUILDING ("THE SUBJECT FACILITY") KNOWN AS THE B'NAI B'RITH HOUSE,
AT 8000 SOCIETY DRIVE, IN THE CITY OF CLAYMONT, STATE OF DELAWARE,
AND IS WHERE AT ALL TIMES RELEVANT HERETO, THE BUILDING'S
MANAGEMENT AGENCY WAS AND IS DEFENDANT SOUTHEASTERN

5

FILE NO.128 04/04/07 15:14 ID:      FAX:                    PAGE  12

15:42 MAR 27, 2007                   FAX NO: 8857056                  #0421 PAGE: 12/28

03/27/07  10:54 FAX 1 302 658 8076      ZUTZ-PLI                          Ø009

PROPERTY MANAGEMENT, INC., WHO MANAGE THE ELDERLY SECTION 202/8
APARTMENT COMPLEX; WITH DEFENDANT PROPERTY MANAGER ROTAN,
WHO WAS AND IS AN AGENT, SERVANT, OR EMPLOYEE OF B'NAI B'RITH
SENIOR CITIZEN HOUSING, INC.

29. DEFENDANT B'NAI B'RITH SENIOR RECEIVES, AND HAS IN THE PAST
RECEIVED, FEDERAL SECTION 8 SUBSIDIES, 42 U.S.C. § 1437F, WHICH IS
DESIGNED TO ALLOW LOW AND LOW-MODERATE INCOME PERSONS TO LIVE
IN PRIVATELY OWNED HOUSING, UNDER SPECIFICALLY HUD'S HOUSING
ASSISTANCE PAYMENT CONTRACT #DE26-H004-007, FOR THE OPERATION AND
MAINTENANCE OF THE SUBJECT FACILITY, AT 8000 SOCIETY DRIVE,
CLAYMONT, DELAWARE. THE CONTRACT WAS, AND IS, ADMININSTERED BY
THE DELAWARE STATE HOUSING AUTHORITY.

30. AS A RECIPIENT OF FEDERAL HUD SUBSIDIES, THE DEFENDANTS, AT ALL
TIMES RELEVANT HERETO, HAD, AND HAS, A DUTY UNDER TITLE VIII OF THE
CIVIL RIGHTS ACT OF 1968 AND THE FAIR HOUSING ACT OF 1988, TO REFRAIN
FROM DISCRIMINATING AGAINST TENANTS, INCLUDING PLAINTIFFS, ON THE
BASIS OF RACE, COLOR, RELIGION, OR NATIONAL ORIGIN, AND TO FOLLOW
THE RULES, REGULATIONS, AND GUIDELINES FOR SUBSIDIZED LANDLORDS
SET FORTH IN THE APPLICABLE HUD HANDBOOK NO. 4350.3.

31. AS THE OPERATOR OF A DWELLING IN THE STATE OF DELAWARE,
DEFENDANT B'NAI B'RITH SENIOR ALSO HAS A DUTY UNDER THE DELAWARE
FAIR HOUSING ACT TO REFRAIN FROM DISCRIMINATING AGAINST TENANTS,
INCLUDING PLAINTIFFS, ON THE BASIS OF RACE, COLOR, RELIGION, OR
NATIONAL ORIGIN.

32. PLAINTIFF ISIDORE CORWIN AND PLAINTIFF BONNIE CORWIN, SENIOR
CITIZENS, MARRIED TO EACH OTHER, WERE ACCEPTED AS TENANTS AT THE
B'NAI B'RITH HOUSE, BY THE DEFENDANTS, ON SEPTEMBER 24, 1992; AND
MOVED INTO APARTMENT 608 AT THE B'NAI B'RITH HOUSE ON OCTOBER 25,
1992, SHORTLY AFTER THEIR MARRIAGE.

33. BOTH PLAINTIFFS ISIDORE CORWIN AND BONNIE CORWIN, AS YOUNG
ADULTS, WERE SINCERE MEMBERS OF THE BOY SCOUTS OF AMERICA AND
THE GIRL SCOUTS OF AMERICA, RESPECTIVELY; WHO EXPRESS THEIR

6

FILE NO.128 04/04 07 15:14  ID:                                FAX                     PAGE  13/

15:42 MAR 27, 2007                      FAX NO: 8857056                    #0421  PAGE: 13/28

03/27/07  10:55 FAX 1 302 658 8076           ZUTZ-PLI                              ☑010

ALLEGIANCE TO AMERICA, IN PART, BY DISPLAYING SYMBOLS THEREOF SUCH AS THE AMERICAN FLAG IN AND ABOUT THEIR APARTMENT AT SAID BUILDING, OPERATED AND CONTROLLED BY THE DEFENDANTS.

34. UPON THE TRAGEDY OF SEPTEMBER 11, 2001, DEFENDANT ROTAN, IN A HUD-APPROVED BUILDING ACTIVITY, WITH PROPER NOTICE TO TENANTS, ERECTED ONTO TENANTS' BALCONY RAILS, INCLUDING THE PLAINTIFFS' BALCONY RAIL, POLYESTER AMERICAN FLAGS (12"x 18" FLAGS ON A 24 ½" STICK POLE) ON EACH BALCONY AT THE SUBJECT FACILITY, TWENTY-FOUR HOURS A DAY, SEVEN DAYS A WEEK. THE OUTDOOR BALCONY OF EACH TENANTS' APARTMENT EXTENDS APPROXIMATELY THE LENGTH OF A TENANTS' LIVING ROOM AND BEDROOM WITH AN APPROPRIATE RAILING.

35. WITH THE ABOVE AFOREMENTIONED DEFENDANTS' AMERICAN FLAG-HANGING ACTIVITY, THIS IS WHEN THE DEFENDANTS PUT NOTHING IN WRITING TO THE TENANTS TO THE EFFECT THAT THE BALCONY ACTIVITY WAS AN *EXCEPTION* TO ANY HOUSE RULE.

36. THE DEFENDANTS' AMERICAN FLAG-HANGING ACTIVITY, STRAPPED ONTO TENANTS' BALCONY RAILS, INCLUDING PLAINTIFFS' BALCONY RAIL, DISPLAYED THE AMERICAN FLAG, WHICH DEPICTED THE STARS AND STRIPES, AND HAD GREAT NATIONAL ORIGIN VALUE TO BOTH PLAINTIFFS.

37. PLAINTIFFS, TOO, PUT AMERICAN SYMBOLS AND PICTURES IN THEIR B'NAI B'RITH HOUSE APARTMENT (INSIDE), AND ON THEIR AUTOMOBILE'S VENT WINDOW AND REAR BUMPER, WHERE THE AMERICAN FLAG STICKER READS "OUR GOD REIGNS". PLAINTIFFS PURCHASED PATRIOTIC DVD'S; SUNG PATRIOTIC SONGS; VIEWED PATRIOTIC TV; AND ISIDORE CORWIN (WHO WENT ON DAILY WALKS) SOMETIMES CARRIED THE AMERICAN FLAG AS HE WALKED (WITH PASSING MOTORISTS "TOOTING THEIR HORNS" IN AGREEMENT WITH THE DISPLAY).

38. PLAINTIFFS FURTHER EXPRESSED THEIR FERVENT PATRIOTIC ALLEGIANCE TO AMERICA BY ATTENDING *SENIOR CENTER* LUNCHES, COMMENCING WITH THE "PLEDGE OF ALLEGIANCE" ("ONE NATION UNDER GOD"); LODGE NO. 470, B'NAI B'RITH, INC.'S SING-A-LONGS WHERE PATRIOTIC SONGS WERE SUNG; TRIPS TO HISTORIC BATTLEFIELDS AND

7

MONUMENTS; AND A VISIT TO THE GRAVESIDE OF ISIDORE CORWIN'S
FATHER (A VETERAN OF WORLD WAR I) WHERE THE FLAG WAS PLACED.

