**DATED: MAY 19, 2007**

ISIDORE AND BONNIE CORWIN
B'NAI B'RITH HOUSE
8000 SOCIETY DRIVE
APT. 608
CLAYMONT, DE 19703

PETER T. DALLEO, CLERK
U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE
844 NORTH KING STREET
LOCKBOX 18
WILMINGTON, DE 19801-3570

### RE: **CORWIN V. B'NAI B'RITH ET AL, CIVIL ACTION NO. 07-152-\*\*\***

DEAR CLERK OF THE COURT,

PLEASE FIND ENCLOSED, FOR FILING PURPOSES, **PLAINTIFFS'
ANSWERING BRIEF IN OPPOSITION TO: DEFENDANTS' REPLY BRIEF IN
SUPPORT OF THEIR MOTION TO DISMISS** WITH PLAINTIFFS' ATTACHED
EXHIBITS AND ACCOMPANYING CERTIFICATE OF SERVICE.

THANK YOU FOR YOUR ASSISTANCE.

SINCERELY,
ISIDORE AND BONNIE CORWIN, PRO SE
TELE/FAX 302-798-5116



07cv152 \*\*\*

FILED

MAY 22 2007

RGscamed

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ISIDORE CORWIN AND BONNIE CORWIN (INFORMA PAUPERIS STATUS) | : | CIVIL ACTION |
| | : | |
| PLAINTIFFS, | : | |
| | : | |
| | : | NO. 07-CV-152-*** |
| | : | JURY TRIAL DEMANDED |
| V. | : | |
| | : | |
| B'NAI B'RITH SENIOR CITIZEN HOUSING, INC., | : | |
| ET AL | : | |
| DEFENDANTS. | : | |

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO: DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

PLAINTIFFS SIMPLIFY THE BACKGROUND AS FOLLOWS:  PLAINTIFFS ISIDORE AND BONNIE CORWIN, A SENIOR-CITIZEN COUPLE, RENT AN APARTMENT AT THE B'NAI B'RITH HOUSE IN CLAYMONT, DELAWARE.

THE B'NAI B'RITH SENIOR CITIZEN HOUSING, INC. ALLEGEDLY PREVENTED PLAINTIFFS FROM HANGING THEIR 3 X 5 FOOT *AMERICAN FLAG* ON THEIR BALCONY RAIL AT THE B'NAI B'RITH HOUSE FOR VETERANS DAY 2006 WHILE THE CORPORATION PERMITTED PATIO UMBRELLAS TO HANG ON OTHER TENANTS' BALCONY RAILS AND PERMITTED *AMERICAN FLAGS (*SMALLER THAN THE PLAINTIFFS' FLAG) TO BE DISPLAYED ON BALCONIES THAT SAME DAY.

DEFENDANTS  REQUIRED PLAINTIFFS TO REMOVE THEIR 3' X 5' HANGING *AMERICAN FLAG* FROM THEIR BALCONY ON SEPTEMBER 15, 2006 (AS WELL AS REQUIRING ALL TENANTS TO REMOVE THEIR BALCONY FLAGS).  THEN DEFENDANTS BEGAN SENDING OUT NOTICES DOOR TO DOOR (208 DOORS) TO TENANTS ON SEPTEMBER 18, 2006, PERMITTING TENANTS TO FLY THEIR FLAGS

1

ON A SUGGESTED STICK AND INTO A FLOWER POT ON THEIR BALCONIES, AND WHERE DEFENDANTS MADE NO ACCOMMODATION FOR PLAINTIFFS' AND OTHER TENANTS' LARGER *AMERICAN FLAGS* (WITH A LARGER NATIONAL-ORIGIN MESSAGE) ON TENANTS' BALCONIES.

DEFENDANTS' FLAG POLICY ALLEGEDLY RESTRICTED PLAINTIFFS' FREEDOM OF EXPRESSION ON VETERANS DAY 2006 IN THE DISPLAY OF THEIR LARGER *AMERICAN FLAG* ON THEIR BALCONY THAT DAY.

PLAINTIFFS BROUGHT SUIT IN FEDERAL COURT AGAINST CORPORATION B'NAI B'RITH SENIOR CITIZEN HOUSING, INC., EMPLOYEE LYNNE ROTAN, AND AGENCY, SPM, INC. (SEE WALKER V. CRIGLER, 976 F.2D 900 (CA4 1992) (OWNER OF A RENTAL PROPERTY LIABLE FOR THE DISCRIMINATORY ACTS OF AGENT, THE PROPERTY'S MANAGER). PLAINTIFFS LATER MOTIONED TO THE COURT TO ENJOIN WILMINGTON LODGE 470, B'NAI B'RITH, INC., A SECOND CORPORATION AND OWNER OF THE B'NAI B'RITH APARTMENT HOUSE, AS A FOURTH DEFENDANT. (IN THE ABSENCE OF SPECIAL CIRCUMSTANCES, THE CORPORATION...IS THE PRINCIPAL OR EMPLOYER, AND THUS SUBJECT TO VICARIOUS LIABILITY FOR ACTS COMMITTED BY THE CORPORATION'S EMPLOYEES OR AGENTS. (SEE DAVID MEYER V. EMMA MARY ELLEN HOLLEY ET AL, 537 U.S. 280; 123 S. CT. 824 AT EXHIBIT A)).

PLAINTIFFS BROUGHT SUIT IN FEDERAL COURT PURSUANT TO THE FAIR HOUSING ACT SEEKING DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF. (PLAINTIFFS LATER MOTIONED TO THE COURT TO AMEND THEIR COMPLAINT TO INCLUDE VIOLATIONS AGAINST THE UNITED STATES CONSTITUTION).

THE UNITED STATES SUPREME COURT HAS NOTED THAT AN ACTION BROUGHT FOR COMPENSATION BY A VICTIM OF HOUSING DISCRIMINATION IS, IN EFFECT, A TORT ACTION. CURTIS V. LOETHER, 415 U.S. 180, 195-196, 39 L. ED. 2D 260, 94 S. CT. 1005 (1974).

IN THE CIVIL ACTION, PLAINTIFFS CLAIM AMONG OTHER THINGS, THAT THE DEFENDANTS WERE RESPONSIBLE FOR A FAIR HOUSING LAW VIOLATION. (THE FAIR HOUSING LAW FORBIDS NATIONAL-ORIGIN DISCRIMINATION IN RESPECT TO THE RENTAL OF A DWELLING. (82 STAT. 81, 42 U.S.C. SECTIONS 3604 (B), 3605(A)).

