## CORWIN V. B'NAI B'RITH SENIOR ET AL

### CIVIL ACTION NO. 07-152-***

### A SUPPLEMENTAL

### EXHIBIT "D"

### IN PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO: DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS.



FILED

MAY 2 4 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BD Scanned

◄Return to Full

# LexisNexis™ Academic

DARLENE **WALKER**, Plaintiff-Appellant, v. CONSTANCE A. **CRIGLER**; FRANK B. WHITESELL, III, Defendants-Appellees.

## No. 91-1542

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

976 F.2d 900; 1992 U.S. App. LEXIS 24907

February 6, 1992, Argued
October 5, 1992, Decided

**PRIOR HISTORY:**  [**1]  Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-90-1076-A)

**DISPOSITION:** REVERSED, JUDGMENT ORDERED ENTERED, AND REMANDED

**COUNSEL:** Argued: John Peter Relman, WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW, Washington, D.C., for Appellant.

Argued: Robert Emmett Scully, Jr., REES, BROOME & DIAZ, P.C., Vienna, Virginia, for Appellee.

On Brief: Hunter C. Harrison, Jr., Sandra L. Hughes, HARRISON, GOLDEN & HUGHES, P.C., McLean, Virginia, for Appellant.

On Brief: Susan A. Richards, REES, BROOME & DIAZ, P.C., Vienna, Virginia, for Appellee.

**JUDGES:** Before WIDENER, PHILLIPS, and MURNAGHAN, Circuit Judges. Judge Murnaghan wrote the opinion, in which Judge Phillips joined. Judge Widener wrote a dissenting opinion.

**OPINION BY:** MURNAGHAN

**OPINION:** [*901] **OPINION**

MURNAGHAN, Circuit Judge:

The present case arises as an appeal by appellant Darlene Walker from a judgment entered in the United States District Court for the Eastern District of Virginia. Walker brought suit against Constance A. Crigler, a professional realtor, and against Frank B. Whitesell, the owner of the rental property in question. In her suit, Walker alleged sex discrimination in [**2] the rental of housing pursuant to 42 U.S.C. § 3601 et seq. (1988), and sought to recover compensatory and punitive damages.

The jury returned a verdict in favor of Walker against Crigler and ordered the latter to pay $ 5,000 in compensatory damages, but indicated no punitive damages. Conversely, the jury found for Whitesell and cleared him of all charges and liabilities. Subsequently, appellant filed a motion for a new trial, a motion for judgment notwithstanding the verdict, and submitted new pleadings in support of a request for declaratory and injunctive relief that had remained pending since the conclusion of trial.

On April 1, 1991, the district court denied all of appellant's motions, and refused to order the declaratory or injunctive relief. Walker filed a timely notice of appeal from the district court's rulings on the issues of denial of judgment n.o.v. and denial of the requested declaratory relief.

I.

Appellant is a single mother with one son. In 1986, she and her son moved to Falls Church, Virginia where appellant was and remains employed with the Central Intelligence Agency. Upon her arrival in Falls Church, appellant rented a pair [**3] of rooms in a four bedroom home for her and her son.

In late 1987, appellant's landlord reclaimed one of the two rooms, and she became interested in finding a new residence. Approximately two years later, in July of 1989, appellant contacted Town and Country Properties to inquire about rental properties in the area. Appellant spoke to Maurice Hill, an agent at Town and Country, who provided her with various property listings taken from the firm's Multiple Listing Service ("MLS") computer listings. Appellant viewed two of the properties accompanied by Hill's assistant John Moore ("Moore").

On the night of July 27, 1989, appellant and Moore visited a property located at 124 Falls Avenue in Falls Church. Whitesell [*902] owned the property, and Crigler provided services as the property manager. Crigler's responsibilities included finding financially-qualified tenants for 124 Falls Avenue and other properties owned by Whitesell, and keeping Whitesell constantly abreast of developments concerning the properties. n1 Crigler did not have the authority to sign leases with potential renters.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Crigler's provision of information for Whitesell included a monthly "Management Net Sheet," which included a statement of the rents paid for the month, and additional "Notes" of interest. The April 1987 sheet included a reference to an advertisement that had been placed in local papers that sought "a male 5'6" for rent at $ 450 . . ."