39.  THE PRESENCE OF PLAINTIFFS' AMERICAN SYMBOLS AND IMAGES,
INCLUDING THE AMERICAN FLAG, IN AND ABOUT THE PLAINTIFFS'
APARTMENT UNIT, WAS KNOWN TO, OR SHOULD HAVE REASONABLY BEEN
KNOWN TO, THE DEFENDANTS, PARTICULARLY DEFENDANT ROTAN,
MANAGER OF THE SUBJECT FACILITY, THROUGH HER INSPECTIONS OF
PLAINTIFFS' UNIT ONE OR TWO TIMES A YEAR AND HER RECEIPT OF
PLAINTIFFS' "DECLARATION OF SECTION 214 CITIZENSHIP STATUS FORM", IN
THE NORMAL COURSE OF HER WORK.

40.  ON VETERANS DAY 2002 AND ON VETERANS DAY 2003, THE DEFENDANTS'
HUD-SUBSIDIZED AMERICAN FLAG-HANGING ACTIVITY ON TENANTS'
BALCONY RAILS WAS ACTIVE AND ONGOING.

41.  WITH VETERANS DAY 2004, AND THE WEEK OF OCTOBER 17, 2004
APPROACHING (WHERE THE DEFENDANTS' HOSTED THE B'NAI B'RITH
INTERNATIONAL SENIOR HOUSING CONVENTION) DEFENDANT ROTAN
DIRECTED HER MAINTENANCE STAFF TO REMOVE ALL AMERICAN FLAGS IN
THE DEFENDANTS' FLAG-HANGING ACTIVITY, FROM ALL TENANTS'
BALCONY RAILS, OSTENSIBLY BECAUSE THE AMERICAN FLAGS HAD BECOME
"WORE AND TATTERED".

42.  IN THE ABOVE AFOREMENTIONED 2004 DEFENDANTS' *REMOVAL* OF ITS
AMERICAN FLAGS FROM THE TENANTS' RENTED BALCONY RAILS, THIS IS
WHEN THE DEFENDANTS PUT NOTHING IN WRITING TO THE TENANTS TO
THE EFFECT.

43.  POST THE DEFENDANTS' AMERICAN FLAG REMOVAL FROM THE TENANTS'
PRIVATE BALCONY RAILS, SOME TENANTS HUNG THEIR OWN FLAGS ON
THEIR RESPECTIVE BALCONIES, SOME  FLAGS EVEN LARGER THAN THE
DEFENDANTS' AMERICAN FLAG.

44.  PLAINTIFFS, TOO, REPLACED DEFENDANTS' AMERICAN FLAG WITH THEIR
OWN HANGING POLYESTER AMERICAN FLAG (3' x 5' FLAG WITHOUT A STICK
POLE) WHICH HUNG ON PLAINTIFFS' BALCONY WALL ON CERTAIN
NATIONAL HOLIDAYS, AS A CONTINUED EXPRESSION OF  PATRIOTISM.

8

45. AT THE SAME TIME THAT PLAINTIFFS DISPLAYED THEIR AMERICAN
FLAG AND PATRIOTIC IMAGES, OTHER TENANTS AND THE BUILDING
MANAGEMENT PROMINENTLY DISPLAYED SYMBOLS OF THEIR OWN OF
AMERICA, SUCH AS FLAGS OR STICKERS DEPICTING THE AMERICAN FLAG AT
THE SUBJECT FACILITY.

46. UPON INFORMATION AND BELIEF, BETWEEN THE YEARS 2001 AND 2005,
THERE WAS A PASSIVE ACCEPTANCE BY THE DEFENDANTS IN FLAG FLYING
ON TENANT RESPECTIVE BALCONIES AT THE SUBJECT FACILITY.

47. ON THE HEELS OF VETERANS DAY 2006, SPECIFICALLY ON SEPTEMBER 15,
2006, DEFENDANT ROTAN GAVE WRITTEN NOTICE TO THE TENANTS,
INCLUDING PLAINTIFFS, OF THE STATUS OF DEFENDANTS' INTENTIONS, OF
THEIR REPEATING (ALTHOUGH THEY HOPED NOT TO) THEIR AMERICAN
FLAG HANGING ACTIVITY ON TENANTS' BALCONIES, IF THE NATION
EXPERIENCED ANOTHER TERRORIST ATTACK, *STATING*:

> "WE HUNG SMALL FLAGS ON THE BALCONIES...A SPECIAL CIRCUMSTANCE,
> WHICH WE HOPE WE NEVER HAVE TO REPEAT." (ROTAN MEMO, 9/15/06 ).

48. ADDITIONALLY, IN THE ABOVE AFOREMENTIONED SEPTEMBER 15, 2006
MEMO, IS WHERE MRS. ROTAN RESPONDED TO PLAINTIFFS' PARTICULAR
SEPTEMBER 9, 2006 REQUEST (WHERE PLAINTIFFS REQUESTED PERMISSION
TO HANG THEIR AMERICAN FLAG ON THEIR PRIVATE BALCONY), MRS.
ROTAN STATING IN THE 9/15/06 MEMO THAT FLAGS ARE NOT ALLOWED ON
BALCONIES AND FOR ALL TENANTS TO PROMPTLY REMOVE THEIR FLAGS.

49. ON OCTOBER 30, 2006, DEFENDANT ROTAN GAVE WRITTEN DENIAL TO
PLAINTIFFS' OCTOBER 23, 2006 ALTERNATIVE REQUEST FOR PERMISSION TO
HANG PLAINTIFFS' AMERICAN FLAG ON THEIR BALCONY RAIL (AS
DEFENDANTS PERMIT OTHER TENANTS TO HANG PATIO UMBRELLAS ON
THEIR BALCONY RAILS), THEREBY MAKING UNAVAILABLE PLAINTIFFS'
ABILITY TO HANG THEIR FLAG ON THEIR BALCONY RAIL, VETERANS DAY.

50. ON VETERANS DAY 2006, DEFENDANTS PERMITTED OTHER TENANTS AT
THE SUBJECT FACILITY TO HANG SUCH THINGS ON THEIR BALCONIES AS
WIND CHIMES HANGING FROM PARTICULAR BALCONY CEILINGS;
THERMOMETERS HANGING ON PARTICULAR BALCONY WALLS; PLANTERS

9

FILE NO.128 04/04 07 15:15 ID.                    FHA.                    PAGE 16/

15:44 MAR 27, 2007                    FAX NO: 8857056                    #0421  PAGE: 16/28

03/27/07  10:57 FAX 1 302 658 8076        ZUTZ-PLI                    ☒013

HANGING ON PARTICULAR BALCONY RAILS; BELL HANGING FROM A
PARTICULAR BALCONY CEILING; HOOKS HANGING ON PARTICULAR
BALCONY WALLS; FLAG HOLDERS HANGING ON PARTICULAR BALCONY
RAILS; AND EVEN THE AFOREMENTIONED HANGING UMBRELLAS ON
PARTICULAR BALCONY RAILS.

51. DEFENDANTS PERMITTED THESE ABOVE AFOREMENTIONED ITEMS TO BE
HUNG OR TO BE FASTENED OR STRAPPED ON OTHER TENANTS' BALCONIES
AND BALCONY RAILS ON VETERANS DAY 2006, AND THE SUBSEQUENT
WINTER HANGING OF SEASONAL DECORATIONS SUCH AS WREATHES ON THE
TENANTS' BALCONY WALLS AND BALCONY RAILS, EVEN THOUGH
DEFENDANT ROTAN STATED THAT SUCH HANGINGS ON BALCONIES ARE NOT
PERMITTED AT THE SUBJECT FACILITY.