2

MOREOVER, THE FAIR HOUSING ACT FORBIDS NATIONAL-ORIGIN
DISCRIMINATION IN THE RENTAL OF A DWELLING AND HOLDS TO IMPOSE
LIABILITY WITHOUT FAULT ON EMPLOYERS UNDER TRADITIONAL AGENCY
PRINCIPLES, AND THUS TO NORMALLY IMPOSE VICARIOUS LIABILITY ON
CORPORATIONS. (SEE VALIDITY, CONSTRUCTION, AND APPLICATION OF 804 ( C )
OF CIVIL RIGHTS ACT OF 1968 (FAIR HOUSING ACT) (42 USCS 3604 ( C ), 22 ALR RED
359), (42 U.S.C. SECTION 3608)).

DEFENDANTS MOTIONED TO DISMISS, ASSERTING DEFENDANTS' FLAG
POLICY AT THE B'NAI B'RITH HOUSE WARRANTS THE FLAG POLICY "NEUTRAL"
WHERE THE POLICY ALLEGEDLY DOES NOT RESTRICT JUST THE PLAINTIFFS'
FLYING OF THEIR *AMERICAN FLAG*, BUT AFFECTS ALL TENANTS EQUALLY IN THE
FLYING OF THEIR FLAGS.

DEFENDANTS ARGUED IN THEIR MOTION TO DISMISS THAT THE FLAG
POLICY'S REGULATORY SCHEME DOES NOT PREVENT ANY PARTICULAR
MESSAGE FROM EVER BEING EXPRESSED AND THEREFORE THE FLAG POLICY IS
CONSIDERED "NEUTRAL" (FOR CONSTITUTIONAL PURPOSES).

SUPREME COURT HAS STATED THAT ANY PERMIT SCHEME CONTROLLING
THE TIME (E.G. VETERANS DAY), PLACE (E.G. TENANT BALCONY) AND MANNER
OF SPEECH (E.G. IN A FLOWER POT) MUST *NOT* BE BASED ON THE CONTENT OF
THE MESSAGE, MUST BE NARROWLY TAILORED TO SERVE A SIGNIFICANT
GOVERNMENTAL INTEREST, AND MUST LEAVE OPEN AMPLE ALTERNATIVES FOR
COMMUNICATION; THAT IS, IT MUST PASS INTERMEDIATE SCRUTINY. FORSYTH
COUNTY, 505 U.S. AT 130.

IN ADDITION, THE SUPREME COURT HAS IDENTIFIED AN EVIL THAT WILL
NOT BE TOLERATED IN SUCH SCHEMES...A SCHEME THAT PLACES "UNBRIDLED
DISCRETION IN THE HANDS OF A GOVERNMENT AGENCY THEREBY
CONSTITUTING PRIOR RESTRAINT AND MAY RESULT IN CENSORSHIP". FW/PBS,
493 U.S. AT 225-26. (THE B'NAI B'RITH HOUSE FOR SENIORS AND THE
HANDICAPPED IN CLAYMONT, DELAWARE, IS A HUD-SUBSIDIZED/SECTION EIGHT
APARTMENT BUILDING).

PLAINTIFFS COUNTERED DEFENDANTS' MOTION TO DISMISS IN
"PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO

3

DISMISS". FOR ONE THING, PLAINTIFFS ARGUE THAT DEFENDANTS' FLAG POLICY IS CONTENT-BASED, NOT NEUTRAL, AS DEFENDANTS CLAIM IN THEIR MOTION TO DISMISS, WITH A DISCRIMINATORY EFFECT ON PLAINTIFFS AND OTHERS INSOFAR AS THE POLICY RESTRICTS THEIR SPEECH WHERE *AMERICAN FLAGS* (WITH A LARGER MESSAGE) ARE NOT ACCOMMODATED IN DEFENDANTS' FLAG POLICY AND ALLEGEDLY FOR NATIONAL ORIGIN REASONS.

PLAINTIFFS, TOO, IN THEIR ANSWERING BRIEF, ASSERT THAT DEFENDANTS' FLAG POLICY IS A RESTRAINT ON NON-COMMERCIAL SPEECH WHERE THE DEFENDANT'S FLAG POLICY SELECTIVELY PERMITS SMALLER *AMERICAN FLAGS* TO BE ON DISPLAY ON TENANTS' BALCONIES AND THE LARGER UMBRELLAS ON DISPLAY AT BALCONY RAILS (AT EXHIBIT B); HOLIDAY WREATHES AND GARLAND ON DISPLAY, DESPITE THEIR SIZE, (AT EXHIBIT C); YET, LARGER *AMERICAN FLAGS* ARE ALLEGEDLY EXEMPT.

AS A RESULT, PLAINTIFFS HAVE BEEN DENIED THE OPPORTUNITY TO EXPRESS THEIR LARGER MESSAGE IN THE HANGING OF THEIR *AMERICAN FLAG* ON VETERANS DAY 2006 AND REFRAIN FROM ENGAGING IN PROTECTED ACTIVITY (SEE LUJAN V. DEFENDERS OF WILDLIFE, 504 U.S. 555, 560-61).

POST PLAINTIFFS' ANSWERING BRIEF, PLAINTIFFS MOVED TO AMEND THE COMPLAINT, REQUESTING **COUNT III** TO BE ADDED IN THE COMPLAINT:

"THE DEFENDANTS' FLAG POLICY FOR TENANTS IS *VOID FOR VAGUENESS*, DEPRIVING PLAINTIFFS OF DUE PROCESS OF LAW IN VIOLATION OF THE FIRST, FIFTH, AND FOURTEENTH AMENDMENT; THE FLAG POLICY IS *OVERBROAD* IN VIOLATION OF THE FIRST AMENDMENT; THE FLAG POLICY *UNREASONABLY DISCRIMINATES BETWEEN SIMILARLY SITUATED TENANTS BASED SOLELY ON THE SIZE-CONTENT OF THE MESSAGES EXPRESSED*, IN VIOLATION OF THE FOURTEENTH AMENDMENT'S EQUAL PROTECTION CLAUSE; THE FLAG POLICY *VIOLATES PLAINTIFFS' FREEDOM OF SPEECH AND EXPRESSION* IN CONTRAVENTION OF ARTICLE I, SECTIONS 11 AND 19; AND THE FLAG POLICY IS *DEFENDANTS' ATTEMPT TO RESTRICT FLAGS TO THE SIZE OF A FLOWER POT AND THE CONTINUING USE OF PLAINTIFFS' FLAG 3' X 5' AMERICAN FLAG WHICH EXISTED PRIOR TO THE PASSAGE OF THE SEPTEMBER 15,2006 AND SEPTEMBER 18, 2006 FLAG POLICY,* VIOLATING THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE AND *WITHOUT DUE PROCESS TO ACCOMMODATE LARGER FLAGS. "*

4

PLAINTIFFS ASSERT THEY ARE PERMITTED TO CHALLENGE AN ORDINANCE ON ITS FACE WHERE THE ORDINANCE "PROHIBITS OTHERWISE PERMITTED SPEECH SOLELY ON THE BASIS OF THE SUBJECTS THE SPEECH ADDRESSES (R.A.V., 505 U.S. AT 381). (A REGULATION OF SPEECH IS CONTENT-BASED WHEN THE CONTENT CONVEYED DETERMINES WHETHER THE SPEECH IS *SUBJECT* TO RESTRICTION. (SEE CITY OF CINCINNATI V. DISCOVERY NETWORK, INC., 507 U.S. 410, 429, 1113 S. CT. 1505 (1993); TURNER BROAD. SYS. V. FCC, 512 U.S. 622, 643, 114 S. CT. 2445 (1994), "AS A GENERAL RULE, LAWS THAT BY THEIR TERMS DISTINGUISH FAVORED SPEECH FROM DISFAVORED SPEECH ON THE BASIS OF THE IDEAS OR VIEWS EXPRESSED *ARE* CONTENT BASED.").