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**4]

The listing in the MLS described the property as "a nice 2BR (two bedroom)" apartment "ideal for two men." The listing also indicated that the property had "3 guys" as tenants, and that the rent was $ 600 per month.

In January of 1989, Whitesell, in response to an awareness of housing discrimination suits against landlords, sent Crigler a memorandum which read:



In view of the recent legal action against rental property owners I

have been advised by my attorney to submit the following
statement:

No one who meets all other qualifications for tenancy on (sic) one
of my properties is to be denied the right to rent such properties
solely because of discrimination on the basis of race, creed or
physical impairment . . .

Obviously, this notice includes no provision against gender discrimination,
but Crigler contended that the meaning of the letter, that all federally
mandated anti-discrimination provisions should be met, was clear.

Appellant was unable to tour the 124 Falls Avenue apartment because there
was no key available. But given its location so close both to school for her
boy and to transportation to work for herself, she decided that she wanted the
apartment, and [**5] filled out an application for it with Moore's assistance.

Later that night or early the next morning, Moore contacted Crigler to tell her
that he had an application he wished to present on the Falls Avenue property.
Both parties agree that Ms. Crigler inquired about the applicant, but that
recollection is the end of their agreement.

Moore testified that he advised Crigler that the applicant was a single mother
and that Crigler in no uncertain terms said that she would not rent to appellant
because she was a woman. She expressed her policy of not renting to women
in any circumstances. Crigler never reached the point of asking about
appellant's financial qualifications, but Moore said that he told her that the
applicant was financially qualified. Based on that conversation, Moore
determined that it would be futile to deliver appellant's application to Crigler.

Appellant called Crigler after Moore relayed his conversation with the
property manager. According to appellant, Crigler told her she would not rent
the apartment to a single woman, and that she had experienced problems with
the boyfriends of single women in the past. Crigler testified that she never
told anyone that she [**6] would not rent to appellant because of her gender,
but that her expressed rationale was that appellant did not meet the financial

requirements set out for the unit. Appellant testified that she asked Crigler if she was speaking on behalf of the owner of the apartment, and Crigler replied that she was. Appellant then related the substance of her conversation to Hill at Town and Country.

Hill subsequently called Crigler and she repeated to him her policy of not renting to women. Between August 10 and October 19, appellant filed various administrative, local and state discrimination suits against the Town and Country officials and Crigler. She did not know who owned the 124 Falls Avenue unit at the time of those suits. On October 5, the unit was finally rented to two men who paid $ 580 monthly rent, twenty dollars less than appellant had been willing to pay.

On August 9, 1990, appellant filed the present action against Crigler and Whitesell alleging discrimination in violation of [*903] the Fair Housing Act of 1968, 42 U.S.C. § 3601 et seq. (1988). Trial was held on March 5 and 6, 1991.

At trial, Crigler denied that she ever referred to appellant's gender [**7] as the reason for her refusal to rent to her. Whitesell made little effort to defend Crigler's actions and argued that he should not be held liable for her mistakes. At the conclusion of appellant's case, the court granted Whitesell's motion to strike appellant's punitive damages claim against him. Thus the only remaining claims were for punitive and compensatory damages against Crigler and compensatory damages against Whitesell.

The jury found for plaintiff in the suit against Crigler, but fully exonerated Whitesell of any responsibility for the discriminatory acts of his employee. The court had instructed the jury that they should find Whitesell liable for damages to appellant if they believed that Crigler, in practicing discrimination against appellant, was an agent of Whitesell, acting within the scope of her employment. The jury ordered compensatory damages of $ 5,000 to be paid by Crigler.

Following the trial, appellant filed a motion for judgment n.o.v., and for a new trial. In addition, appellant filed a memorandum in support of a request for a declaratory judgment and injunctive relief, requesting that the court enter judgment against Whitesell, arguing that Crigler, [**8] as a matter of

law, was an agent of Whitesell, and that she had clearly acted within the scope of her authority when she harmed appellant.

On April 1, 1991, the district court denied all of appellant's posttrial motions. Appellant filed a timely notice of appeal. On April 19, Crigler filed a voluntary Chapter 7 bankruptcy petition. On August 9, 1991, appellant received a notice from the Bankruptcy Court indicating that Crigler's $ 5,000 debt to her had been discharged.