52. IN THE FACE OF DEFENDANTS' ALLEGED DISCRETIONARY AUTHORITY TO
REPEAT DEFENDANTS' HUD-SUBSIDIZED HANGING OF THE AMERICAN FLAG
ACTIVITY ON TENANTS' BALCONY RAILS, INCLUDING PLAINTIFFS' BALCONY
RAIL; AUTHORITY TO ACCEPT OTHER TENANTS' HANGING PATIO
UMBRELLAS ON TENANTS' BALCONY RAILS; AUTHORITY TO ACCEPT OTHER
TENANTS' DECORATIONS ON TENANTS' BALCONIES; AND YET DENY
PLAINTIFFS' ABILITY TO HANG THEIR AMERICAN FLAG ON THEIR RENTED
APARTMENT'S BALCONY RAIL ON A NATIONAL HOLIDAY, HAS HAD A
DISPROPORTIONATE IMPACT ON PLAINTIFFS AND CAUSED PLAINTIFFS
GREAT MENTAL ANGUISH AND EMOTIONAL, AND EVEN PHYSICAL DISTRESS.

53. ON JULY 27, 2006, PLAINTIFFS HAD MADE THE AFOREMENTIONED
HOUSING DISCRIMINATION COMPLAINT WITH HUD (THE AGENCY
PRIMARILY CHARGED WITH THE FAIR HOUSING ACT IMPLEMENTATION AND
ADMINISTRATION) WHERE PLAINTIFFS REPORTED ALLEGED NATIONAL
ORIGIN DISCRIMINATION IN THE REPORTED PLAINTIFFS' INABILITY TO
HANG THEIR AMERICAN FLAG ON THEIR RESPECTIVE BALCONY.

54. ONLY AFTER HUD'S FORWARDING OF THE ABOVE AFORESAID ALLEGED
DISCRIMINATION COMPLAINT TO DSHA FOR DETERMINATION, AND DESPITE
DEFENDANT BUILDING MANAGER ROTAN'S RULES ISSUED ON OR ABOUT
SEPTEMBER 15, 2006, FOR ALL THE TENANTS, INCLUDING PLAINTIFFS, TO

10

15:45 MAR 27, 2007                    FAX NO: 8857056
03/27/07  10:57 FAX 1 302 658 8076        ZUTZ-PLI                    #0421 PAGE: 17/28
                                                                        ☒014

PROMPTLY REMOVE THEIR FLAGS FROM TENANTS' RESPECTIVE BALCONIES,
DID DEFENDANT ROTAN SUDDENLY PROMULGATE NEW RULES ON
SEPTEMBER 18, 2006, STATING, IN WRITING, THAT TENANTS CAN NOT HANG
FLAGS ON TENANTS' PRIVATE BALCONIES, BUT THAT A FLAG MAY BE PUT
ON A STICK IN A FLOWER POT OR A FLAG MAY BE DRAPED ON A CHAIR.
55. DEFENDANTS' FOREGOING ACTS ON 9/15/06, INSTRUCTING TENANTS,
INCLUDING PLAINTIFFS, TO PROMPTLY REMOVE THEIR FLAGS ON THEIR
RENTED BALCONIES; ON 9/18/06, INSTRUCTING TENANTS, INCLUDING
PLAINTIFFS, THAT THEY MAY NOW PUT THEIR FLAG IN A FLOWER POT OR
DRAPE THEIR FLAG ON A CHAIR; ON 10/30/06, PROHIBITING PLAINTIFFS FROM
STRAPPING THEIR AMERICAN FLAG ON THEIR RESPECTIVE BALCONY RAIL,
WHILE DEFENDANTS PERMIT PATIO UMBRELLAS TO BE STRAPPED ON
OTHER TENANT'S BALCONY RAILS, AS WELL AS OTHER HANGINGS ON OTHER
TENANT'S BALCONY CEILINGS, WALLS, AND RAILS; AND, ON 9/15/06, WHERE
DEFENDANTS GIVE THEMSELVES, IN PARTICULAR CIRCUMSTANCES,
PERMISSION TO STRAP THEIR AMERICAN FLAGS ON TENANTS' BALCONY
RAILS, TOOK PLACE IN A CONTEXT OF OTHER ALLEGED DEFENDANTS'
DISCRIMINATORY ACTS TOWARDS PLAINTIFFS.
56. IN ABOUT 1993, DEFENDANT ROTAN HARASSED AND TRIED TO
INTIMIDATE THE PLAINTIFFS DURING INSPECTIONS OF THEIR APARTMENT.
SHE ORDERED PLAINTIFFS TO REMOVE A CERTAIN KIND OF PEEL-BACKING
WALLPAPER BORDER FROM ABOVE THE TOP EDGE OF THEIR HALLWAY
CLOSET METAL DOOR. AT ABOUT THE SAME TIME, UPON INFORMATION AND
BELIEF, DEFENDANT ROTAN PERMITTED ANOTHER TENANT TO KEEP THE
SAME KIND OF WALLPAPER BORDER ON THAT TENANT'S ENTIRE KITCHEN
WALL, EVEN THOUGH ROTAN STATED TO PLAINTIFFS THAT SUCH A TYPE
WALLPAPER BORDER WAS NOT PERMITTED IN THE B'NAI B'RITH HOUSE.
57. ON ANOTHER OCCASION, IN THE EARLY MID 1990'S, DEFENDANT ROTAN
CALLED PLAINTIFFS CORWIN TO HER OFFICE AND, IN AN ACCUSATORY TONE
AND ON THE BASIS OF AN ALLEGED REPORT TO HER FROM SOMEONE ELSE,
ASKED PLAINTIFFS IF THEY HAD UNDERREPORTED THE NUMBER OF CARS
THEY HAD AT B'NAI B'RITH HOUSE. IN FACT, PLAINTIFFS HAD NOT.

11

15:46 MAR 27, 2007                    FAX NO: 8857056                    #0421  PAGE: 18/28
03/27/07  10:58 FAX 1 302 658 8076        ZUTZ-PLI                                   Ø015

**58.** IN 1997, DESPITE THE FACT THAT PLAINTIFFS ALWAYS PAID THEIR RENT ON TIME, DEFENDANT ROTAN BEGAN HARASSING PLAINTIFFS ON THE SUBJECT OF THEIR MEDICAL EXPENSES AND MEDICAL APPOINTMENT CAR MILEAGE EXPENSE IN THEIR ANNUAL HUD SECTION 8 RENT RECERTIFICATION. MRS. ROTAN DENIED PLAINTIFFS' ABILITY TO CLAIM MEDICAL APPOINTMENT MILEAGE EXPENSES IN USE OF THEIR OWN AUTOMOBILE, UNTIL A CERTAIN HUD OFFICIAL IN WASHINGTON, D.C., INSTRUCTED HER TO ALLOW THE CLAIM. EVEN THEN, DEFENDANT ROTAN CONDITIONED HER COMPLIANCE BY INSTRUCTING THE PLAINTIFFS TO TELL NO OTHER TENANT AT THE B'NAI B'RITH HOUSE ABOUT IT.

**59.** IN 1998, DEFENDANT ROTAN AGAIN HARASSED PLAINTIFFS ABOUT THEIR ANNUAL RENT RECERTIFICATION HEALTH EXPENSES, WHEN SHE ACCUSED PLAINTIFFS OF "PADDING" THEIR RECEIPTS BY PURCHASING TOO MANY AIR CLEANERS. IN FACT, DUE TO THE INDUSTRIAL FUMES IN CLAYMONT - DELAWARE RIVER AREA, THE PLAINTIFFS NEEDED SMALL AIR CLEANERS FOR THE FOUR ROOMS IN APARTMENT UNIT.

**60.** IN THE LATE 1990'S, DEFENDANT ROTAN HARASSED AND TRIED TO INTIMIDATE THE PLAINTIFFS DURING INSPECTION OF THEIR APARTMENT. DEFENDANT ROTAN ORDERED PLAINTIFFS TO REMOVE A CHRISTIAN PRAYER HUNG ON PLAINTIFFS' APARTMENT FRONT DOOR, OBSTENSIBLY BECAUSE IT WAS HUNG BY A SMALL SCREW.