THE DEFENDANTS' FLAG POLICY ALLEGEDLY EXEMPTS "OVERSIZE" FLAGS AT THE SUBJECT FACILITY. PLAINTIFFS ALLEGE AN EXEMPTION FROM AN OTHERWISE *PERMISSIBLE* REGULATION OF SPEECH MAY REPRESENT AN ATTEMPT TO GIVE ONE SIDE AN ADVANTAGE IN EXPRESSING ITS VIEWS AND MAY DIMINISH THE CREDIBILITY OF THE ...RATIONALE FOR RESTRICTING SPEECH IN THE FIRST PLACE ( CITY OF LADUE, 512 U.S. 43, 51-53, 114 S. CT. 2038).

DEFENDANTS' FLAG POLICY ALLEGEDLY WORKS TO INHIBIT, SUPPRESS AND REFUSE (E.G. IN DEFENDANTS' WRITTEN RESPONSE TO PLAINTIFFS, DENYING PLAINTIFFS' REQUEST TO HANG THEIR FLAG ON THEIR BALCONY RAIL IN TIME FOR VETERANS DAY (AS ARE THE OTHERS' UMBRELLAS)), AND DENY COMMUNICATION IN THE FLYING OF PLAINTIFFS 3' X 5' *AMERICAN FLAG.*

PLAINTIFFS CHALLENGE THE DEFENDANTS' FLAG POLICY ON FAIR HOUSING HUD REGULATIONS WHERE IT PROVIDES THAT ... COMPLAINTS MAY BE FILED "AGAINST ANY PERSON WHO DIRECTS OR CONTROLS, OR HAS THE RIGHT TO CONTROL, THE CONDUCT OF ANOTHER PERSON WITH RESPECT TO ANY ASPECT OF THE....RENTAL OF DWELLINGS...IF THAT OTHER PERSON, ACTING WITHIN THE SCOPE OF...HIS OR HER AUTHORITY AS AGENT OR EMPLOYEE OF THE DIRECTING OR CONTROLLING PERSON...HAS ENGAGED IN A DISCRIMINATORY HOUSING PRACTICE." 24 CFR SECTION 103.20 (B) (1999); (SEE GLADSTONE, REALTORS V. VILLAGE OF BELLWOOD, 441 US. 91; 99 S. CT. 1601 (1979) (TREATING ADMINISTRATIVE ACTIONS UNDER 42 U.S.C. SECTION 3610 AND CIVIL ACTIONS UNDER SECTION 3613)), AND ON EQUAL PROTECTION GROUNDS,

5

WHERE THE FLAG POLICY MUST PASS RATIONAL-BASIS REVIEW (CLARK V. JETER, 486 U.S. 456, 461, 108 S. CT. 1910 (1988).

ADDITIONALLY, DEFENDANTS' FLAG POLICY AFFECTS TENANTS' RIGHTS PROTECTED UNDER THE FIRST AMENDMENT AND IT IMPLICATES A CONSTITUTIONALLY PROTECTED FUNDAMENTAL RIGHT, THE RIGHT TO FREEDOM OF SPEECH. LAC VIEUX DESERT BAND OF LAKE SUPERIOR CHIPPEWA INDIANS, 172 F. 3D AT 410.

RESPECTFULLY SUBMITTED,

ISIDORE CORWIN, PLAINTIFF PRO SE
B'NAI B'RITH HOUSE
APT 608
CLAYMONT, DE 19703-1749
PHONE/FAX 302-798-5116

BONNIE CORWIN, PLAINTIFF PRO SE
B'NAI B'RITH HOUSE
APT 608
CLAYMONT, DE 19703-1749
PHONE/FAX 302-798-5116

DATED  5-19-07

EXHIBITS: A, B, & C

6

# CORWIN V. B'NAI B'RITH SENIOR ET AL

## CIVIL ACTION NO. 07-152-***

EXHIBIT A

**Search Terms: 537 U.S. 280**

**FOCUS™**
Search Within Results
Edit Search

Print    Email

Document List    Expanded List    KWIC    **Full**
Document 1 of 1.

*Shepard's®*

DAVID MEYER, INDIVIDUALLY AND IN HIS CAPACITY AS PRESIDENT AND DESIGNATED OFFICER/BROKER OF TRIAD, INC., ETC., PETITIONER V. EMMA MARY ELLEN HOLLEY, ET VIR, ET AL.

No. 01-1120

SUPREME COURT OF THE UNITED STATES

**537 U.S. 280;** 123 S. Ct. 824; 154 L. Ed. 2d 753; 2003 U.S. LEXIS 902; 71 U.S.L.W. 4081; 2003 Cal. Daily Op. Service 648; 2003 Daily Journal DAR 789; 16 Fla. L. Weekly Fed. S 65

December 3, 2002, Argued
January 22, 2003, Decided

**SUBSEQUENT HISTORY:** As Corrected January 27, 2003

**PRIOR HISTORY:** ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT.

Holley v. Crank, 258 F.3d 1127, 2001 U.S. App. LEXIS 17031 (9th Cir. Cal. 2001)

**DISPOSITION:** Vacated and remanded.

**DECISION:** Fair Housing Act (42 USCS 3601 et seq.), forbidding racial discrimination in sale or rental of dwelling, held to impose liability without fault on employer under traditional agency principles, and thus to normally impose vicarious liability on corporation but not its officers or owners.

**SUMMARY:** The Fair Housing Act (42 USCS 3601 et seq.), in 42 USCS 3604(b) and 3605(a), forbids racial discrimination with respect to the sale of a dwelling. An interracial couple, alleging that a salesman for a real estate corporation in California had prevented the couple from buying a house for racially discriminatory reasons, brought in a Federal District Court (1) a suit against the salesman and the corporation, asserting, among other claims, a violation of the Fair Housing Act, and (2) a suit against the individual purported to be the corporation's president, sole shareholder, and licensed officer/broker, asserting that, in one or more of these capacities, the president was vicariously liable under the Act for the salesman's unlawful actions.