II.

The denial of a motion for judgment n.o.v. "cannot be disturbed unless, without weighing the evidence and assessing witness credibility, we conclude that reasonable people could have returned a verdict only [for the moving party]." Cooper v. Dyke, 814 F.2d 941, 944 (4th Cir. 1987). The denial of a motion for a new trial should be reversed only when abuse of discretion on the part of the trial court is shown in its determination that "the jury's verdict was not against the clear weight of the evidence . . . ." Abasiekong v. City of Shelby, 744 F.2d 1055, 1059 (4th Cir. 1984). n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 "The scope of appellate review of the exercise of . . . discretion [to grant or deny a declaratory judgment motion] is not under an 'arbitrary and capricious' standard but allows the appellate court to substitute its judgment for that of the trial court." Cincinnati Ins. Co. v. Holbrook, 867 F.2d 1330, 1333 (11th Cir. 1989). Accordingly, since the standard is more severe for a denial of a j.n.o.v. motion than that for a motion for declaratory judgment, if we find that the district court erred in denying the j.n.o.v. motion, it would be clear that it erred in denying declaratory relief.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**9]

The jury ruled on the case against Whitesell in his favor, holding, apparently, that Crigler was not acting in the scope of her employment when she denied Walker's attempts to rent the 124 Falls Avenue premises because she was a

woman. n3 The sole evidence to support the jury's conclusion that Whitesell
was not liable for damages for the discrimination was the evidence indicating
that Crigler was instructed not to refuse to rent on discriminatory grounds. In
denying the motion for judgment notwithstanding the verdict, the trial judge
concluded that the evidence of Whitesell's instruction was sufficient to
support the jury's verdict. We find, however, that the court's conclusion is
based on an erroneous [*904] theory of law, and that reversal is required.
Since there is no unsettled question of fact to be submitted for decision by the
jury, it is appropriate to reverse the judgment that Whitesell was not liable for
compensatory damages and to direct entry of a verdict and the consequent
judgment against Whitesell in Walker's favor in the amount of $ 5,000.00.
Both parties at oral argument agreed that, should we reverse, that would be
the preferable course.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -


n3 Given the jury's verdict finding Crigler guilty of discrimination, the jury
instructions provided by the trial court as to the relationship between
principal and agent and possibilities for joint liability, and the jury's failure to
find Whitesell jointly liable, it is clear that the jury concluded either that
Crigler was not an agent of Whitesell, which is clearly erroneous given the
undisputed nature of the principal/agent relationship, or that Crigler was
acting outside the scope of her employment when she violated the Fair
Housing Act requirements.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**10]

We accept the jury's finding that Whitesell did not confer on Crigler the right
to discriminate, or even indicate his intention that she discriminate. The
evidence is sufficient to support the conclusion that Whitesell specifically
intended that Crigler not discriminate. In many cases, involving issues other
than housing discrimination, such a finding would refute the assertion that
Crigler had acted within the scope of employment, and would concurrently,
shield Whitesell from any liability as principal. However, the arguable
conclusion that Crigler acted outside the scope of her employment is
irrelevant in the present case, for Whitesell could not insulate himself from

liability for sex discrimination in regard to living premises owned by him and managed for his benefit merely by relinquishing the responsibility for preventing such discrimination to another party. n4 Here we adopt the general rule applied by other federal courts that the duty of a property owner not to discriminate in the leasing or sale of that property is non-delegable. n5

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Though the present case turns on the non-delegable nature of Whitesell's duty not to discriminate, and not on the question of whether Crigler acted within the scope of her employment, we doubt that the mere act of instructing Crigler not to discriminate would be sufficient to justify a ruling that she was acting outside the scope of employment. "An act, although forbidden, or done in a forbidden manner, may be within the scope of employment." Restatement of Agency (Second) § 230 (1958). [**11]