**61.** AT ABOUT THE SAME TIME, DEFENDANT ROTAN PERMITTED OTHER TENANTS TO KEEP ITEMS ON THEIR FRONT DOORS WHICH HUNG ON SMALL SCREWS AND EVEN LARGER NAILS, INCLUDING PICTURE FRAMES, WREATHES, ANGELS, AND MAZZUAZAHS, EVEN THOUGH ROTAN STATED TO PLAINTIFFS THAT SUCH HANGINGS ON APARTMENT FRONT DOORS WERE NOT PERMITTED TO BE HUNG BY A NAIL OR SCREW AT THE FACILITY.

**62.** BEGINNING 2000, DEFENDANT ROTAN WAS RELUCTANT AND TARDY IN ACTING TO RESOLVE THE PROBLEM OF DELETERIOUS SECOND-HAND SMOKE COMING INTO PLAINTIFFS' UNIT FROM THE UNIT NEXT DOOR OCCUPIED BY A HEAVY CIGARETTE SMOKER, AND ALTHOUGH THIS PROBLEM WAS BROUGHT TO SAID DEFENDANT'S ATTENTION SEVERAL TIMES.

12

15:47 MAR 27, 2007                    FAX NO: 8857056                #0421  PAGE: 19/28
03/27/07  10:59 FAX 1 302 658 8076        ZUTZ-PLI                           ☒018

**63.** IN 2001, DEFENDANT ROTAN DENIED PLAINTIFF'S REQUEST THAT THEY
BE ALLOWED TO HANG A FLOWER BASKET ON THEIR PERSPECTIVE
BALCONY RAIL TO BLOCK OUT A NEARBY STROBE LIGHT'S GLARE, EVEN
THOUGH OTHER TENANTS WERE PERMITTED TO MAINTAIN SUCH HANGING
FLOWER BASKETS OR FLOWER BOXES ON THEIR BALCONY RAILS.

**64.** IN OR ABOUT DECEMBER 05, 2003, IN TENANTS' DISPUTE AT THE SUBJECT
FACILITY BETWEEN THOSE TENANTS THAT WANTED NATIVITY SCENES AND
THOSE TENANTS THAT COMPLAINED ABOUT NATIVITY SCENES IN THE
BUILDING'S HOLIDAY SETTINGS, DEFENDANT ROTAN BEGAN REMOVING
TENANTS' PERSONALLY OWNED NATIVITY SCENES IN THE COMMON AREAS
OF THE APARTMENT BUILDING, OSTENSIBLY BECAUSE THE NATIVITY
SCENES WERE A VIOLATION OF THE DELAWARE AND FEDERAL FAIR
HOUSING ACT (AND IN SOME CASES DISCARDED THE NATIVITY SCENES).

**65.** IN OR ABOUT JANUARY, 2004, DEFENDANT ROTAN VERBALLY DEMANDED
PLAINTIFFS NOT TO DONATE ITEMS TO OTHER TENANTS WHEN PLAINTIFFS
HAD DONATED A PERSONAL ITEM AT A FLOOR'S COMMON AREA TABLE.

**66.** AT ABOUT THE SAME TIME, UPON INFORMATION AND BELIEF, OTHER
TENANTS ARE PERMITTED TO DONATE ITEMS TO EACH OTHER IN THE
COMMON AREAS ON ALL FLOORS AT THE SUBJECT FACILITY.

**67.** IN OR ABOUT FEBRURARY 4, 2004, DEFENDANT ROTAN CHARGED AND
DEMANDED OF THE PLAINTIFFS AN EVEN GREATER AMOUNT OF MONTHLY
RENTAL MONIES WITHOUT PROVIDING THE PLAINTIFFS THEIR RIGHT TO AN
INTERIM 202/8 LEASE AND THEIR RIGHT TO SIGN A 202/8 LEASE.

**68.** IN OR ABOUT FEBRUARY 23, 2004, DEFENDANT ROTAN REQUESTED THE
PLAINTIFFS TO REMOVE THEIR OUTDOOR FURNITURE DECK BOX FROM
THEIR PRIVATE BALCONY AFTER THE DECK BOX HAD BEEN THROUGH
INSPECTIONS WITHOUT CITATION.

**69.** IN OR ABOUT APRIL 20, 2004, DEFENDANT ROTAN REQUESTED THAT
PLAINTIFFS REMOVE THEIR 7 ½" LONG CRUCIFIX, HANGING ON PLAINTIFFS'
PRIVATE BALCONY WALL, AFTER THE CRUCIFIX, SECURELY FASTENED, HAD
BEEN THROUGH INSPECTION WITHOUT CITATION SINCE 1993.

**70.** AT ABOUT THE SAME TIME, DEFENDANT ROTAN PERMITTED AND SET

13

FILE NO.128 04/04 07 15:52 FD.    FAX    PAGE 20/28

15:47 MAR 27, 2007    FAX NO: 8857056    #0421 PAGE: 20/28

03/27/07 10:59 FAX 1 302 658 8076    ZUTZ-PLI    ☎017

DIFFERENT PRIVILEGES FOR OTHER TENANTS TO HANG FLOWER BOXES; PLANTS; UMBRELLAS; PLANTERS; WIND CHIMES; FLAGS; THERMOMETERS; BELL; HANGING SEASONAL DECORATIONS; AND PINWHEELS ON THEIR BALCONIES EVEN THOUGH DEFENDANT ROTAN STATED THAT SUCH HANGINGS ON BALCONIES ARE NOT PERMITTED AT THE B'NAI BRITH HOUSE FOR SENIOR CITIZENS.

71.  IN LATE SUMMER 2004, DEFENDANT ROTAN GAVE WRITTEN NOTICE TO ALL TENANTS AT THE FACILITY, INCLUDING PLAINTIFFS, THAT TENANTS MUST ATTEND MANDATORY MEETINGS WITH DEFENDANT ROTAN, WHERE, UPON INFORMATION AND BELIEF, TENANTS WERE FORCED TO REGISTER, AND EVEN THOUGH SUCH MANDATORY MEETINGS ARE ILLEGAL IN THE HUD-SUBSIDIZED FACILITY.

72.  BEGINNING 2006 (AND RETROACTIVE TO 2002) UPON INFORMATION AND BELIEF, DEFENDANT ROTAN FAILED TO ENSURE PLAINTIFFS THE PROPER EXCLUSIONS AND DEDUCTIONS IN DEFENDANT ROTAN'S CALCULATION OF PLAINTIFFS' RENT AMOUNT, RESULTING IN PLAINTIFFS' RENT BEING OVERCHARGED.

73.  ON OR ABOUT NOVEMBER 28, 2006, DEFENDANT ROTAN, IN WRITING, DENIED PLAINTIFFS' WRITTEN REQUEST OF OCTOBER 16, 2006 FOR DEFENDANTS TO INCLUDE TWO (2) CHRISTIAN HOLY DAYS (ASH WEDNESDAY AND THREE KING DAY) IN DEFENDANTS' NEWSLETTER CALENDAR, OSTENSIBLY BECAUSE DEFENDANTS "CANNOT AND DO NOT LIST EVERY HOLY DAY" (UNLESS THERE IS A PERQUISITE FOR A RELIGIOUS SERVICE THAT DAY AT THE SUBJECT FACILITY OR IF THE BUILDING IS CLOSED).

74.  AT ABOUT THE SAME TIME, UPON INFORMATION AND BELIEF, DEFENDANT ROTAN PERMITS OTHER RELIGIOUS HOLY DAYS, SUCH AS THE PASSOVER, TO BE LISTED IN THE DEFENDANTS' BUILDING NEWSLETTER CALENDAR ACTIVITY, AND WITHOUT THE ABOVE AFOREMENTIONED PERQUISITE.

75.  DEFENDANT ROTAN'S MOST RECENT ACT OF ALLEGED DISCRIMINATION OCCURRED ON OR ABOUT DECEMBER 7, 2006, WHERE DEFENDANT ROTAN REQUESTED, IN WRITING, THAT ALL TENANTS, INCLUDING PLAINTIFFS,

14

FILE NO.120 04/04 07 15:17  ID:                          FAX:

15:48 MAR 27, 2007                     FAX NO: 8857056

03/27/07  11:00 FAX 1 302 658 8076        ZUTZ-PLI                    #0421  PAGE: 21/28

                                                                          Ø018

MUST REMOVE ANY HANGING ITEM OVER THEIR APARTMENT FRONT DOOR
WHERE, SUBSEQUENTLY, PLAINTIFFS HAD TO REMOVE THEIR 3" x 5"
CRUCIFIX (EVEN THOUGH THE CRUCIFIX WAS SECURELY FASTENED).