The District Court (1) consolidated the suits; (2) dismissed all claims other than the Fair Housing Act claims on statute-of-limitations grounds; (3) dismissed the claims against the president on the basis that the Act did not impose personal vicarious liability on a corporate officer or officer/broker; and (4) certified the District Court's judgment as final to permit the couple to appeal the District Court's vicarious liability determinations. The United States Court of Appeals for the Ninth Circuit, reversing those vicarious liability determinations, concluded that the Act imposed principles of strict liability beyond those traditionally associated with agent/principal or employee/employer relationships (258 F3d 1127).

On certiorari, the United States Supreme Court vacated and remanded. In an opinion by Breyer, J., expressing the unanimous view of the court, it was held that, for the unlawful activity of a residential real estate corporation's employee or agent, the Fair Housing Act imposed liability without fault upon the employer in accordance with traditional agency principles--that is, the Act normally imposed vicarious liability upon the corporation but not upon its owners or officers--as, among other matters:

(1) It was well established that (a) the Act provided for vicarious liability, and (b) traditional vicarious liability rules ordinarily made principals or employers vicariously liable for acts of their agents or employees in the

scope of their authority or employment.

(2) In the absence of special circumstances, the corporation, not its owner or officer, was subject to vicarious liability for torts committed by the corporation's employees or agents.

(3) The Act said nothing about extending vicarious liability to corporate owners and officers.

(4) The Department of Housing and Urban Development had specified that ordinary vicarious liability rules applied in this area.

(5) The interracial couple conceded that the Court of Appeals' decision to apply nontraditional vicarious liability principles was incorrect.

## LAWYERS' EDITION HEADNOTES:

[***LEdHN1]
HOUSING URBAN DEVELOPMENT §8
MASTER SERVANT §151
-- Fair Housing Act -- racial discrimination -- liability for employees' acts
Headnote:[1A][1B][1C][1D][1E][1F][1G][1H]

The Fair Housing Act (42 USCS 3601 et seq.), forbidding, in 42 USCS 3604(b) and 3605(a), racial discrimination with respect to the sale of a dwelling, imposed, for the unlawful activity of a residential real estate corporation's employee or agent, liability without fault upon the employer in accordance with traditional agency principles--that is, the Act normally imposed vicarious liability upon the corporation but not upon its owners or officers--as:

(1) Although the Act said nothing about vicarious liability, it was well established that the Act provided for vicarious liability.

(2) It was well established that traditional vicarious liability rules ordinarily made principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment.
(3) In the absence of special circumstances, the corporation, not its owner or officer, was the principal or employer, and thus subject to vicarious liability for torts committed by the corporation's employees or agents.

(4) Congress had said nothing in the Act or in its legislative history about extending vicarious liability to make corporate owners and officers liable for the unlawful acts of a corporate employee simply on the basis that the owner or officer controlled, or had the right to control, the actions of that employee.

(5) With respect to other civil rights statutes, the United States Supreme Court had drawn the inference that Congress intended ordinary rules to apply where Congress had not expressed a contrary intent.
(6) With respect to other statutes concerning unlawful corporate acts, the Supreme Court had applied unusually strict rules only where Congress had specified that such was Congress' intent.

(7) The Department of Housing and Urban Development, the federal agency primarily charged with implementation and administration of the Act, had specified that ordinary vicarious liability rules applied in this area.

(8) The Supreme Court had found no convincing argument to support the application of nontraditional vicarious liability principles. The interracial couple who had brought the action alleging violation of the Act in the instant case conceded that a Federal Court of Appeals' decision to apply such principles in this case was incorrect.

(9) Characterization of the Act's objective as an overriding societal priority--a characterization with which the Supreme Court agreed--did not carry with it a legal rule that would hold every corporate supervisor personally liable without fault for the unlawful act of every corporate employee whom the supervisor had the right to supervise.

[***LEdHN2]
STATUTES §152
-- Congress' silence
Headnote:[2]

For purposes of determining whether the Fair Housing Act (42 USCS 3601 et seq.) imposed vicarious liability on a corporation's officers or owners for racial discrimination by an employee of the corporation in the sale or rental of a dwelling--where Congress said nothing in the Act or its legislative history about extending traditional vicarious liability in this manner--Congress' silence, while permitting an inference that Congress intended to apply ordinary background tort principles, could not show that Congress intended to apply an

unusual modification of those rules.

[***LEdHN3]
STATUTES §155
-- administrative interpretation
Headnote:[3]

The United States Supreme Court ordinarily defers to an administering agency's reasonable interpretation of a statute.

[***LEdHN4]
AGENCY §17
-- nondelegable duty
Headnote:[4]

A nondelegable duty is an affirmative obligation to insure the protection of the person to whom the duty runs.

[***LEdHN5]
STATUTES §145
-- construction -- liability for employee's wrongful acts
Headnote:[5]

With respect to whether to construe a federal statute, which prohibits certain acts, to make every corporate supervisor personally liable without fault for an unlawful act against a third party by any corporate employee whom the supervisor has the right to supervise, the question of which of two innocent people must suffer, and just when, is a complex matter that courts ordinarily should determine according to traditional principles of vicarious liability, unless Congress, better able than courts to weigh the relevant policy considerations, has instructed the courts differently.

[***LEdHN6]
HOUSING URBAN DEVELOPMENT §8
-- Fair Housing Act -- racial discrimination -- liability for employee's act
Headnote:[6]

In a case in which an interracial couple alleged that a real estate corporation's licensed officer/broker, who was the corporation's president and sole shareholder, was vicariously liable, under the Fair Housing Act (42 USCS 3601 et seq.), for the purported racial discrimination by one of the corporation's salespeople against the couple when they sought to buy a house, the United States Supreme Court, having determined that the Act normally imposed vicarious liability upon a corporation but not upon its owners or officers, rejected the couple's argument that, while traditional vicarious liability rules applied, those principles themselves warranted liability in the case at hand on the alleged bases that state law created what amounted, under ordinary common-law principles, to an employer/employee or principal/agent relationship between (1) a corporate officer designated as the broker under a real estate license issued to the corporation, and (2) a corporate employee/salesperson. Even though a Federal Court of Appeals had accepted this argument insofar as it rested solely upon the corporate broker/officer's right to control the employee/salesperson, the Supreme Court rejected the argument, given that the Supreme Court had determined that the right to control was insufficient by itself, under traditional agency principles, to establish a principal/agent or employer/employee relationship.