n5 Marr v. Rife, 503 F.2d 735, 741 (6th Cir. 1974) ("The discriminatory conduct of an apartment manager or rental agent is, as a general rule, attributable to the owner and property manager of the apartment complex, both under the doctrine of respondeat superior and because the duty to obey the law is non-delegable."); Coates v. Bechtel, 811 F.2d 1045, 1051 (7th Cir. 1987); Phiffer v. Proud Parrot Motor Hotel, Inc., 648 F.2d 548, 552 (9th Cir. 1980); Saunders v. General Services Corp., 659 F. Supp. 1042, 1059 (E.D. Va. 1986) ("Under the Fair Housing Act, a corporation and its officers 'are responsible for the acts of a subordinate employee . . . even though these acts were neither directed nor authorized . . . .' Courts have followed this rule even where 'it seems harsh to punish innocent and well-intentioned employers' because the statutory duty not to discriminate is non-delegable") (citations omitted).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -The dissent cites regulations which govern the adjudication [**12] of fair housing

proceedings brought in front of the Department of Housing and Urban Development ("HUD") to support its proposed rejection of the conclusion that a property owner has a non-delegable duty to prevent discrimination. n6 These regulations, as the dissent concedes, do not cover the circumstances of the present case which is a private cause of action and not a complaint filed with HUD. n7 The cited regulations do not support rejection of the existing strong line of precedent which, unlike the regulations, does address directly the proper determination of the duty of a property owner in a private housing discrimination cause of action.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 24 C.F.R. § 103.20 (1991).

n7 See infra, slip op. at 11 (Widener, J., dissenting).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -We are not unmindful of the arguable incongruity of applying liability to Whitesell, and others similarly situated, who are apparently non-culpable in a housing discrimination instance, but must still bear the burden of liability. The central question to be decided in a case such [**13] as this, however, is which innocent party, the owner whose agent acted contrary to instruction, or the potential renter who felt the direct harm of the agent's discriminatory failure to offer the residence for rent, will ultimately bear the burden of the harm caused. It is clear that the overriding societal priority of the provision of "fair housing through out the United States" clearly set out in the Fair Housing Act, n8 indicates that the one innocent party with the power to control the acts of the agent, the owner of the property [*905] or other responsible superior, must act to compensate the injured party for the harm, and to ensure that similar harm will not occur in the future. n9 Just as we feel no qualms in holding a property owner responsible for paying property taxes, meeting health code safety requirements, or ensuring that other responsibilities to protect the public are met, and we refuse to allow the owner to avoid these

responsibilities with an assertion that he had conferred the duty to another, we must hold those who benefit from the sale and rental of property to the public to the specific mandates of anti-discrimination law if the goal of equal housing opportunity is [**14] to be reached.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n8 42 U.S.C. § 3601.

n9 It must not be overlooked that although the property owner's duty to prevent discrimination is non-delegable, the owner will not be subject to liability for the full amount of all successful claims to the extent that contribution from other liable parties may offset some, or all, of the payment for which the owner is responsible. In view of that consideration, the dissent has significantly overstated the meaning of the opinion to be that "under this rule even the most conscientious and careful property owner, as there was here, will be unable to protect himself from liability resulting from the forbidden acts of unscrupulous agents." Slip op. at 10 (Widener, J., dissenting). In the great majority of cases we may assume that real estate agents will not turn bankrupt or otherwise judgment proof. They will remain liable for damages flowing from flaunting a principal's intentions. Restatement of Agency (Second) § 383, Comment (e)("The agent may be subject to liability to his principal because he has . . . committed a tort or a crime upon a third person for which the principal is liable.").

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**15]

Whitesell, despite forbidding discrimination on the part of Crigler, cannot, under the Fair Housing Act, dispose of his duty to prevent sexual discrimination in the renting of 124 Falls Avenue, a property which he owned and which was operated for his benefit. n10

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n10 Given the minimal supervisory activity on the part of the owner to ensure that his agent met the requirements of federal fair housing law in the present case, we do not have occasion to address the question of whether a heightened level of supervisory activity on the part of a property owner could constitute reasonable fulfillment of his duty not to discriminate, shielding him from liability for discrimination carried out by an agent acting contrary to a specific non-discrimination program instituted by the owner.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -There remains for consideration Walker's request for a declaratory judgment and injunctive relief which would ban rental discrimination violative of 42 U.S.C. § 3601 et seq. (1988) on Whitesell's and Crigler's [**16] part. Because of our action in requiring entry of a judgment in compensatory damages against Whitesell, we reverse and remand the April 1, 1991 order denying Walker's request for declaratory and injunctive relief. The district court should consider matters bearing on whether injunctive relief is appropriate, considering, inter alia, the end of Crigler's status in connection with 124 Falls Avenue, the adequacy of the compensatory damage awards and their stare decisis effect in curbing further breaches of 42 U.S.C. § 3601, et seq. (1988), present management arrangements for the premises, and the like. United States v. Warwick Mobile Homes Estates, 558 F.2d 194, 197 (4th Cir. 1977).