76.  AT ABOUT THE SAME TIME, UPON INFORMATION AND BELIEF,
DEFENDANT ROTAN PERMITTED ANOTHER TENANT TO HANG A SLEIGH AND
RAINDEER DECORATION OVER THAT TENANTS' APARTMENT FRONT DOOR,
MUCH LARGER THAN THE PLAINTIFFS' CRUCIFIX, AND EVEN THOUGH
DEFENDANT ROTAN STATES THAT SUCH HANGINGS OVER TENANTS' FRONT
DOOR ARE NOT PERMITTED.

77.  DESPITE DEFENDANTS' EFFORTS IN DENYING PLAINTIFFS THE ABILITY
TO HANG THEIR AMERICAN FLAG ON THEIR RESPECTIVE BALCONY RAIL,
WHILE PERMITTING OTHER TENANTS TO HANG EVEN LARGER PATIO
UMBRELLAS ON THEIR BALCONY RAILS, SYMBOLS OF THE AMERICAN FLAG
REMAIN PROMINENT IN THE BUILDING.  THEY INCLUDE THE AMERICAN
FLAG (ON A STAND) AND AN AMERICAN FLAG BARNSIDE PAINTING, IN THE
SOLARIUM; THE AMERICAN FLAG (ON A STAND) AT THE MACHZIKEY HADAS
CONGREGATION'S RISER; THE AMERICAN FLAG (HOISTED A POLE) ON
WEEKDAYS AT THE SUBJECT FACILITY'S OUTSIDE ENTRANCE; A SEASONAL
STARS AND STRIPE DECORATION AT THE DEFENDANTS' OFFICE DOOR; TWO
(2) AMERICAN FLAGS AT THE TENANTS ASSOCIATION LOBBY COMMISSARY
DOORS; THE AMERICAN FLAG POSTED ON DEFENDANTS' NEWSLETTER
COVER, IN THE PAST; THE STONE SCHOOL HOUSE AMERICAN FLAG
PAINTING, THE COURT HOUSE AMERICAN FLAG PAINTING, AND THE GRAND
OPERA HOUSE AMERICAN FLAG PAINTING, IN THE  DELAWARE ROOM; THE
AMERICAN FLAG ON TWENTY-THREE (23) TENANTS' APARTMENT DOORS;
THE AMERICAN FLAG STICKERS ON THREE (3) TENANTS' LOBBY MAILBOXES;
AND THE AMERICAN FLAG (12"x 18" FLAG ON A  24 ½" STICK POLE) HANGING
OVER THE SUBJECT FACILITY'S OUTSIDE MAINTENANCE GARAGE DOOR ON
NATIONALLY-OBSERVED VETERANS DAY 2006 AND CONTINUING.

78.  THE HISTORIC BACKDROP OF DEFENDANTS IN A PREVIOUS ALLEGED
FAIR HOUSING DISCRIMINATION COMPLAINT, IS WHERE DEFENDANTS
SETTLED AND THEIR APARTMENT MANAGEMENT AGENCY, SPM. INC.,

15

15:49 MAR 27, 2007                    FAX NO: 8857056                    #0421   PAGE: 22/28

03/27/07  11:01 FAX 1 302 658 8076        ZUT2-PLI                              @019

ON JUNE 15, 2006, REIMBURSED PLAINTIFFS' OUT-OF-POCKET COSTS, BUT
WHERE DEFENDANTS HAVE NEVER COMMUNICATED WITH PLAINTIFFS IN
PLAINTIFFS' AMERICAN FLAG HANGING COMPLAINT IN ORDER TO MINIMIZE
DEFENDANTS' FLAG HANGING POLICY, SO THAT THERE WOULD BE LESS
IMPACT ON PLAINTIFFS IN THE HANGING OF AN AMERICAN FLAG ON THEIR
BALCONY FOR VETERANS DAY 2006.

79. AT OTHER B'NAI B'RITH APARTMENT HOUSES, UPON INFORMATION AND
BELIEF CONCERNING VETERANS DAY 2006, IS WHERE THE TENANTS'
AMERICAN FLAG HANGING IS PERMISSIBLE EITHER ON BALCONY RAILS OR
AS LONG AS THE AMERICAN FLAG IS HUNG ON THE TENANTS' RESPECTIVE
BALCONY AT RAIL-HIGH MEASUREMENT.

80. AT THE SUBJECT FACILITY IN CLAYMONT, DELAWARE, DEFENDANTS'
POLICY FOR TENANTS' BALCONY FLAG FLYING, INCLUDING ON PLAINTIFFS'
BALCONY, IS ALLEGEDLY "EXCESSIVE" WITH IT'S *NO FLAG HANGING*
POLICY (WHERE A TENANT CANNOT ATTACH HIS OR HER AMERICAN FLAG
TO HIS OR HER BALCONY OR HIS OR HER BALCONY RAIL), AND WHERE THE
DEFENDANTS' FLAG POLICY IS ALLEGEDLY UNFAIR (SEE HUD HANDBOOK
5301.3 § 69, WHICH STATES THAT HOUSE RULES MUST NOT INFRINGE ON
TENANTS CIVIL RIGHTS) AND THIS IS WHERE CERTAIN OTHER TENANTS AT
THE SUBJECT FACILITY, ON VETERANS DAY 2006, SIMPLY IGNORED THE
HOUSE RULES, USING THEIR OWN COMMON SENSE, AND HUNG THEIR
AMERICAN FLAGS ON THEIR BALCONIES ANYWAY.

81. DEFENDANTS HAVE PUBLISHED A NOTICE TO ALL TENANTS, INCLUDING
THE PLAINTIFFS, WARNING THAT THEY ARE SUBJECT TO EVICTION IF THEY
DO NOT COMPLY WITH DEFENDANTS' POLICIES.

82. PLAINTIFFS HAVE REFRAINED FROM HANGING THEIR AMERICAN FLAG
ON THEIR PERSPECTIVE BALCONY RAIL, FOR FEAR OF EVICTION OR OTHER
FORMS OF DISCRIMINATORY ACTION AGAINST THEM.

## COUNT I
### (VIOLATION OF FAIR HOUSING ACT, 42 U.S.C. § 3601, ET SEQ.)

83. PLAINTIFFS HEREBY INCORPORATE BY REFERENCE § 1-82 OF THIS
COMPLAINT.

16

FILE NO.128 04/04/'07 15:17  ID:                    FAX:                    PAGE  23

15:49 MAR 27, 2007                    FAX NO: 8857056                    #0421  PAGE: 23/28

03/27/07  11:01 FAX 1 302 658 8076    ZUTZ-PLI                         ☑020

84.  THE ACTIONS OF DEFENDANTS CONSTITUTE UNLAWFUL NATIONAL ORIGIN DISCRIMINATION AGAINST PLAINTIFFS IN VIOLATION OF THE FAIR HOUSING ACT, TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, 42 U.S.C. § 3601, AND IN PARTICULAR (BUT WITHOUT LIMITATION) 42 U.S.C. § 3604 (B), WHICH PROHIBITS DISCRIMINATION AGAINST ANY PERSON IN THE TERMS, CONDITIONS, OR PRIVILEGES OF SALE OR RENTAL OF A DWELLING, OR IN THE PROVISION OF SERVICES OR FACILITIES IN CONNECTION THEREWITH, BECAUSE OF... NATIONAL ORIGIN.

85.  PLAINTIFFS ARE MEMBERS OF A PROTECTED CLASS SET FORTH IN THE FAIR HOUSING ACT, IN THAT THEY ARE  CITIZENS OF THE UNITED STATES OF AMERICA.