[***LEdHN7]
APPEAL §1104.5
-- issue not decided below or presented on certiorari
Headnote:[7]

On certiorari to review a Federal Court of Appeals' decision that a corporation's licensed officer/broker, who was the corporation's president and sole shareholder, was vicariously liable, under the Fair Housing Act (42 USCS 3601 et seq.), for the purported racial discrimination by one of the corporation's salespeople against an interracial couple when they sought to buy a house, the United States Supreme Court declined to consider (1) the issue whether certain aspects of the broker relationship in the state in question, when added to the right to control, would, under traditional legal principles and consistent with the general common law of agency establish the necessary relationship between the president and the salesperson, where the Court of Appeals had not considered this issue; or (2) the applicability of piercing the corporate veil to impute liability

to the president, where (a) the Court of Appeals had not decided this issue, and (b) the issue fell outside the scope of the question presented on certiorari.

**SYLLABUS:** The Fair Housing Act forbids racial discrimination in respect to the sale or rental of a dwelling. 42 U.S.C. §§ 3604(b), 3605(a). Respondent Holleys, an interracial couple, tried to buy a house listed for sale by Triad, a real estate corporation. A Triad salesman is alleged to have prevented the Holleys from buying the house for racially discriminatory reasons. After filing suit in federal court against the salesman and Triad, the Holleys filed a separate suit against petitioner Meyer, Triad's president, sole shareholder, and licensed "officer/broker," claiming that he was vicariously liable in one or more of these capacities for the salesman's unlawful actions. The District Court consolidated the lawsuits and dismissed the claims against Meyer because (1) it considered them vicarious liability assertions, and (2) it believed that the Fair Housing Act did not impose personal vicarious liability upon a corporate officer or a "designated officer/broker." In reversing, the Ninth Circuit in effect held that the Act imposes strict liability principles beyond those traditionally associated with agent/principal or employee/employer relationships.

*Held:* The Act imposes liability without fault upon the employer in accordance with traditional agency principles, *i.e.,* it normally imposes vicarious liability upon the corporation but not upon its officers or owners. Pp. 4-11.

(a) Although the Act says nothing about vicarious liability, it is nonetheless well established that it provides for such liability. The Court has assumed that, when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules. Traditional vicarious liability rules ordinarily make principals or employers vicariously liable for the acts of their agents or employees in the scope of their authority or employment. *E.g., Burlington Industries, Inc.* v. *Ellerth*, 524 U.S. 742, 756, 141 L. Ed. 2d 633, 118 S. Ct. 2257. Absent special circumstances, it is the corporation, not its owner or officer, who is the principal or employer subject to vicarious liability for the torts of its employees or agents. The Ninth Circuit's holding that the Act made corporate owners and officers liable for an employee's unlawful acts simply because they controlled (or had the right to control) that employee's actions is rejected. For one thing, Congress said nothing in the Act or in the legislative history about extending vicarious liability in this manner. And such silence, while permitting an inference that Congress intended to apply *ordinary* background tort principles, cannot show that it intended to apply an unusual modification of those rules. This Court has applied unusually strict rules only where Congress has specified that such was its intent. See, *e.g., United States* v. *Dotterweich*, 320 U.S. 277, 280-281, 88 L. Ed. 48, 64 S. Ct. 134. For another thing, the Department of Housing and Urban Development (HUD), the agency primarily charged with the Act's implementation and administration, has specified that ordinary vicarious liability rules apply in this area, and the Court ordinarily defers to an administering agency's reasonable statutory interpretation, *e.g., Chevron U.S.A. Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-845, 81 L. Ed. 2d 694, 104 S. Ct. 2778; *Skidmore* v. *Swift & Co.,* 323 U.S. 134, 140, 89 L. Ed. 124, 65 S. Ct. 161. Finally, no convincing argument supports the Ninth Circuit's decision to apply nontraditional vicarious liability principles. It erred in relying on language in a then-applicable HUD regulation, which, taken as a whole, says that ordinary, not unusual, liability rules apply. And the holdings in cases from other Circuits that the Ninth Circuit cited do not support the kind of nontraditional liability that it applied, nor does the language of those cases provide a convincing rationale for the Ninth Circuit's conclusions. Pp. 4-8.

(b) Nothing in the Act's language or legislative history supports the existence of a corporate owner's or officer's "nondelegable duty" not to discriminate. Such a duty imposed on a principal would "go further" than the vicarious liability principles discussed thus far to create liability although the principal has done everything that could reasonably be required of him, and irrespective of whether the agent was acting with or without authority. In the absence of legal support, the Court cannot conclude that Congress intended, through silence, to impose a special duty of protection upon individual officers or owners of corporations -- who are not principals (or contracting parties) in respect to the corporation's unlawfully acting employee. Neither does it help to characterize the Act's objective as an overriding societal priority. The complex question of which one of two innocent people must suffer, and when, should be answered in accordance with traditional principles of vicarious liability -- unless Congress has instructed the courts differently. Pp. 9-10.

(c) The Court does not address respondents' remaining contentions because they were not considered by the Court of Appeals. The Ninth Circuit remains free on remand to consider any such arguments that were properly raised. Pp. 10-11.

258 F.3d 1127, vacated and remanded.

**COUNSEL:** Douglas G. Benedon argued the cause for petitioner.

Robert G. Schwemm argued the cause for respondent.

Malcolm L. Stewart argued the cause for the United States, as amicus curiae, by special leave of the court.

**JUDGES:** BREYER, J., delivered the opinion for a unanimous Court.

**OPINION BY:** BREYER

**OPINION:** [**827] [***759] [*282]

*JUSTICE BREYER* delivered the opinion of the Court.

[***LEdHR1A] [1A]The Fair Housing Act forbids racial discrimination in respect to the sale or rental of a dwelling. 82 Stat. 81, 42 U.S.C. §§ 3604(b), 3605(a). The question before us is whether the Act imposes personal liability without fault upon an officer or owner of a residential real estate corporation for the unlawful activity of the *corporation's* employee or agent. We conclude that the Act imposes liability without fault upon the employer in accordance with traditional agency principles, *i.e.*, it normally imposes vicarious liability upon the corporation but not upon its officers or owners.

I

For purposes of this decision we simplify the background facts as follows: Respondents Emma Mary Ellen Holley and [*283] David Holley, an interracial couple, tried to buy a house in Twenty-Nine Palms, California. A real estate corporation, Triad, Inc., had listed the house for sale. Grove Crank, a Triad salesman, is alleged to have prevented the Holleys from obtaining the house -- and for racially discriminatory reasons.

The Holleys brought a lawsuit in federal court against Crank and Triad. They claimed, among other things, that both were responsible for a fair housing law violation. The Holleys later filed a separate suit against David Meyer, the petitioner here. Meyer, they said, was Triad's president, Triad's sole shareholder, and Triad's licensed "officer/broker," see Cal. Code Regs., Tit. 10, § 2740 (1996) (formerly Cal. Admin. Code, Tit. 10, § 2740) (requiring that a corporation, in order to engage in acts for which a real estate license is required, designate one of its officers to act as the licensed broker); Cal. Bus. & Prof. Code Ann. §§ 10158, 10159, 10211 (West 1987). They claimed that Meyer was vicariously liable in one or more of these capacities for Crank's unlawful actions.