REVERSED, JUDGMENT ORDERED ENTERED, AND REMANDED

**DISSENT BY:** WIDENER

**DISSENT:** WIDENER, Circuit Judge, dissenting:

In holding a property owner's duty to comply with the Fair Housing Act to be "non-delegable," the majority effectively imposes strict liability upon a property owner for the discriminatory acts of his agent. Under this rule, even the most conscientious and careful property owner, as there was here, will be unable to protect himself from liability [**17] resulting from the forbidden acts of unscrupulous agents. n1 I am of opinion that the Department of Housing and Urban Development, the federal agency charged with

administering the Fair Housing Act, has made clear that ordinary principles of agency law are not to be [*906] displaced in favor of strict liability. Further, I find no cause to overturn the verdict of a properly-instructed jury in favor of Whitesell, that verdict being amply supported by evidence and to the effect that agent Crigler acted outside the scope of her employment. Accordingly, I respectfully dissent.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Even if, in footnote 7, supra, the majority may seem to back off slightly from an unequivocal commitment to the position that property owners may never escape vicarious liability for the discriminatory acts of their agents, its application of the "non-delegable" principle to the facts of this case amounts to an embrace of strict liability for property owners of ordinary prudence in the vast majority of cases involving an innocent principal and a wrongdoing agent. Footnote 7, then, should be considered, I think, for what it is, a dictum.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**18]

The Fair Housing Act, 42 U.S.C. §§ 3601-3619 (the Act), charges the Secretary of Housing and Urban Development (HUD) with the duty of administering the provisions of the Act. Pursuant to that duty HUD has promulgated regulations governing the filing of complaints under the Act with HUD. See 24 C.F.R. Part 105. Though the instant case involves a private civil action rather than a complaint filed with HUD, that agency's regulations nonetheless serve as the best guide as to the proper interpretation of the Act's rather generalized prohibitions. The failure of the majority to follow the regulation is strained, I suggest, and may indicate a refusal to recognize the dichotomy between the regulation and its opinion.

The HUD regulation most relevant here provides as follows:

### § 103.20 Persons against whom complaints may be filed.

(a) A complaint may be filed against any person alleged to be engaged, to have engaged, or to be about to engage, in a

discriminatory housing practice.

(b) A complaint may also be filed against any person who directs or controls, or has the right to direct or control, the conduct of another person with respect to any aspect of the sale, rental, advertising [**19] or financing of dwellings or the provision of brokerage services relating to the sale or rental of dwellings if that other person, acting within the scope of his or her authority as employee or agent of the directing or controlling person, is engaged, has engaged, or is about to engage, in a discriminatory housing practice.

24 C.F.R. § 103.20 (1991) (emphasis supplied). HUD's use of the italicized language, I submit, is sufficient indication of that agency's intention that the traditional doctrine of respondeat superior should define the liability of the principal of a wrongdoing agent under the Act. That a principal's liability under the Act, in the eyes of the agency charged with its administration, is dependent upon a showing that the agent was acting "within the scope of his or her authority" is wholly inconsistent with the majority's assertion that such liability is non-delegable, or strict.

The history of the promulgation of the present section 103.20 confirms that HUD in no way intended to impose strict vicarious liability upon innocent property owners. HUD first addressed this issue in 1984, when it published a proposed section 105.13, also entitled "Persons against [**20] whom complaints may be filed." That proposed regulation provided as follows:

(a) A complaint may be filed against any person alleged to be or have been engaged, or to be about to engage, in a discriminatory housing practice.

(b) Any person who directs or controls, or has the right to direct or control, the conduct of another person with respect to any aspect of the sale, rental, advertising or financing of dwelling [sic] or the

provision of brokerage services relating to the sale or rental of dwellings is responsible for discriminatory housing practices by such other person.