86.  DEFENDANTS DIRECTLY DISCRIMINATED AGAINST PLAINTIFFS ON ACCOUNT OF THEIR NATIONAL ORIGIN BY BANNING PLAINTIFFS' AMERICAN FLAG FROM HANGING ON PLAINTIFFS' BALCONY RAIL, WHILE DEFENDANTS PERMITTED OTHER TENANTS TO HANG PATIO UMBRELLAS AND OTHER SUCH HANGING ON THEIR PERSPECTIVE BALCONY RAILS AND WHERE DEFENDANTS EVEN GAVE THEMSELVES PERMISSION, IN A PARTICULAR SITUATION, TO REPEAT THEIR AMERICAN FLAG HANGING ACTIVITY ON TENANTS' BALCONY RAILS, INCLUDING PLAINTIFFS' BALCONY RAIL (EVEN THOUGH THE DEFENDANTS  HOPED THEY WOULD NEVER HAVE TO).

87.  DEFENDANTS HAVE SELECTIVELY ENFORCED AGAINST PLAINTIFFS, BUT NOT AGAINST OTHER B'NAI B'RITH HOUSE TENANTS, THEIR ALLEGED HOUSING POLICY REGARDING HANGING ITEMS ON BALCONIES AND THEREBY INTERFERED TO KEEP PLAINTIFFS FROM THE FULL BENEFIT OF THE FEDERAL FAIR HOUSING LAW.

88.  DEFENDANTS FURTHER UNLAWFULLY FAILED TO ACCOMMODATE PLAINTIFFS' NATIONAL ORIGIN BELIEFS AND OBSERVANCES, DESPITE A REQUEST FOR, AND/OR DEFENDANTS' KNOWLEDGE OF THE NEED, FOR SUCH ACCOMMODATION, AND ONLY INFORMALLY (AND NON-BINDINGLY) SUDDENLY WITHDREW THEIR REFUSAL TO ACCOMMODATE TENANTS' FLAGS, INCLUDING THE PLAINTIFFS' FLAG, BY INSTRUCTING TENANTS THAT THEY MAY PLACE THEIR FLAGS IN A FLOWER POT, AND *AFTER* COMPLAINTS

17

FILE NO.128 04/04 07 15:18  ID:                 FAX:                     PAGE 24

15:50 MAR 27, 2007                    FAX NO: 8857056

03/27/07  11:02 FAX 1 302 858 8076        ZUTZ-PLI                    #0421  PAGE: 24/28

                                                                              ☑021

WERE MADE AT DEFENDANT ROTAN'S OFFICE BY OTHER TENANTS.

89. WHERE DEFENDANTS COULD HAVE MADE A LESS DISCRIMINATORY EFFECT BY ADOPTING A FLAG FLYING POLICY THAT WOULD ENABLE PLAINTIFFS' AMERICAN CITIZENSHIP INTEREST SERVED WITH LESS DISCRIMINATORY IMPACT, OTHER THAN PLACING THE AMERICAN FLAG IN A FLOWER POT, DEFENDANTS DID NOT; BUT PUT "EXCESSIVE" LIMITS ON ALL TENANTS, INCLUDING PLAINTIFFS, IN FLAG HANGING ON THEIR BALCONIES.

90. DEFENDANTS' ACTIONS HAVE, MOREOVER, CREATED A HOSTILE ENVIRONMENT IN WHICH THE CONDITIONS AND TERMS OF RENTAL OCCUPANCY WERE CHANGED IN A DISCRIMINATAORY MANNER.

91. DEFENDANTS' ACTIONS WERE BOTH WILLFUL AND MALICIOUS.

92. PLAINTIFFS REASONABLY FEAR THAT ABSENT JUDICIAL INTERVENTION BY WAY OF INJUNCTIVE RELIEF, THEY WILL BE IRREPARABLY HARMED BY FUTURE VIOLATION OF THEIR NATIONAL ORIGIN BELIEFS AND EXPRESSIONS IN THE MANNER PLEADED ABOVE, AS WELL AS BEING SUBJECT TO EVICTION ON ACCOUNT OF THEIR NATIONAL ORIGIN BELIEFS.

## COUNT II
### (VIOLATION OF DELAWARE FAIR HOUSING ACT, 6 DEL.C. § 4601, ET SEQ.)

93. PLAINTIFFS HEREBY INCORPORATE HEREIN BY REFERENCE OF COUNT I OF THIS COMPLAINT, § 1-82 AND § 85- 92 .

94. DEFENDANTS' ACTIONS VIOLATE THE DELAWARE FAIR HOUSING ACT, 6 DEL.C. § 4601, ET SEQ AND, IN PARTICULAR, § 4603 (B)(2), WHICH PROHIBITS DISCRIMINATION AGAINST ANY PERSON IN THE TERMS, CONDITIONS OR PRIVILEGES OF SALE OR RENTAL OF A DWELLING, OR IN THE PROVISION OF SERVICES OR FACILITIES IN CONNECTION THEREWITH, BECAUSE OF... NATIONAL ORIGIN.

95. DEFENDANTS' ACTIONS WERE BOTH WILLFUL AND MALICIOUS.

96. PLAINTIFFS REASONABLY FEAR THAT ABSENT JUDICIAL INTERVENTION BY WAY OF INJUNCTIVE RELIEF, THEY WILL BE IRREPARABLY HARMED BY FUTURE VIOLATION OF THEIR NATIONAL ORIGIN BELIEFS AND EXPRESSIONS AND IN THE MANNER PLEADED ABOVE.

18

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS SEEK JUDGMENT BY THIS COURT AGAINST DEFENDANTS, JOINTLY, AND SEVERALLY, FOR THE FOLLOWING RELIEF:

### AS TO COUNT I:

A.    AN AWARD OF COMPENSATORY AND PUNITIVE DAMAGES;

B.    REASONABLE ATTORNEY'S FEES PURSUANT TO 42 U.S.C. § 3613(C)(2);

C.    AN EFFECTIVE PERMANENT INJUNCTION AGAINST FUTURE DISCRIMINATORY ACTS BY DEFENDANTS;

D.    SUCH OTHER RELIEF AS THIS COURT MAY DEEM JUST AND PROPER.

### AS TO COUNT II:

A.    AN AWARED OF COMPENSATORY AND PUNITIVE DAMAGES;

B.    REASONABLE ATTORNEY'S FEES PURSUANT TO 6 DEL.C. § 4613(B)(3);

C.    AN EFFECTIVE PERMANENT INJUNCTION AGAINST FUTURE DISCRIMINATORY ACTS BY DEFENDANTS;

D.    SUCH OTHER RELIEF AS THIS COURT MAY DEEM JUST AND PROPER.

## JURY DEMAND

PLAINTIFFS HEREBY DEMAND TRIAL BY JURY OF ALL ISSUES SO TRIABLE.

### # #

19

15:51 MAR 27, 2007                          FAX NO: 8857056                      #0421  PAGE: 26/29
03/27/07  11:03 FAX 1 302 658 8078        ZUTZ-PLI                                       Ø023

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE
AND CORRECT.