[**828] The District Court consolidated the two lawsuits. It dismissed all claims other than the Fair Housing Act claim on statute of limitations grounds. It dismissed the claims against Meyer in his capacity as officer of Triad because (1) it considered those claims as assertions of *vicarious* liability, and (2) it believed that the Fair Housing Act did not impose personal vicarious liability upon a corporate *officer*. The District Court stated that "any liability against Meyer as an officer of Triad would only attach to Triad," the corporation. App. 31. The court added that the Holleys had "not urged theories that could justify reaching Meyer individually." *Ibid.* It later went on to dismiss for similar reasons claims of vicarious liability against Meyer in his capacity as the "designated officer/broker" in respect to Triad's real estate license. *Id.,* at 52-55.

[*284] The District Court certified its judgment as final to permit the Holleys to appeal its vicarious liability determinations. See Fed. Rule Civ. Proc. 54(b). The Ninth Circuit reversed those determinations. 258 F.3d 1127 [***760] (2001). The Court of Appeals recognized that "under general principles of tort law corporate shareholders and officers usually are not held vicariously liable for an employee's action," but, in its view, "the criteria for the Fair Housing Act" are "different." *Id.,* at 1129. That Act, it said, "specified" liability "for those who direct or control or have the right to direct or control the conduct of another" -- even if they were not at all involved in the discrimination itself and even in the absence of any traditional agent/principal or employee/employer relationship, *id.,* at 1129, 1131. Meyer, in his capacity as Triad's sole owner, had "the authority to control the acts" of a Triad salesperson. *Id.,* at 1133. Meyer, in his capacity as Triad's officer, "did direct or control, or had the right to direct or control, the conduct" of a Triad salesperson. *Ibid.* And even if Meyer neither participated in nor authorized the discrimination in question, that "control" or "authority to control" is "enough . . . to hold Meyer personally liable." *Ibid.* The Ninth Circuit added that, for similar reasons, Meyer, in his capacity as Triad's license-related officer/broker, was vicariously liable for Crank's discriminatory activity. *Id.,* at 1134-1135.

Meyer sought certiorari. We granted his petition, 535 U.S. 1077, 122 S. Ct. 1959, 152 L. Ed. 2d 1020 (2002),

to review the Ninth Circuit's holding that the Fair Housing Act imposes principles of strict liability beyond those traditionally associated with agent/principal or employee/employer relationships. We agreed to decide whether "the criteria under the Fair Housing Act . . . are different, so that owners and officers of corporations" are automatically and "absolutely liable for an employee's or agent's violation of the Act" -- even if they did not direct or authorize, and were otherwise not involved in, the unlawful discriminatory acts. Pet. for Cert. i.

[\*285] II

[\*\*\*LEdHR1B] [1B]The Fair Housing Act itself focuses on prohibited acts. In relevant part the Act forbids "any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate," for example, because of "race." 42 U.S.C. § 3605(a). It adds that "person" includes, for example, individuals, corporations, partnerships, associations, labor unions, and other organizations. § 3602 (d). It says nothing about vicarious liability.

Nonetheless, it is well established that the Act provides for vicarious liability. This Court has noted that an action brought for compensation by a victim of housing discrimination is, in effect, a tort action. See *Curtis* v. *Loether,* 415 U.S. 189, 195-196, 39 L. Ed. 2d 260, 94 S. Ct. 1005 (1974). And the Court has assumed that, when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules. [\*\*829] *Monterey* v. *Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709, 143 L. Ed. 2d 882, 119 S. Ct. 1624 (1999) (listing this Court's precedents that interpret Rev. Stat. § 1979, 42 U.S.C. § 1983, in which Congress created "a species of tort liability," "in light of the background of tort liability" (internal quotation marks omitted)). Cf. Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 108, 115 L. Ed. 2d 96, 111 S. Ct. 2166 (1991) ("Congress is understood to legislate against a background of common-law . . . principles"); *United States* v. *Texas,* 507 U.S. 529, 534, 123 L. Ed. 2d 245, 113 S. Ct. 1631 (1993) ("In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law").

It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment. *Burlington Industries, Inc.* v. *Ellerth,* 524 U.S. 742, 756, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998) ("An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment"); *New Orleans, M., & C. R. Co.* v. *Hanning,* 82 U.S. 649, 657, 21 L. Ed. 220, 15 Wall. 649, 657 (1873) [\*286] ("The principal is liable for the acts and negligence of the agent in the course of his employment, although he did not authorize or did not know of the acts complained of"); see *Rosenthal & Co.* v. *Commodity Futures Trading Comm'n,* 802 F.2d 963, 967 (CA7 1986) ("'respondeat superior' . . . is a doctrine about employers . . . and other principals"); Restatement (Second) of Agency § 219(1) (1957) (Restatement). And in the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents. 3A W. Fletcher, Cyclopedia of the Law of Private Corporations § 1137, pp. 300-301 (rev. ed. 1991-1994); 10 *id.,* § 4877 (rev. ed. 1997-2001). The Restatement § 1 specifies that the relevant principal/agency relationship demands not only control (or the right to direct or control) but also "the manifestation of consent by one person to another that the other shall act *on his behalf* . . ., and consent by the other so to act." (Emphasis added.) A corporate employee typically acts on behalf of the corporation, not its owner or officer.

The Ninth Circuit held that the Fair Housing Act imposed more extensive vicarious liability -- that the Act went well beyond traditional principles. The Court of Appeals held that the Act made corporate owners and officers liable for the unlawful acts of a corporate employee simply on the basis that the owner or officer controlled (or had the right to control) the actions of that employee. We do not agree with the Ninth Circuit that the Act extended traditional vicarious liability rules in this way.

[\*\*\*LEdHR1C] [1C] [\*\*\*LEdHR2] [2]For one thing, Congress said nothing in the statute or in the legislative history about extending vicarious liability in this manner. And Congress' silence, while permitting an inference that Congress intended to apply *ordinary* background tort principles, cannot show that it intended to apply an unusual modification of those rules.