49 Fed. Reg. 40533 (proposed Oct. 16, 1984). Importantly, this regulation is substantially identical to the present 24 C.F.R. § 103.20 except for the crucial omission of the scope-of-employment requirement. In the absence of any reference to the agent's scope of employment, the language of the proposed regulation arguably could have been interpreted as imposing strict liability on all real property owners for the unlawful acts of their agents. Indeed, commentary accompanying the proposed regulation suggests that at that time HUD intended to make "nondelegable" n2 the liability [**21] of [*907] principals involved in the sale, lease, or financing of real property. See 49 Fed. Reg. 40528-29 (1984).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 Use of the word in 1984 was by HUD. This aspect of the 1984 proposal was changed by the regulation under consideration here.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

However, HUD's comments accompanying the publication of the final version of the rule in question, which remains the version in force today, both make clear that no strict liability was intended and shed light on HUD's understanding of the concept of nondelegability. Those comments tell us that the National Association of Realtors (NAR) "strenuously objected" to the proposed section 105.13(b). According to HUD,

NAR contended that the judicial decisions do not establish a rule of absolute liability (without fault) as paragraph (b) would impose.

NAR argued that the decided cases focus only on the liability of a broker for conduct of his or her salespersons, but do not mandate absolute liability on the basis of mere right "to direct or control" without [\*\*22] reference to instructions, policies, compliance programs and other actions of the principal. . . . In response, it is not HUD's intent to impose absolute liability on any principal; the intent, in proposing paragraph (b), was to follow the law enunciated by the courts in recent Fair Housing Act cases with respect to the liability of a principal for acts of an agent. . . . HUD has revised the language of paragraph (b) of [now § 120.30] to provide that a complaint may be filed against a directing or controlling person with respect to the discriminatory acts of another only if the other person was acting within the scope of his or her authority as employee or agent of the directing or controlling person.

53 Fed. Reg. 24185 (1988); see also 54 Fed. Reg. 3260-61 (1989). Thus, this comment only confirms the most straightforward reading of the text of the present section 103.20, i.e., that familiar principles of agency law, and not strict liability, control a principal's liability for the acts of an agent.

While I am of opinion that the aforementioned HUD regulation standing alone sufficiently establishes that the doctrine of [\*\*23] respondeat superior governs the liability of a principal for the discriminatory acts of his agent, I pause for a moment to consider the case law cited by the majority for the proposition that a property owner's vicarious liability under the Act is strict. Certainly, a good deal of case law exists holding principals vicariously liable for the Fair Housing Act violations of their agents. Many of these cases indeed use the term nondelegable in describing a property owner's responsibility for compliance with the Fair Housing Act. The cases fall far short, however, of establishing a general rule that traditional principles of agency law have no application in Fair Housing Act cases.

For example, in Marr v. Rife, 503 F.2d 735 (6th Cir. 1974), perhaps the most oft-cited case for the strict liability position, the Sixth Circuit held liable the owner of a real estate agency for the discriminatory acts of his agents. The

court's discussion of the scope of the principal's vicarious liability, however, leaves much to be desired in terms of clarity. The Marr court relied primarily on three cases, none of which squarely supports a rule that inquiry into [**24] whether a wrongdoing agent was acting within the scope of his employment is irrelevant. First, the court cited United States v. Northside Realty Assoc's, Inc., 474 F.2d 1164 (5th Cir. 1973), a case that in fact supports the application of traditional agency law in assessing liability of a principal under the Act. See Marr, 503 F.2d at 741, quoting Northside Realty, 474 F.2d at 1168 (holding that agent of defendant corporation "acted within the scope of his duties" during discriminatory conduct). Second, the court relied upon United States v. Youritan Construction Co., 370 F. Supp. 643 (N.D. Cal. 1973), aff'd in part and rev'd in part, 509 F.2d 623 (9th Cir. 1975). Youritan at best presents a discussion of both aspects of the law of vicarious liability before us here, and it too can be read as contemplating application of respondeat superior principles under the Act. See Marr, 503 F.2d at 741, quoting Youritan, 370 F. Supp. at 649. Finally, the Marr court cited [**25] United States v. Real Estate Development Corp., 347 F. Supp. 776 (N.D. Miss. 1972). Again, though the [*908] Real Estate Development opinion uses the term non-delegable, that reference comes in a passage that also supports the application of traditional agency principles. See Real Estate Development, 347 F. Supp. at 785 ("[The agents'] acts and statements, made within the scope of their agency, are attributable to [their principal], whose duty to comply with the law is non-delegable.") (emphasis supplied). The Marr case itself, in finding liable a real estate agency owner for the acts of an agent, held only as follows:

While [the] evidence does not indicate that [the agent] acted with the approval or at the direction of [the principal], we do not believe that such a finding is necessary in order to hold [the principal] liable. As owner of the agency, [the principal] had at least the power to control the acts of his salesmen.

Marr, 503 F.2d 735 at 742 . This holding hardly constitutes a ringing

endorsement of the nondelegability approach; in fact, the language is fully consistent with application [**26] of the law of respondeat superior.

On the whole, I simply find uncompelling the reasoning of the Marr opinion.

Neither do I believe that Coates v. Bechtel, 811 F.2d 1045 (7th Cir. 1987), supports the strict liability approach of the majority in the instant case. Indeed, I suggest its holding is quite to the contrary. In Coates, the Seventh Circuit reversed as an abuse of discretion the district court's award of attorney's fees to the prevailing defendant in a case brought under the Fair Housing Act. The defendant in question was the absentee owner of a mobile home. The owner had agreed to sell the mobile home to a black couple, the sales arrangements being handled by two of the defendant's agents. The sales transaction fell through, however, when the agents subjected the buyers to harassment on account of their race. The buyers thereafter brought suit against both the owner and the agents under the Fair Housing Act.

The district court granted summary judgment in favor of the owner on grounds that the agents had not acted within the scope of their actual or apparent authority in discriminating against the buyers on the basis of their [**27] race. See Coates, 811 F.2d at 1048 and n.1. The district court further granted the owner's motion for attorney's fees pursuant to 42 U.S.C. § 1988, holding that the buyers' claim against the owner was "unreasonable and without foundation." 811 F.2d at 1049.

On appeal, the Seventh Circuit considered only the propriety of the fee award under section 1988. The court reversed that award and held that the buyers' claim, though without merit, was not frivolous, groundless, or unreasonable. In evaluating whether the claim was sufficiently colorable to preclude an award of fees to the owner, the court acknowledged that familiar principles of agency law governed the owner's liability and that the buyers conceivably could have made out a claim of vicarious liability against the owner had the facts been more favorable to the plaintiff buyers. n3 Nowhere does the opinion suggest that principles of strict liability apply to the buyers' claims against the owner. Apparently the majority arrives at its conclusion from Coates' parenthetical reference to Phiffer, infra, n. 4.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 According to Coates:

> The central factual issue underlying the plaintiffs' vicarious liability
> claim against Tom was the scope and nature of the agency
> relationship between Tom and Fritz. As a matter of well-settled
> agency law, a principal may be held liable for the discriminatory
> acts of his agent if such acts are within the scope of the agent's
> apparent authority, even if the principal neither authorized or
> ratified the acts. In cases of racial discrimination in housing under
> both 42 U.S.C. § 1982 and the Fair Housing Act, 42 U.S.C. § 3604,
> the courts have imputed the wrongful acts of a real estate sales or
> rental agent to the property owner he is representing regardless of
> whether the owner specifically authorized the agent to engage in
> racial discrimination.

Coates, 811 F.2d at 1051. (footnote omitted)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[**28]

I shall not belabor the point by discussing further the case law addressing
vicarious liability under the Act. n4 Though I am aware of no case squarely
adopting the [*909] position of the majority in the instant case, my point is
not that the broad range of reported cases do not hold property owners to a
rigorous standard for the acts of their agents. Indeed, courts rightly have been
quick to hold principals liable for the unlawful discrimination of their agents
when the facts reveal that a principal has done nothing to guard against the
occurrence of such discrimination. I wish only to show that, contrary to the
suggestion of the majority, the cases reveal no consensus that principals are to



be held liable under the Act without regard to traditional agency law in general, and scope-of-employment law in particular. Accordingly, I would look to the plain language of 24 C.F.R. § 103.20 and hold that familiar principles of agency law govern a property owner's liability under the Act.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 I should note, however, that I find similarly unconvincing the conclusory treatment of the point in Phiffer v. Proud Parrot Motor Hotel, Inc., 648 F.2d 548, 552 (9th Cir. 1980).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[**29]

Having stated my opinion that Whitesell's liability to Mrs. Walker, if any, must be under the traditional principles of respondeat superior, I now turn to the question of whether the jury's verdict in favor of Whitesell was supported in law and fact.