SIGNED THIS _14th_ DAY OF _March_ , 2007

SIGNATURE OF PLAINTIFF #1

SIGNATURE OF PLAINTIFF #2

PRO-SE LITIGATES
B'NAI B'RITH HOUSE
8000 SOCIETY DRIVE
APARTMENT #608
CLAYMONT, DELAWARE 19703-1749
TELE/FAX (302) 798-5116

20

**EXHIBIT "2"**

Service: **Get by LEXSEE®**
Citation: **153 Fed. Appx. 860**

153 Fed. Appx. 860, *; 2005 U.S. App. LEXIS 23793, **

EDWARD J. BARR, Appellant v. THE CAMELOT FOREST CONSERVATION ASSOCIATION, INC., A Pennsylvania Corporation; JERRY RIZZO, in his individual capacity and in his official capacity as President of the Camelot Forest Conservation Association, Inc.; GERALD MAZUR, in his individual capacity and in his official capacity as former President of the Camelot Forest Conservation Association, Inc.; CAROL GREELEY, in her individual capacity and in her official capacity as former Resident Manager for the Camelot Forest Conservation Association, Inc.; THE OFFICE OF THE DISTRICT ATTORNEY FOR THE COUNTY OF MONROE; MARK PAZUHANICH, in his official capacity as former District Attorney for the County of Monroe; LESLIE DUTCHCOT, in her individual capacity and in her official capacity as Assistant District Attorney; ROBERT J. SNELL, in his individual capacity and in his official capacity as a Stroud County Detective

NO. 05-2129

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

153 Fed. Appx. 860; 2005 U.S. App. LEXIS 23793

August 10, 2005, Submitted Under Third Circuit LAR 34.1(a)
November 3, 2005, Filed

**NOTICE:** **[**1]** RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** US Supreme Court certiorari denied by Barr v. Camelot Forest Conservation Ass'n, 2006 U.S. LEXIS 4545 (U.S., June 12, 2006)

**PRIOR HISTORY:** On Appeal From the United States District Court For the Middle District of Pennsylvania. (M.D. Pa. Civ. No. 04-cv-00911). District Judge: James M. Munley.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff real estate salesman filed a 42 U.S.C.S. § 1983 suit against defendants, an association and its members (association defendants) and a county detective, a district attorney's office, and two of its employees (county defendants), alleging that defendants had violated his U.S. Const. amends. I, XIV, rights. The salesman appealed after the United States District Court for the Middle District of Pennsylvania dismissed his complaint.

**OVERVIEW:** The salesmen alleged that association defendants violated his constitutional rights by enforcing restrictions on the posting of signs in a real estate development and that county defendants violated his constitutional rights by refusing to prosecute his private criminal complaint against association defendants. The district court held that the Rooker-Feldman doctrine precluded all of the salesman's claims, except for his claims under 18 U.S.C.S. §§ 241, 242, and 245, and that he lacked standing to assert civil claims under those criminal statutes. Although the court disagreed with the district court's Rooker-Feldman holding, it found that the complaint was properly dismissed under Fed. R. Civ. P. 12(b)(6). The court agreed with the district court's finding as to the saleman's

criminal statute claims. Association defendants could not be held liable in the <u>42 U.S.C.S. § 1983</u> suit because they were not state actors. The salesman had failed to allege sufficient facts showing that the detective or the district attorney's office had violated his constitutional rights. Prosecutorial immunity applied to the employees with regard to their decision not to prosecute association defendants.

**OUTCOME:** The court affirmed the district court's judgment dismissing the salesman's complaint.

**CORE TERMS:** deprivation, constitutionally protected right, federal criminal, state action, prosecutorial immunity, constitutional claim, motions to dismiss, failed to state, permission, prosecute

### LexisNexis(R) Headnotes ◆ Hide Headnotes

<u>Civil Procedure</u> > <u>Judgments</u> > <u>Preclusion & Effect of Judgments</u> > <u>Full Faith & Credit</u> > <u>General Overview</u>
**HN1** The Rooker-Feldman doctrine does not apply to federal actions that simply raise claims previously litigated in state court unless the federal action invites the federal court to overturn the state court judgment. <u>More Like This Headnote</u>

<u>Civil Procedure</u> > <u>Pleading & Practice</u> > <u>Defenses, Demurrers, & Objections</u> > <u>Failures to State Claims</u>
<u>Civil Procedure</u> > <u>Appeals</u> > <u>Standards of Review</u> > <u>De Novo Review</u>
**HN2** The United States Court of Appeals for the Third Circuit's review of a district court's order granting dismissal pursuant to <u>Fed. R. Civ. P. 12(b)(6)</u> is plenary. The Third Circuit accepts as true all factual allegations in the complaint and will affirm a dismissal under Rule 12(b)(6) only if it is certain that no relief can be granted under any set of facts which could be proved. <u>More Like This Headnote</u>

<u>Constitutional Law</u> > <u>Bill of Rights</u> > <u>Fundamental Freedoms</u> > <u>Freedom of Speech</u> > <u>General Overview</u>
**HN3** The First Amendment prohibits governmental, not private, infringement of free speech. <u>More Like This Headnote</u>

<u>Constitutional Law</u> > <u>Substantive Due Process</u> > <u>General Overview</u>
**HN4** The Fourteenth Amendment prohibits the state, not private individuals, from depriving any person of a constitutionally protected right. <u>More Like This Headnote</u> | *Shepardize:* Restrict By Headnote

<u>Constitutional Law</u> > <u>Bill of Rights</u> > <u>Fundamental Freedoms</u> > <u>Freedom of Speech</u> > <u>General Overview</u>
<u>Constitutional Law</u> > <u>Substantive Due Process</u> > <u>General Overview</u>
**HN5** As a threshold matter, in order to make out a constitutional claim under the First and Fourteenth Amendments, a plaintiff must allege state action. <u>More Like This Headnote</u>

<u>Civil Rights Law</u> > <u>Section 1983 Actions</u> > <u>Elements</u> > <u>General Overview</u>
**HN6** Under <u>42 U.S.C.S. § 1983</u>, a plaintiff must show that the alleged deprivation was committed by a person acting under color of state law, in addition to alleging a deprivation of a constitutionally protected right. <u>More Like This Headnote</u>

<u>Civil Procedure</u> > <u>Pleading & Practice</u> > <u>Defenses, Demurrers, & Objections</u> > <u>Failures to State Claims</u>
<u>Constitutional Law</u> > <u>Bill of Rights</u> > <u>Fundamental Freedoms</u> > <u>Freedom of Speech</u> > <u>General Overview</u>
<u>Constitutional Law</u> > <u>Substantive Due Process</u> > <u>General Overview</u>
<u>Civil Rights Law</u> > <u>Section 1983 Actions</u> > <u>Elements</u> > <u>Color of State Law</u> > <u>General Overview</u>
**HN7** Absent any state action, a district court properly dismisses a plaintiff's U.S. Const. amends. I, XIV, claims and <u>42 U.S.C.S. § 1983</u> claims for failure to state a claim

upon which relief may be granted.  More Like This Headnote | *Shepardize*: Restrict By Headnote

Civil Rights Law > Immunity From Liability > Court Personnel & Judges 🔄
Governments > Local Governments > Employees & Officials 🔄
Torts > Public Entity Liability > Immunity > General Overview 🔄

**HN8** Prosecutorial immunity protects district attorneys from interference with their ability to exercise independent judgment when deciding which suits to bring and in conducting them in court.  More Like This Headnote

Civil Rights Law > Immunity From Liability > Local Officials > Customs & Policies 🔄
Governments > Local Governments > Claims By & Against 🔄

**HN9** A 42 U.S.C.S. § 1983 suit against a county district attorney's office fails where the complaint is completely devoid of any allegation that an official policy, custom, or practice caused the alleged deprivation of the plaintiff's constitutional rights.  More Like This Headnote

**COUNSEL:** EDWARD J. BARR, Appellant, Pro se, Pocono Lake, PA.

For THE CAMELOT FOREST CONSERVATION ASSOCIATION, INC., A Pennsylvania Corporation, JERRY RIZZO, in his individual capacity and in his official capacity as President of the Camelot Forest Conservation Association, Inc., GERALD MAZUR, in his individual capacity and in his official capacity as former President of the Camelot Forest Conservation Association, Inc., CAROL GREELEY, in her individual capacity and in her official capacity as former Resident Manager for the Camelot Forest Conservation Association, Inc., Appellees: Janet M. Catina, Stroudsburg, PA.

For DA MONROE, MARK PAZUHANICH, in his official capacity as former District Attorney for the County of Monroe, LESLIE DUTCHCOT, in her individual capacity and in her official capacity as Assistant District Attorney, ROBERT J. SNELL, in his individual **[**2]** capacity and in his official capacity as a Stroud County Detective, Appellees: Gerard J. Geiger, Newman, Williams, Mishkin, Corveleyn, Wolfe & Fareri, Stroudsburg, PA.