[\*\*\*LEdHR1D] [1D] [\*287] Where Congress, in other civil rights statutes, has not expressed a contrary intent, the Court has drawn the inference that it intended ordinary rules to apply. See, *e.g., Burlington Industries, Inc., supra,* 524 U.S. at 754-755 (deciding an employer's vicarious liability under Title VII based on traditional agency principles); *Meritor Savings Bank, FSB* v. *Vinson,* 477 U.S. 57, 72, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986) ("Congress wanted courts to look to agency principles for guidance"). [\*\*\*762]

This Court has applied unusually strict rules only where Congress has specified that such was its intent. See, *e.g., United States* v. *Dotterweich,* 320 U.S. 277, 280-281, 88 L. Ed. 48, 64 S. Ct. 134 (1943) (Congress [**830] intended that a corporate officer or employee "standing in responsible relation" could be held liable in that capacity for a corporation's violations of the Federal Food, Drug, and Cosmetic Act of 1938, 52 Stat. 1040, 21 U.S.C. §§ 301-392); *United States* v. *Park,* 421 U.S. 658, 673, 44 L. Ed. 2d 489, 95 S. Ct. 1903 (1975) (discussing, with respect to the Federal Food, Drug, and Cosmetic Act, congressional intent to impose a duty on "responsible corporate agents"); *United States* v. *Wise,* 370 U.S. 405, 411-414, 8 L. Ed. 2d 590, 82 S. Ct. 1354 (1962) (discussing 38 Stat. 736, currently 15 U.S.C. § 24, which provides: "Whenever a corporation shall violate any of the . . . antitrust laws, such violation shall be deemed to be also that of the individual directors, officers, or agents of such corporation who shall have authorized, ordered, or done any of the acts constituting in whole or in part such violation"); see also 46 U.S.C. § 12507(d) ("If a person, not an individual, is involved in a violation [relating to a vessel identification system], the president or chief executive of the person also is subject to any penalty provided under this section").

[***LEdHR1E] [1E] [***LEdHR3] [3]For another thing, the Department of Housing and Urban Development (HUD), the federal agency primarily charged with the implementation and administration of the statute, 42 U.S.C. § 3608, has specified that ordinary vicarious liability rules apply in this area. And we ordinarily defer to an administering agency's reasonable interpretation of a statute. [*288] *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-845, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984); *Skidmore* v. *Swift & Co.,* 323 U.S. 134, 140, 89 L. Ed. 124, 65 S. Ct. 161 (1944).

A HUD regulation applicable during the relevant time periods for this suit provided that analogous administrative complaints alleging Fair Housing Act violations may be filed

"against any person who directs or controls, or has the right to direct or control, the conduct of another person with respect to any aspect of the sale . . . of dwellings . . . *if that other person, acting within the scope of his or her authority as employee or agent of the directing or controlling person* . . . has engaged . . . in a discriminatory housing practice." 24 CFR § 103.20(b) (1999) (repealed) (emphasis added).

See *Gladstone, Realtors* v. *Village of Bellwood,* 441 U.S. 91, 107, 60 L. Ed. 2d 66, 99 S. Ct. 1601 (1979) (treating administrative actions under 42 U.S.C. § 3610 and civil actions under § 3613 as alternative, but parallel, proceedings).

When it adopted the similar predecessor to this regulation (then codified at 24 CFR § 105.13, see 53 Fed. Reg. 24185 (1988)), HUD explained that it intended to permit a "respondent" (defined at 42 U.S.C. § 3602) to raise in an administrative proceeding any defense "that could be raised in court." 53 Fed. Reg., at 24185. It added that the underscored phrase was designed to make clear that "a complaint may be filed against a [***763] directing or controlling person with respect to the discriminatory acts of another only if the other person was acting within the scope of his or her authority as *employee or agent of the directing or controlling person.*" *Ibid.* (emphasis added). HUD also specified that, by adding the words "acting within the scope of his or her authority as employee or agent of the directing or controlling person," it disclaimed any "intent to impose absolute liability" on the basis of the mere right "to direct or control." *Ibid.;* see 54 Fed. Reg. 3232, 3261 (1989).

[***LEdHR1F] [1F] [*289] Finally, we have found no convincing argument in support of the Ninth Circuit's decision to apply nontraditional vicarious liability principles -- a decision that respondents do not defend and in fact concede is incorrect. See Brief for Respondents 6, 10-11, 43 (conceding that traditional vicarious liability rules apply); Brief for United States as *Amicus Curiae* 8, 22. The Ninth Circuit rested that decision primarily upon the HUD regulation to which we have [**831] referred. The Ninth Circuit underscored the phrase "*or has the right to direct or control the conduct of another person.*" 258 F.3d at 1130. Its opinion did not explain, however, why the Ninth Circuit did not read these words as modified by the subsequent words that limited vicarious liability to actions taken as "employee or agent of the directing or controlling person." *Ibid.* Taken as a whole, the regulation, in our view, says that ordinary, not unusual, rules of vicarious liability should apply.

The Ninth Circuit also referred to several cases decided in other Circuits. The actual holdings in those cases, however, do not support the kind of nontraditional vicarious liability that the Ninth Circuit applied. See *Chicago* v. *Matchmaker Real Estate Sales Center, Inc.,* 982 F.2d 1086 (CA7 1992) (defendant corporation liable for the acts of *its* agents; shareholder directly, not vicariously, liable); *Walker* v. *Crigler,* 976 F.2d 900 (CA4 1992) (owner of rental property liable for the discriminatory acts of agent, the property's manager); *Marr* v. *Rife,* 503 F.2d 735 (CA6 1974) (real estate agency's owner liable for the discriminatory acts of his

agency's salespersons, but without statement of whether agency was a corporation). Nor does the language of these cases provide a convincing rationale for the Ninth Circuit's conclusions.

The Ninth Circuit further referred to an owner's or officer's "non delegable duty" not to discriminate in light of the Act's "overriding societal priority." 258 F.3d at 1131, 1132 (citing Chicago v. Matchmaker Real Estate Sales Center, Inc., 982 F.2d at 1096-1097, and Walker v. Crigler, 976 F.2d at [*290] 904-905). And it added that "when one of two innocent people must suffer, the one whose acts permitted the wrong to occur is the one to bear the burden." 258 F.3d at 1132.

[***LEdHR1G] [1G] [***LEdHR4] [4]"[A] nondelegable duty is an affirmative obligation to ensure the protection of the person to whom the duty runs." General Building Contractors Assn., Inc. v. Pennsylvania, 458 U.S. 375, 396, 73 L. Ed. 2d 835, 102 S. Ct. 3141 (1982) (finding no nondelegable duty under 42 U.S.C. § 1981). Such a duty imposed upon a principal would "go further" than the vicarious liability principles we have discussed thus far to create liability "although [the principal] has himself done everything [***764] that could reasonably be required of him," W. Prosser, Law of Torts § 71, p. 470 (4th ed. 1971), and irrespective of whether the agent was acting with or without authority. The Ninth Circuit identifies nothing in the language or legislative history of the Act to support the existence of this special kind of liability -- the kind of liability that, for example, the law might impose in certain special circumstances upon a principal or employer that hires an independent contractor. Restatement § 214; see 5 F. Harper, F. James, & O. Gray, Law of Torts § 26.11 (2d ed. 1986); Prosser, supra, § 71, at 470-471. In the absence of legal support, we cannot conclude that Congress intended, through silence, to impose this kind of special duty of protection upon individual officers or owners of corporations -- who are not principals (or contracting parties) in respect to the corporation's unlawfully acting employees.