I note this part of the majority opinion with which I agree: "We accept the jury's finding that Whitesell did not confer on Crigler the right to discriminate, or even indicate his intention that she discriminate. The evidence is sufficient to support the conclusion that Whitesell specifically intended that Crigler not discriminate." That being the case, and no error of law being relied upon by the majority other than its holding that the responsibility of Whitesell was nondelegable, I would simply affirm the judgment of the district court.

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- " -

| ISIDORE CORWIN AND BONNIE CORWIN | : | CIVIL ACTION |
| (INFORMA PAUPERIS STATUS) | : | |
| | : | |
| PLAINTIFFS, | : | |
| | : | |
| | : | **NO. 07-CV-152-\*\*\*** |
| | : | **JURY TRIAL DEMANDED** |
| V. | : | |
| | : | |
| B'NAI B'RITH SENIOR CITIZEN HOUSING, INC., | : | |
| ET AL | : | |
| DEFENDANTS. | : | |

- - -

## <u>A SUPPLEMENTAL EXHIBIT "D" IN PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO: DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS</u>

RESPECTFULLY SUBMITTED,

ISIDORE CORWIN, PLAINTIFF PRO SE
B'NAI B'RITH HOUSE
APT 608
CLAYMONT, DE 19703-1749
PHONE/FAX 302-798-5116

BONNIE CORWIN, PLAINTIFF PRO SE
B'NAI B'RITH HOUSE
APT 608
CLAYMONT, DE 19703-1749
PHONE/FAX 302-798-5116

DATED _____May 23, 2007_____

## IN THE UNITED STATES DISTRICT COURT

### IN AND FOR THE DISTRICT OF DELAWARE

- - -

ISIDORE CORWIN AND BONNIE CORWIN                    :          CIVIL ACTION
(INFORMA PAUPERIS STATUS)                           :
                                                    :
            PLAINTIFFS,                             :
                                                    :
                                                    :
                                                    :          **NO. 07-152-\*\*\***
                                                    :          JURY TRIAL DEMANDED
            V.                                      :
                                                    :
B'NAI B'RITH SENIOR CITIZEN HOUSING, INC.,          :
ET AL                                               :
            DEFENDANTS.                             :

- - -

## CERTIFICATE OF SERVICE

WE, ISIDORE AND BONNIE CORWIN, PRO SE, DO HEREBY CERTIFY THAT ON *May 23, 2007* , WE CAUSED THE ORIGINAL AND (1) COPY OF THE FOREGOING **SUPPLEMENTAL EXHIBIT "D" IN PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO: DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS** TO BE FILED WITH THE CLERK OF THE COURT AND A COPY OF SUCH FILING WAS SERVED IN THE MANNER INDICATED UPON THE FOLLOWING PARTIES' COUNSEL OF RECORD:

BY U.S. MAIL TO:
ATTORNEY DANIEL A. GRIFFITH
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
1220 N. MARKET STREET
PO BOX 8888
WILMINGTON, DELAWARE 19899-8888
FAX 302-651-7905

BY:  ISIDORE & BONNIE CORWIN, PRO SE
            8608 SOCIETY DRIVE
            CLAYMONT, DELAWARE 18703
            PHONE/FAX:  302-798-5116



Bonnie Corwin
8603 Society Dr
Claymont, DE 19703



CERTIFIED MAIL

7006 0100 0003 7810 5026



U.S. POSTAGE
PAID
ROCKLAND DE
MAY 2007
AMOUNT
$4.98
00053972-01

Peter T. Dalleo, Clerk
U.S. District Court for The District of Delaware
844 North Kent Street
Lockbox 18
Wilmington, De 19801-3570