**JUDGES:** BEFORE: ROTH, McKEE and ALDISERT, CIRCUIT JUDGES.

**OPINION:**

**[*861]** PER CURIAM

Edward J. Barr appeals the order of the United States District Court for the Middle District of Pennsylvania granting the defendants' motions to dismiss his civil rights complaint pursuant to Federal Rule of Civil Procedure 12(b).

The underlying facts are well-known to the parties and are fully set forth in the District Court's Memorandum Opinion. We note only that Barr filed a complaint in the District Court in April 2004, which was amended in June 2004. Barr claimed that the named members of the Camelot Forest Preservation Association (the "Camelot defendants") arbitrarily invoked an old deed restriction common to all properties in the Camelot Forest development that prohibited the posting of "for sale" and/or "for rent" signs on properties without written permission of the Association. Barr continued to place for sale signs on Camelot Forest properties despite written notice from the Camelot defendants **[**3]** revoking their permission for him to do so. He contends that the Camelot Defendants stole and destroyed his for sale signs on at least eighty-eight separate occasions since 1998. Barr complained to the Pocono Mountain Regional Police Department about the alleged criminal activity. However, the police did not arrest or charge anyone. Barr then sought to lodge a private

criminal complaint against the Camelot defendants that County Detective Snell and the Monroe County District Attorneys (collectively the "County defendants") refused to prosecute. Barr alleged that the Camelot defendants' actions resulted in lost sales and business opportunities. He claimed that his First and Fourteenth Amendment rights were violated; he sought declaratory and injunctive relief under 18 U.S.C. §§ 241, [*862] 242 and 245 and 42 U.S.C. § 1983.

The defendants filed separate Rule 12(b) motions to dismiss. Both sets of defendants claimed that Barr's action was barred by the Rooker-Feldman Doctrine and by the Younger abstention, and that Barr failed to state a constitutional claim. The County defendants also claimed prosecutorial immunity. The District Court granted [**4] the dismissal motions, holding that the Rooker-Feldman Doctrine precluded all of Barr's claims except the alleged violations of federal criminal statutes, 18 U.S.C. §§ 241, 242 and 245. n1 The District Court dismissed the federal criminal statute claims because §§ 241, 242, and 245 are criminal offenses for which there is no civil remedy, and therefore, Barr lacked standing to bring them. Barr filed a timely appeal.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 We disagree that Rooker-Feldman precludes this action. HN1 The doctrine does not apply to federal actions that simply raise claims previously litigated in state court unless the federal action invites the federal court to overturn the state court judgment. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 161 L. Ed. 2d 454, 125 S. Ct. 1517 (2005). Although Barr's initial complaint appears to have presented such an invitation to the District Court, the amended complaint does not. Because it was not raised below, we decline to decide whether res judicata would have precluded Barr's federal claims.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - [**5]

We have jurisdiction pursuant to 28 U.S.C. § 1291, and HN2 our review of the District Court's order granting dismissal pursuant to Rule 12(b)(6) is plenary. See Weston v. Pennsylvania, 251 F.3d 420, 425 (3d Cir. 2001). We accept as true all factual allegations in the complaint and will affirm a dismissal under Rule 12(b)(6) only if it is certain that no relief can be granted under any set of facts which could be proved. Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris Inc., et al., 171 F.3d 912, 919 (3rd Cir. 1999).

After a careful and independent review of the record, we will affirm judgment on the federal criminal statute claims as to all of the defendants for the reasons stated by the District Court in its memorandum opinion. As for the remaining claims, we will affirm dismissal in the defendants' favor on alternate grounds as further discussed below. See Univ. of Md. v. Peat Marwick Main & Co., 923 F.2d 265, 275 (3d Cir. 1991).

HN3 The First Amendment prohibits governmental, not private, infringement of free speech. Hudgens v. NLRB, 424 U.S. 507, 513, 96 S. Ct. 1029, 47 L. Ed. 2d 196 (1976). Similarly, [**6] HN4 the Fourteenth Amendment prohibits the state, not private individuals, from depriving any person of a constitutionally protected right. Shelley v. Kraemer, 334 U.S. 1, 13, 68 S. Ct. 836, 92 L. Ed. 1161 (1948). Thus, HN5 as a threshhold matter, in order to make out a constitutional claim under the First and Fourteenth Amendments, Barr must allege state action. Likewise, HN6 under § 1983, Barr must show that the alleged deprivation was committed by a person acting under color of state law, in addition to alleging a deprivation of a constitutionally protected right. West v. Atkins, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995). Assuming all of Barr's allegations to be true, as we must, we conclude that there is no

set of facts from which we can infer state action on the part of the Camelot defendants. Here, acting on their own, without any state involvement, the Camelot defendants revoked their permission allowing Barr to place for sale signs on development properties and engaged in private enforcement of the regulation. **HN7** Absent any state action, the District Court properly dismissed the constitutional claims **[**7]** and § 1983 claims against the Camelot defendants for failure to state a claim upon which relief may be granted.

As for the County defendants, Barr asserts that the former and current District Attorneys for Monroe County wrongly refused to prosecute his private criminal complaint against the Camelot defendants. Assuming that Barr has alleged the violation of a constitutionally protected right, **HN8** prosecutorial immunity protects the District Attorneys from interference with their ability to exercise independent judgment "when deciding which suits to bring and in conducting them in court." Imbler **[*863]** v. Pachtman, 424 U.S. 409, 424, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). As for Detective Snell, Barr failed to state a claim of a deprivation of a constitutional right against him for assisting the District Attorney in handling Barr's private complaint. Finally, Barr's **HN9** suit against the Monroe County Office of District Attorney fails because the amended complaint is completely devoid of any allegation that an official policy, custom, or practice caused the alleged deprivation. See Monell v. Dep't of Social Services, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

For the foregoing **[**8]** reasons, we will affirm the District Court's judgment dismissing all of Barr's claims as to all defendants.

Service: **Get by LEXSEE®**
Citation: **153 Fed. Appx. 860**
View: Full
Date/Time: Tuesday, May 15, 2007 - 7:52 PM EDT

* Signal Legend:
 ● - Warning: Negative treatment is indicated
 Q - Questioned: Validity questioned by citing refs
 ⚠ - Caution: Possible negative treatment
 ◆ - Positive treatment is indicated
 A - Citing Refs. With Analysis Available
 ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 **LexisNexis®**    About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ISIDORE CORWIN AND BONNIE CORWIN, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No.: 1:07-cv-00152-*** |
| v. | ) ) | |
| B'NAI B'RITH SENIOR CITIZEN HOUSING, INC., SOUTHEASTERN PROPERTY MANAGEMENT, INC., AND LYNNE ROTAN, an agent, servant or employee of B'Nai B'Rith Senior Citizen Housing, Inc., | ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

**CERTIFICATE OF SERVICE**

I, Daniel A. Griffith, Esquire hereby certify that on the date indicated below a true and correct copy of Defendants', B'Nai B'Rith Senior Citizen Housing, Inc., Southeastern Property Management, Inc., and Lynne Rotan, Reply Brief in Support of Their Motion to Dismiss Plaintiffs' Complaint were forwarded to the below named addressee via electronic filing and U.S. Mail, postage pre-paid:

Isidore Corwin
Bonnie Corwin
B'Nai B'Rith House
8000 Society Drive, Apartment #608
Claymont, DE 19703-1749

                              **MARSHALL, DENNEHEY, WARNER,**
                                    **COLEMAN & GOGGIN**

                              */s/ Daniel A. Griffith, Esquire DE ID 4209*
                              DANIEL A. GRIFFITH, ESQUIRE
                              Delaware Bar I.D. No. 4209
                              1220 N. Market Street
                              P.O. Box 8888
                              Wilmington, DE 19899-8888
                              (302) 552-4300
                              *Attorney for Defendants*

Dated: May 16, 2007