[***LEdHR1H] [1H] [***LEdHR5] [5]Neither does it help to characterize the statute's objective as an "overriding societal priority." 258 F.3d at 1132. We agree with the characterization. But we do not agree that the characterization carries with it a legal rule that would hold every corporate supervisor personally liable without fault for the unlawful act of every corporate employee whom he or she has the right to supervise. Rather, which "of two innocent people must suffer," ibid., and just when, is a complex matter. We believe that courts ordinarily should determine that matter in accordance with traditional principles of [*291] vicarious liability -- unless, of course, Congress, better able than courts to weigh the relevant policy considerations, has instructed the courts differently. Cf., e.g., Sykes, The Economics [**832] of Vicarious Liability, 93 Yale L. J. 1231, 1236 (1984) (arguing that the expansion of vicarious liability or shifting of liability, due to insurance, may diminish an agent's incentives to police behavior). We have found no different instruction here.

III

A

[***LEdHR6] [6]Respondents, conceding that traditional vicarious liability rules apply, see supra, at 8, argue that those principles themselves warrant liability here. For one thing, they say, California law itself creates what amounts, under ordinary common-law principles, to an employer/employee or principal/agent relationship between (a) a corporate officer designated as the broker under a real estate license issued to the corporation, and (b) a corporate employee/salesperson. Brief for Respondents 6-8, 13-36. Insofar as this argument rests solely upon the corporate broker/officer's right to control the employee/salesperson, the Ninth Circuit considered and accepted it. 258 F.3d at 1134-1135. But we must reject it given our determination in Part II that the "right to control" is insufficient by itself, under traditional agency principles, to establish a principal/agent or employer/ employee relationship.

B

[***LEdHR7] [7]The Ninth Circuit did not decide whether other aspects of the California broker relationship, when added to the "right to control," would, under traditional legal principles and consistent with "the general common law of agency," Burlington Industries, Inc. v. Ellerth, 524 U.S., at 754 [***765] (internal quotation marks omitted), establish the necessary relationship. But in the absence of consideration of that matter by the Court of Appeals, we shall not consider it. See Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 212-213, 141 L. Ed. 2d 215, 118 S. Ct. 1952 (1998) ("'Where issues [were not] considered by the Court of Appeals, this Court will not ordinarily consider them'" (quoting Adickes v. S. H. Kress & Co., 398 U.S. 144, 147, n. 2, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970))).

Respondents also point out that, when traditional vicarious liability principles impose liability upon a

corporation, the corporation's liability may be imputed to the corporation's owner in an appropriate case through a "'piercing of the corporate veil.'" *United States* v. *Bestfoods,* 524 U.S. 51, 63, n. 9, 141 L. Ed. 2d 43, 118 S. Ct. 1876 (1998) (quoting *United States* v. *Cordova Chemical Co. of Michigan*, 113 F.3d 572, 580 (CA6 1997)). The Court of Appeals, however, did not decide the application of "veil piercing" in this matter either. It falls outside the scope of the question presented on certiorari. And we shall not here consider it.

The Ninth Circuit nonetheless remains free on remand to determine whether these questions were properly raised and, if so, to consider them.

* * *

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

**REFERENCES:** Return To Full Text Opinion

Go to Supreme Court Brief(s)
Go to Oral Argument Transcript

15 Am Jur 2d, Civil Rights 482-487; 27 Am Jur 2d, Employment Relationship 471

42 USCS 3601, 3604(b), 3605(a)

L Ed Digest, Housing and Urban Development 8; Master and Servant 151

L Ed Index, Housing and Urban Redevelopment; Labor and Employment

Annotation References:

Supreme Court's views as to weight and effect to be given, on subsequent judicial construction, to prior administrative construction of statute. 39 L Ed 2d 942.

Vicarious liability of superior under 42 USCS 1983 for subordinate's acts in deprivation of civil rights. 51 ALR Fed 285.

Validity, construction, and application of 804(c) of Civil Rights Act of 1968 (Fair Housing Act) (42 USCS 3604 (c)) prohibiting discriminatory notice, statement, or advertisement with respect to sale or rental of dwelling. 22 ALR Fed 359.

**Document 1 of 1.**

Terms and Conditions | Privacy

Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

# CORWIN V. B'NAI B'RITH SENIOR ET AL

## <u>CIVIL ACTION NO. 07-152-***</u>

## EXHIBIT B



2005



2006

# CORWIN V. B'NAI B'RITH SENIOR ET AL

## CIVIL ACTION NO. 07-152-***

EXHIBIT C



2006



2007

# IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF DELAWARE

- - -

ISIDORE CORWIN AND BONNIE CORWIN    :              CIVIL ACTION
(INFORMA PAUPERIS STATUS)                           :

              PLAINTIFFS,    :

                                :

                                :    **NO. 07-152-***
                                :    JURY TRIAL DEMANDED

      V.    :

B'NAI B'RITH SENIOR CITIZEN HOUSING, INC.,    :
ET AL                                                :
                 DEFENDANTS.    :

- - -

## CERTIFICATE OF SERVICE

WE, ISIDORE AND BONNIE CORWIN, PRO SE, DO HEREBY CERTIFY THAT ON _May 19, 2007_, WE CAUSED THE ORIGINAL AND (1) COPY OF THE FOREGOING **PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO: DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS** TO BE FILED WITH THE CLERK OF THE COURT AND A COPY OF SUCH FILING WAS SERVED IN THE MANNER INDICATED UPON THE FOLLOWING PARTIES' COUNSEL OF RECORD:

BY U.S. MAIL TO:
ATTORNEY DANIEL A. GRIFFITH
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
1220 N. MARKET STREET
PO BOX 8888
WILMINGTON, DELAWARE 19899-8888
FAX 302-651-7905

BY:  ISIDORE & BONNIE CORWIN, PRO SE
         8608 SOCIETY DRIVE
         CLAYMONT, DELAWARE 18703
         PHONE/FAX:  302-798-5116



Bonnie Corwin
8608 Society Dr
Claymont, DE 19703







CERTIFIED MAIL

7006 0100 0003 6001 3650

U.S.M.S.
X-RAY

U.S. POSTAGE
PAID
ROCKLAND, DE
19732
MAY 15 '07
AMOUNT
$4.98
00053272-02

Peter T. Dalleo, Clerk
U.S. District Court for the District of Delaware
844 North King Street
Lockbox 18
Wilmington, De 19801-3570